Gena L. Sluga, 018633
gsluga@cdslawfirm.com
Justin Vanderveer, 020180
jvanderveer@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2800 North Central Avenue, Suite 860
Phoenix, Arizona 85004
Telephone: (602) 792-1700
Facsimile: (602) 792-1710

Wystan M. Ackerman (*Pro Hac Vice* Motion to be Filed)
Wm Maxwell Daley (*Pro Hac Vice* Motion to be Filed)
**ROBINSON & COLE LLP**
One State Street
Hartford, Connecticut 06103
Telephone:    (860) 275-8200
Facsimile:    (860) 275-8299
E-mail:    wackerman@rc.com
          wdaley@rc.com

*Attorneys for Defendants Erickson Companies, LLC*
*and Erickson Framing AZ, LLC*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ANWAR ABDEL RAHMAN,<br><br>Plaintiff.<br><br>vs.<br><br>ERICKSON COMPANIES, LLC, ERICKSON FRAMING AZ, LLC, and DOES 1 through 1000, inclusive,<br><br>Defendants. | Case No. 2:25-cv-01866-SMB<br><br>**DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**<br><br>(Hon. Susan M. Brnovich)<br><br>(Oral Argument Requested) |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

I.    BACKGROUND AND PROCEDURAL HISTORY .....................................1

II.   ARGUMENT .........................................................................................2

      A.    PLAINTIFF'S NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW ........2

          1.    Plaintiff Pled No Cognizable Damages.....................................3

          2.    Plaintiff Failed to Allege Any Legal Duty or Breach...............7

      B.    PLAINTIFF'S CLAIM FOR BREACH OF IMPLIED CONTRACT FAILS ....10

      C.    THE COMPLAINT FAILS TO ALLEGE A PLAUSIBLE ACFA CLAIM.....12

      D.    WITHOUT AN INDIVIDUAL CLAIM, THE CLASS ALLEGATIONS FAIL .14

III.  CONCLUSION ....................................................................................14

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................2, 6

6

7

*Barmat v. John & Jane Doe Partners A-D*,
747 P.2d 1218 (Ariz. 1987) ...................................................................10

8

9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................2

10

11

*BMA LLC v. HDR Glob. Trading Ltd.*,
2021 WL 4061698 (N.D. Cal. Sept. 7, 2021) ...........................................9

12

*Bozek v. Arizona Lab. Force Inc.*,
2025 WL 264174 (D. Ariz. Jan. 22, 2025) (Brnovich, J.) ...............*passim*

13

14

*Cal-Am Props. Inc. v. Edais Eng'g Inc.*,
509 P.3d 386 (Ariz. 2022)....................................................................7, 8

15

16

*Calcut v. Paramount Res. Mortg. Grp. Inc.*,
2024 WL 233175 (D. Ariz. Jan. 22, 2024) .............................................13

17

*Cellco P'ship v. Hope*,
2011 WL 3159172 (D. Ariz. July 26, 2011) ...........................................13

18

19

*Chartone, Inc. v. Bernini*,
83 P.3d 1103 (Ariz. Ct. App. 2004)........................................................10

20

21

*Craten v. Foster Poultry Farms Inc.*,
305 F. Supp. 3d 1051 (D. Ariz. 2018) ......................................................2

22

23

*Day v. LSI Corp.*,
174 F. Supp. 3d 1130 (D. Ariz. 2016) ....................................................10

24

25

*Dearing v. Magellan Health Inc.*,
2020 WL 7041059 (D. Ariz. Sept. 3, 2020) .............................................5

26

*Durgan v. U-Haul Int'l Inc.*,
2023 WL 7114622 (D. Ariz. Oct. 27, 2023) (Liburdi, J.) ...............*passim*

27

*Feins v. Goldwater Bank NA*,
2022 WL 17552440 (D. Ariz. Dec. 9, 2022) .....................................10, 11

28

*Gannon v. Truly Nolen of Am. Inc.*,
   2023 WL 6536477 (D. Ariz. Aug. 31, 2023) (Soto, J.) ...................................*passim*

*Greenstein v. Noblr Reciprocal Exch.*,
   2024 WL 3886977 (9th Cir. Aug. 21, 2024) ............................................................6

*Griffey v. Magellan Health Inc.*,
   562 F. Supp. 3d 34 (D. Ariz. 2021) (Liburdi, J.) ...................................*passim*

*Hogue v. City of Phoenix*,
   378 P.3d 720 (Ariz. Ct. App. 2016)........................................................................8

*Jensen v. EXC, Inc.*,
   82 F.4th 835 (9th Cir. 2023) ...................................................................................2

*Johnson v. Yuma Reg'l Med. Ctr.*,
   2024 WL 4803881 (D. Ariz. Nov. 15, 2024) (Brnovich, J.) ..........................*passim*

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
   603 F. Supp. 3d 1183 (S.D. Fla. 2022) ...................................................................9

*Pruchnicki v. Envision Healthcare Corp.*,
   845 F. App'x 615 (9th Cir. 2021)............................................................................3

*Quinalty v. FocusIT LLC*,
   2024 WL 342454 (D. Ariz. Jan. 30, 2024) ......................................................*passim*

*Quinalty v. FocusIT LLC*,
   2024 WL 5223587 (D. Ariz. Dec. 26, 2024) (Tuchi, J.) ...........................4, 6, 7, 14

*Quiroz v. ALCOA Inc.*,
   416 P.3d 824 (Ariz. 2018)..................................................................................7, 8

*Rozich v. MTC Fin. Inc.*,
   2023 WL 7089801 (D. Ariz. Oct. 26, 2023)...........................................................13

*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208 (1974).................................................................................................14

*In re SuperValu, Inc.*,
   925 F.3d 955 (8th Cir. 2019) ...................................................................................9

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*,
   971 F.2d 401 (9th Cir. 1992) .................................................................................13

*Torliatt v. Ocwen Loan Servicing LLC*,
   2018 WL 2197689 (N.D. Cal. May 14, 2018)..........................................................9

*In re U.S. Vision Data Breach Litig.*,
    2024 WL 1975542 (D.N.J. April 30, 2024)..........................................................12

**Statutes**

Arizona Consumer Fraud Act..................................................1, 2, 12, 13, 14

Federal Trade Commission Act...............................................................7, 8, 9

Health Insurance Portability and Accountability Act ..........................7, 8, 9

**Other Authorities**

45 CFR § 160.103....................................................................................... 8

Fed. R. Civ. P. Rule 12(b)(6) .............................................................1, 2, 14

Fed. R. Civ. P. Rule 9(b) ..................................................................12, 13

Pursuant to Fed. R. Civ. P. 12(b)(6) and LRCiv 12.1(c), Defendants Erickson Framing Operations LLC improperly named as Erickson Companies, LLC (the "Erickson") and Erickson Framing AZ, LLC ("Erickson Framing") (collectively "Defendants") hereby move this Court for an order dismissing the Plaintiff's First Amended Complaint, ECF No. 1-1 ("Am. Compl."), consistent with other decisions in this District. *See, e.g.*, *Johnson v. Yuma Reg'l Med. Ctr.*, 2024 WL 4803881, at *9 (D. Ariz. Nov. 15, 2024) (Brnovich, J.) (dismissing similar negligence, implied contract, and Arizona Consumer Fraud Act, A.R.S. § 44-1521 ("ACFA") claims in data breach case); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34 (D. Ariz. 2021) (Liburdi, J.) (same); *Gannon v. Truly Nolen of Am. Inc.*, 2023 WL 6536477, at *2–3 (D. Ariz. Aug. 31, 2023) (Soto, J.) (same).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff vaguely alleges that certain "personally identifiable information" or "PII," consisting of names, addresses, and social security numbers, maintained on Defendants' network was accessed due to the actions of an unknown third-party on or about November 18, 2024.  Am. Compl., ¶¶ 1, 2.[1]  Defendants were the victims of a cyberattack where "one or more unauthorized third parties accessed Class Members' sensitive data," and Defendants provided notice of the incident to Plaintiff on March 12, 2025.  *Id.* ¶¶ 2, 32, 34. Plaintiff allegedly incurred the following purported harms: "time spent verifying the legitimacy and impact of the [incident], exploring credit monitoring and identity theft insurance options, self-monitoring representative Plaintiff's accounts and seeking legal counsel regarding [his] options for remedying

---

[1] Plaintiff alleges that "Defendants received highly sensitive PII from [him] in connection with the healthcare services . . . received." *Id.* ¶ 11; *see also id.* ¶¶ 13, 39, 61, 67.  However, based on his own allegations, this is demonstrably incorrect. *See id.* ¶ 21 ("Defendants operate a construction company that manufactures complete framing systems such as wall panels or panels and roof systems that hip and erect at the job site").  The data that was allegedly accessed in the incident belonged to certain employees and was *not* healthcare data (*id.* ¶¶ 38, 95).

1  and/or mitigating the effects of [it]"; "diminution in the value of [his] PII"; "lost time,

2  annoyance, interference and inconvenience as a result of the [incident] and . . . anxiety

3  and increased concerns for the loss of privacy, as well as anxiety over the impact of

4  cybercriminals accessing, using and selling [his] PII": "imminent and impending injury

5  arising from the substantially increased risk of fraud, identity theft and misuse [of

6  Plaintiff's PII]." *Id.* ¶¶ 16–19.  Plaintiff alleges three counts:  Count I, Negligence (Am.

7  Compl. ¶¶ 73–98); Count II, Breach of Implied Contract (*id.* ¶¶ 99–107); and Count III,

8  Arizona Consumer Fraud Act ("ACFA") (*id.* ¶¶ 108–116).

9  **II.    ARGUMENT[2]**

10      Each of Plaintiff's claims fails as a matter of law.  *See Johnson*, 2024 WL

11  4803881, at *3–8, 9–10, 12; *Griffey*, 562 F. Supp. 3d at 45–47, 51–54.  Indeed, this

12  Court has repeatedly rejected similar claims where plaintiffs merely allege that there

13  was a data breach at a company.  *See Griffey*, 562 F. Supp. 3d at 45–47, 51–54 *Johnson*,

14  2024 WL 4803881, at *3–8, 9–10, 12; *Gannon*, 2023 WL 6536477, at *2–4.  Similarly,

15  here, Plaintiff does no more than allege that Defendants were the victim of a cyber-

16  attack and that, as a result, the proponents of the incident *may* have access to his

17  information and *may* use it in the future.  Plaintiff fails to allege any *actual* damages,

18  and his claims otherwise fail as a matter of law.  Accordingly, Defendants' Motion

19  should be granted.

20      **A.    PLAINTIFF'S NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW**

21      To plead negligence, "a plaintiff must [show] four elements: (1) a duty requiring

22  the defendant to conform to a certain standard of care; (2) a breach by the defendant of

23  that standard; (3) a causal connection between the defendant's conduct and the resulting

24  injury; and (4) actual damages."  *Jensen v. EXC, Inc.*, 82 F.4th 835, 857 (9th Cir. 2023)

25

26  [2] To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient
   factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"

27  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 570 (2007)). The nonconclusory "[f]actual allegations must be enough

28  to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

(Arizona law).   Plaintiff's claim fails because he did not plead cognizable damages or any legal duty.[3]  *Johnson*, 2024 WL 4803881, at *3–9 (no damages and no breach); *Gannon*, 2023 WL 6536477, at *2 ("there is no valid basis for a negligence claim in this case").

### 1.    Plaintiff Pled No Cognizable Damages

Plaintiff cannot establish any cognizable damages under controlling Arizona law, and his negligence claim, therefore, fails as a matter of law.  Despite attempting to allege various harms (Am. Compl., ¶¶ 16–19; 96–98), Plaintiff only identifies speculative future harm or independent actions that he unilaterally undertook in the most conclusory manner, neither of which constitutes any cognizable damages as a matter of law.  As set forth in detail below, *in seriatim*, and consistent with this Court's prior decisions in *Johnson* and *Bozek*, none of the alleged harms in the Complaint constitute cognizable damages under Arizona law.  *See Griffey*, 562 F. Supp. 3d at 46 ("allegations of lost time addressing the data breach, continued risk to their PII and PHI, and the danger of future harm are not cognizable injuries for negligence claims"); *Bozek v. Arizona Lab. Force Inc.*, 2025 WL 264174, at *5 (D. Ariz. Jan. 22, 2025) (Brnovich, J.) ("Plaintiffs fail to adequately allege cognizable damages to state a valid negligence claim"); *see also Pruchnicki*, 845 F. App'x at 615 ("the "mere misappropriation of personal information" does not establish compensable damages").

### Diminution in value to PII

While Plaintiff alleges that he incurred "damages to and diminution in the value of [his] PII," Am. Compl., ¶ 17, the Ninth Circuit and judges of this Court have repeatedly rejected the notion that the mere disclosure of PII constitutes actionable

---

[3] Plaintiff's Complaint also passingly refers to "negligence *per se*," but this is not a separate claim under Arizona law.  *E.g.*, Am. Compl., ¶¶ 95–98; *see Griffey*, 562 F. Supp. 3d at 47 ("Plaintiffs' negligence per se claim will be dismissed with prejudice to the extent that it is a stand-alone claim for relief"); *Johnson*, 2024 WL 4803881, at *9 (same); *Craten v. Foster Poultry Farms Inc.*, 305 F. Supp. 3d 1051, 1054 n.2 (D. Ariz. 2018) (same).

damages.  *See Pruchnicki*, 845 F. App'x at 615; *Griffey*, 562 F. Supp. 3d at 46. ("Plaintiffs here fail to demonstrate a loss in value of their PII or PHI").  Failure to plausibly allege any damages entitles Defendants to dismissal.  *See Griffey*, 562 F. Supp. 3d at 46.

For example, in *Bozek*, this Court recently dismissed similar claims where "Plaintiffs allege a criminal market exists for their data," because "courts have refused to recognize the 'dark web' as a legitimate market by which individuals may sell their information," and "Plaintiffs have alleged no facts that their sensitive information actually lost value beyond conclusory allegations that the information is valuable to criminals and the breach caused a diminution." 2025 WL 264174, at *5.  In dismissing the negligence claim, the Court noted that the plaintiffs did not "allege that they sell their data or any supporting facts to ascertain the value of their data beyond speculation about what it could be sold for on the dark web."  *Id.*; *see also Johnson*, 2024 WL 4803881, at *4 ("Plaintiffs failed to plead a diminution of value"); *Quinalty v. FocusIT LLC*, 2024 WL 5223587, at *5 (D. Ariz. Dec. 26, 2024) (Tuchi, J.) ("*Quinalty II*") ("[plaintiff] has not alleged sufficient damages and her negligence claim would be dismissed even if [defendant] owed her a duty"); *Griffey*, 562 F. Supp. 3d at 46 (similar).

Plaintiff's claims here fare no better than the essentially identical allegations that this Court rejected in *Bozek* and *Johnson*.  Plaintiff avers that he somehow suffered "diminution in the value of [his] PII," (Am. Compl., ¶¶ 17, 96), that there is purportedly a market for PII on the "dark web" (*id.*, 58–67), and that this somehow constitutes harm. But "allegedly diminished PII value is not a cognizable injury."  *Durgan v. U-Haul Int'l Inc.*, 2023 WL 7114622, at *3 (D. Ariz. Oct. 27, 2023) (Liburdi, J.); *see also Johnson*, 2024 WL 4803881, at *4 (same); *Bozek,* 2025 WL 264174, at *5 (same).

**Time Lost and Money Spent on Mitigation**

Plaintiff also alleges that he has endured "lost time, annoyance, interference and inconvenience as a result of the Data Breach and has anxiety and increased concerns

4

for the loss of privacy" and "out-of-pocket expenses associated with the prevention, detection and recovery . . . of [his] PII." Am. Compl., ¶¶ 16, 18, 96. These allegations do not constitute cognizable damages under Arizona law and this Court's precedent.

With respect to "lost time" or time spent addressing notice of the incident, this Court has been crystal clear that "[l]ost time is not a cognizable injury for negligence claims." *Bozek*, 2025 WL 264174, at *5; *see also Johnson*, 2024 WL 4803881, at *5 (same); *Griffey*, 562 F. Supp. 3 at 45–46 (same); *Quinalty II*, 2024 WL 5223587, at *5 (same). "The majority view is that 'general allegations of lost time,' 'continued risk to [plaintiff's] personal data,' and 'the danger of future harm" are not cognizable injuries." *Gannon*, 2023 WL 6536477, at *3.   Likewise, allegations regarding "out-of-pocket expenses" do not constitute cognizable damages. *See Bozek*, 2025 WL 264174, at *5 ("Plaintiffs have not alleged the expenses are reasonable or necessary, nor have they provided sufficient factual details to gauge the reasonableness of the expenses related to mitigation efforts"); *see also Johnson*, 2024 WL 4803881, at *5; *Durgan*, 2023 WL 7114622, at *2 (mitigation efforts and expenses too speculative and not shown to be reasonable).[4]

Plaintiff's allegations here regarding lost time, lost opportunity costs, expenses, or any other mitigation efforts (Am. Compl., ¶¶ 16, 18, 96) all fail under the "majority view" that such speculative and unsupported claims do not constitute damages. *Gannon*, 2023 WL 6536477, at *3; *Bozek*, 2025 WL 264174, at *5; *Johnson*, 2024 WL 4803881, at *5.

**Future Risk of Fraud or Identity Theft**

Plaintiff claims that there is a "substantially increased risk of fraud, identity theft and misuse [of his PII]," "continued risk to [his] PII," "future costs in terms of time, effort and money that will be expended to prevent, detect, contest and repair the impact

---

[4] *See also Dearing v. Magellan Health Inc.*, 2020 WL 7041059, at *3 (D. Ariz. Sept. 3, 2020) ("Plaintiff need not have spent any time or money at all, but she chose to make those expenditures.").

[on his] PII," and "continued risk of exposure of [his] PII," Am. Compl., ¶¶ 19, 96, 98, but, these speculative allegations fail to establish damages that Plaintiff *actually* incurred, rather than a conjectural, potential threat of *future* harm. Put simply, allegations of speculative, *future* harm cannot form the basis of an actionable negligence claim. *See, e.g.*, *Griffey*, 562 F. Supp. 3d at 46 ("Threats of future harm, on their own, are not cognizable negligence injuries"); *Bozek*, 2025 WL 264174, at *5 ("Plaintiffs do not allege that they have *actually suffered* from fraud or identity theft" and "Arizona law . . . requires negligence damages to be *more than merely the threat of future harm*" (emphasis supplied)); *Quinalty v. FocusIT LLC*, 2024 WL 342454, at *1 (D. Ariz. Jan. 30, 2024) ("*Quinalty I*") ("threats of future harm, such as the likely theft of PII, and imminent and impending injury arising from the increased risk of identity theft and fraud, are not cognizable harms on their own"); *Gannon*, 2023 WL 6536477, at *3 ("Arizona law requires negligence damages to be more than merely a threat of future harm"); *Johnson*, 2024 WL 4803881, at *6 (same); *Quinalty II*, 2024 WL 5223587, at *5 (same).[5]

**Other Allegations of Purported Damages**

Lastly, the Complaint also refers to other purported harms (like anxiety, emotional distress, loss of privacy, and identity theft) but, as addressed below, each of these theories of damages fails as a matter of law. Without any cognizable damages, Plaintiff's negligence claim must fail and should be dismissed. *See, e.g.*, *Johnson*, 2024 WL 4803881, at *3–8 (rejecting all of the damages theories set forth in the Complaint).

Plaintiff claims to have "anxiety" and "emotional distress," Am. Compl., ¶¶ 18, 97, but these allegations fall far short of establishing actionable damages.[6] As Judge

---

[5] *Greenstein v. Noblr Reciprocal Exch.*, 2024 WL 3886977, at *2 (9th Cir. Aug. 21, 2024) ("Plaintiffs have not sufficiently alleged that their personal information was actually stolen," and  "they cannot rely on the increased risk such a theft might have posed had it occurred").

[6] Plaintiff also vaguely references "concerns for the loss of privacy," Am. Compl., ¶¶ 18, 97, but this is likewise insufficient to state a claim. *See Bozek*, 2025 WL 264174, at

Tuchi explained in *Quinalty I*, "Arizona applies the 'zone of danger' test to determine whether damages for negligent infliction of emotional distress are proper," and where a "[p]laintiff . . . does not allege any exposure to physical injury, or any risk of bodily harm created by Defendant," their "allegation of emotional distress resulting from [a] data breach fails to establish damages." 2024 WL 342454, at *5 (citation omitted). Where "Plaintiffs make no allegations beyond suffering from 'anxiety' and 'annoyance' to support they suffered from emotional distress," they "patently fall short of the requisite showing." *Johnson*, 2024 WL 4803881, at *5. Plaintiff's vague assertions of anxiety, emotional distress, or other noneconomic harms fails to state a claim for cognizable damages. *See id.*

While Plaintiff baldly asserts there was "[i]dentity theft," Am. Compl., ¶ 96, such a conclusory pleading fails. The Complaint merely states that there was "actual identity theft," without any type of factual support, which is both conclusory and fails to establish any type of real harm. *See Ashcroft*, 556 U.S. at 678 (court need not accept conclusory allegations); *Gannon*, 2023 WL 6536477, at *3 ("Plaintiff's FAC fails to show identity theft . . . only the possibility of [it]"). This Court encountered far more robust factual allegations in *Johnson* and held that those allegations failed to allege cognizable damages. 2024 WL 4803881, at *6 ("focus[ing] on Plaintiffs who alleged attempted or actual identity theft," each failed to *actually* allege identity theft resulting in cognizable damages). Plaintiff's one-line conclusory allegation of identity theft, Am. Compl., ¶ 96, fails to allege actionable damages. *See id.*

As set forth above, Plaintiff's Complaint wholly fails to allege cognizable damages under Arizona law that would support a negligence claim, and, therefore, Defendants are entitled to dismissal. *See Bozek*, 2025 WL 264174, at *4–6; *Johnson*, 2024 WL 4803881, at *3–8; *Griffey*, 562 F. Supp. 3d at 46–47.

---

*6 ("regarding lost privacy damages, Plaintiffs' allegations seem to relate to their other claims . . . rather than asserted to establish damages for their negligence claim").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 2.      Plaintiff Failed to Allege Any Legal Duty or Breach

Even if Plaintiff could establish damages (and he cannot), his negligence claim still fails because he has neither alleged a duty owed by Defendants nor any breach of duty. *Gannon*, 2023 WL 6536477, at *2–3 ("[t]here is, however, no private right of action under HIPAA or the FTCA," dismissing negligence claim predicated on those statutes); *Quinalty I*, 2024 WL 342454, at *4 ("Plaintiffs fail to plead facts sufficient to establish duty and breach").[7]

In Arizona, a legal duty may be based on recognized common-law "special relationships" created by "contract, familial relationship, or joint undertaking" or on relationships created by "public policy." *Cal-Am Props. Inc. v. Edais Eng'g Inc.*, 509 P.3d 386, 389 (Ariz. 2022); *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 830 (Ariz. 2018). Special relationships giving rise to a duty ordinarily require a "preexisting, recognized relationship between the parties." *Cal-Am Props.*, 509 P.3d at 390. Public policy, established by state and federal statutes or the common law, can also create a duty to third parties with whom no direct relationship exists. *See Cal-Am*, 509 P.3d at 390. However, the "declaration of 'public policy'" is a primarily a legislative function, *Quiroz*, 416 P.3d at 830, and administrative regulations designed to protect the public from economic harm are not a source of duty. *See Cal-Am Props.*, 509 P.3d at 391. In the absence of statutory guidance, a duty "should be so thoroughly established as a state of public mind, so united and so definite and fixed that its existence is not subject to any substantial doubt." *Quiroz*, 416 P.3d at 830. And a plaintiff alleging a public-policy duty must (1) be "within the class of persons to be protected by the statute," and (2) have suffered the type of harm the statute "sought to protect against." *Id.* at 829. "Whether a duty exists is a purely legal issue." *Hogue v. City of Phoenix*, 378 P.3d 720, 722 (Ariz. Ct. App. 2016) (citation omitted).

---

[7] *See also Quinalty II*, 2024 WL 5223587, at *4 ("there is no special relationship between [defendant] and plaintiffs that would create a duty under Arizona law").

Here, Plaintiff alleges that Defendants had a broad, generalized duty to protect Plaintiff's PII and to employ adequate cybersecurity measures. *See* Am. Compl., ¶¶ 51–58, 74.   He also claims that Defendants owe a duty under the Health Insurance Portability and Accountability Act ("HIPAA") and the Federal Trade Commission Act ("FTCA").  *See id.* ¶ 38, 50, 93–95.  However, contrary to Plaintiff's allegations, courts applying Arizona law have not endorsed such a broad duty against business entities like Defendants, nor have they held that HIPAA or the FTCA creates an enforceable tort duty.  As a result, Plaintiff's negligence claim fails for want of any legally recognized duty owed by Defendants to the Plaintiff.

As an initial matter, there is no broad duty for Defendants to ensure that a cybersecurity incident *never* occurs, nor are Defendants strictly liable if there is a cybersecurity incident.   Plaintiff's theory of "duty"—imposing liability apparently anytime a cyberattacker gains access to someone's PII—is unfounded and directly contradicts this Court's prior decisions.  *See Quinalty I*, 2024 WL 342454, at *4 ("a duty does not arise based solely on Defendant obtaining Plaintiffs' PII from financial institutions"); *Gannon*, 2023 WL 6536477, at *2 (finding no duty despite allegations that defendant breached HIPAA and FTC); *see also Cal-Am*, 509 P.3d at 390 (without duty, a negligence claim fails).

The purported statutory bases of Defendants' alleged duty (HIPAA and the FTCA) fail.  HIPAA—a federal law that applies to "covered entities," which are "health plans, health care providers, and health care clearinghouses"—does not apply to Defendants. *See* 45 CFR § 160.103 (defining "covered entity"); Am. Compl., ¶ 21 ("Defendants operate a construction company that manufactures complete framing systems"). Moreover, HIPAA, which does not permit a private right of action, does not create a common law duty.  *See Gannon*, 2023 WL 6536477, at *2 ("Permitting HIPAA to define the 'duty and liability for breach is no less than a private action to enforce HIPAA, which is precluded.'") (citation omitted)). The same is true of the FTCA.  *See In re SuperValu, Inc.*, 925 F.3d 955, 964 (8th Cir. 2019) (court found that courts were

1    "unlikely to recognize a legal duty enforceable through a negligence action arising from

2    the FTCA" in a cyberattack case, affirming dismissal); *In re Mednax Servs., Inc.,*

3    *Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1225 (S.D. Fla. 2022)

4    ("violations of [the FTCA] cannot form the basis for a negligence per se claim").[8]

5            Finally, without any duty alleged, Plaintiff also failed to plead a breach of that

6    non-existent duty. Like the plaintiff in *Johnson*, Plaintiff relies on "industry standards"

7    or "industry-standard practices," Am. Compl., ¶¶ 38, 48, 51, 75, 94, in an attempt to

8    allege a duty, but he "do[es] not describe what those [standards] entail, and presume[s]

9    that because the breach occurred, [defendants'] system was not up to par." 2024 WL

10   4803881, at *9. As the court noted there, "this logic is circular, Plaintiff cannot merely

11   allege that 'because the breach happened, it must be true [Defendants'] system is

12   insecure,'" and similarly that is all that is alleged here.  Plaintiff allegation of breach of

13   duty, Am. Compl., ¶ 84, merely recites the alleged broad, generalized "duties" allegedly

14   owed and claims that Defendants failed to adhere to these vague standards. This is not

15   enough. *See id.* Accordingly, even if a duty was assumed to have been identified (and

16   one was not), Plaintiff's claim for negligence would fail because he has not alleged any

17   facts that would support a determination that Defendants breached such a duty.  *See id.*;

18   *Quinalty I*, 2024 WL 342454, at *4 ("Plaintiffs fail to allege sufficient facts from which

19   the Court could infer Defendant breached a duty").

20           **B.    PLAINTIFF'S CLAIM FOR BREACH OF IMPLIED CONTRACT FAILS**

21           Plaintiff also fails to allege facts establishing any implied contract, Am. Compl.,

22   ¶¶ 99–107, and, as a result, his claim for breach of implied contract should be dismissed.

23   Under Arizona law, contracts consist of an offer, acceptance, consideration, and intent

24   _____

25   [8] Courts in the Ninth Circuit consistently recognize that the FTCA does not provide a
     mechanism for private tort liability. *See, e.g.*, *Torliatt v. Ocwen Loan Servicing LLC*,

26   2018 WL 2197689, at *3 (N.D. Cal. May 14, 2018) ("Plaintiff is a private litigant and
     therefore cannot bring a 15 U.S.C. § 45 claim"); *BMA LLC v. HDR Glob. Trading Ltd.*,

27   2021 WL 4061698, at *16 (N.D. Cal. Sept. 7, 2021) ("the FTCA 'does not provide
     individuals with a private right of action' and cannot be used as a predicate for a UCL

28   claim") (citation omitted).

by the parties to be bound by the contract. *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1153 (D. Ariz. 2016), *aff'd*, 705 F. App'x 539 (9th Cir. 2017). Contracts can be implied in law and in fact. *Barmat v. John & Jane Doe Partners A-D*, 747 P.2d 1218 (Ariz. 1987). "'The distinction between an express contract and one implied in fact is that in the former the undertaking is made by words written or spoken, while in the latter conduct rather than words conveys the necessary assent and undertakings.'" *Feins v. Goldwater Bank NA*, 2022 WL 17552440, at *6 (D. Ariz. Dec. 9, 2022) (citation omitted). A breach of contract claim also requires "resulting damages." *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004).

*First*, Plaintiff fails to make specific, non-conclusory *factual* allegations of any conduct by Defendants indicating an assent to undertake specific data security measures or otherwise establishing an "implied contract"—much less what the terms of any contract were. Courts in this district have routinely held that, where there are no allegations sufficient to establish the conduct indicating the parties intent to be bound, an implied contract claim fails. *See Griffey*, 562 F. Supp. 3d at 51–52 (dismissing implied contract claim where plaintiffs alleged that they provided PHI to defendant, there was a data breach, defendant's data security "must have been inadequate, and defendant "did not conform to an unclear standard of data security"); *Feins*, 2022 WL 17552440, *6 (dismissing implied contract claims where plaintiffs provided no "non-conclusory factual allegations in the Amended Complaint as to conduct on the part of Defendant[s] that somehow established an implied in fact contract with Plaintiff[s]"). Without such allegations, Plaintiff cannot establish an implied contract and his claim fails.

*Second*, Plaintiff also fails to plausibly plead the terms of the purported contract, which is fatal to his implied contract claim. Plaintiff only baldly assert that Defendants agreed to "safeguard and protect such non-public information," Am. Compl. ¶ 103, and that the implied contracts were "for Defendants to implement data security adequate to safeguard and protect the privacy of Representative Plaintiffs and Class Members' PII,"

*id.* ¶ 100. These vague, conclusory allegations are insufficient to create the terms of a contractual relationship between the parties. *See Griffey*, 562 F. Supp. 3d at 51 ("Plaintiffs fail to allege specific terms of the implied contracts: when and to what extent did the contract apply?"); *Gannon*, 2023 WL 6536477, at *3 ("[c]ontract terms cannot be vaguely pleaded," and "[e]ven at the motion to dismiss stage, courts cannot be left to 'guess' how a party failed to perform their contractual obligations"). Plaintiff's claim is predicated on entirely conclusory allegations that are insufficient to establish an implied contract or any breach thereof. *See Griffey*, 562 F. Supp. 3d at 51; *Johnson*, 2024 WL 4803881, at *10 ("policy providing that patients could expect their information to remain confidential does not necessarily promise an outcome that a breach would not occur"); *Feins*, 2022 WL 17552440, *6 (plaintiff failed to allege terms).

Third, Plaintiff further fails to allege that, as a part of any implied agreement, Defendants promised to do something beyond what was already being done. *See Johnson*, 2024 WL 4803881, at *10 ("Plaintiffs have failed to articulate how [defendant]'s promises exceed pre-existing legal obligations"); *Griffey*, 562 F. Supp. 3d at 53 (plaintiffs "do not suggest any promise beyond [defendant's pre-existing] legal obligations" and "without more, there is no consideration between [the parties]"); *Feins*, 2022 WL 17552440, at *7 ("to the extent Plaintiff contends that Defendant breached some implied contract by not complying with its own written policies, the allegations do not suffice to show that any such non-compliance was [with an obligation] beyond what was legally mandated."). Where a party is already protecting PII, as Defendants were doing here, that conduct cannot be the basis of an implied contract. *See Johnson*, 2024 WL 4803881, at *10; *Feins*, 2022 WL 17552440, at *7; ); *Durgan*, 2023 WL 7114622, at *5 ("Because Plaintiffs fail to allege consideration or damages, their breach of implied contract claim must also fail").

Finally, as with his negligence claim, Plaintiff fails to allege damages that would support a *prima facie* breach of implied contract claim. *See Gannon*, 2023 WL

6536477, at \*4 ("At a minimum, Plaintiff has not shown cognizable damages."). Plaintiff includes one paragraph discussing damages, but it only identifies the same, non-cognizable damages that he made in support of his negligence claim. *See* Am. Compl., ¶ 107 (alleging "(i) ongoing, imminent and impending threat of identity theft crimes, . . . actual identity theft crimes, [with no factual support] . . . loss of the confidentiality of the stolen confidential data . . . illegal sale of the compromised data on the dark web . . . lost work time"). None of these are cognizable damages to support his claim, nor are they supported by any *factual* allegations. *See Johnson*, 2024 WL 4803881, at \*3–8; *Durgan*, 2023 WL 7114622, at \*5; *Gannon*, 2023 WL 6536477, at \*4 ("At a minimum, Plaintiff has not shown cognizable damages, a reasonable construction for the terms of the contract, or consideration for the existence of an implied contract").

### C.    THE COMPLAINT FAILS TO ALLEGE A PLAUSIBLE ACFA CLAIM

Count III, alleging violation of the ACFA (Am. Compl., ¶¶ 108–116), fails for several reasons. Under the ACFA, a plaintiff must show: "1) a false promise or misrepresentation made in connection with the sale or advertisement of 'merchandise,' and 2) consequent and proximate injury resulting from the misrepresentation." *Quinalty I*, 2024 WL 342454, at \*6. Here, Plaintiff fails to state a claim under ACFA because: (1) he fails to allege actual reliance on any of the alleged misrepresentations; (2) Defendants did not engage in any sales transactions with Plaintiff; and (3) Plaintiff fails to satisfy Rule 9(b)'s heightened pleading standard, which applies to ACFA claims.

*First*, Plaintiff fails to plead any plausible reliance. The Complaint lacks any facts showing that Plaintiff was aware of Defendants' privacy policies (to the extent that they would have applied), security measures, or other representations at the time he provided his PII, and, further, it makes no reference to reliance beyond a boilerplate reference to "relying on Defendants' misrepresentations and omissions." Am. Compl., ¶ 113. Without the requisite reliance, Plaintiff's claim fails. *See Quinalty I*, 2024 WL 342454, at \*6 (noting that the ACFA standard requires "proof of actual reliance" and

13

plaintiffs "fail to allege any facts indicating they were aware of Defendant's contracts, website, privacy policy, or advertising at the time they provided their PII to Defendant's clients").[9]

*Second*, the ACFA claim must be dismissed because the act is intended to protect "unwary buyers from unscrupulous sellers." *Cellco P'ship v. Hope*, 2011 WL 3159172, at *4 (D. Ariz. July 26, 2011) (citing *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401 (9th Cir. 1992)).[10] Thus, where the plaintiff has not purchased goods or services from the defendant, there is no viable claim. *See id.* at *5. Here, Plaintiff was an employee of Defendants, not a customer, rendering the ACFA inapplicable. *See id.*; *Rozich v. MTC Fin. Inc.*, 2023 WL 7089801, at *4 (D. Ariz. Oct. 26, 2023) ("possibility of modifying an existing loan" was not a "sale" as required for the ACFA to apply).

*Third*, Plaintiff failed to meet Rule 9(b)'s heightened pleading standard. *See Johnson*, 2024 WL 4803881, at *12 (applying Rule 9(b)); *Griffey*, 562 F. Supp. 3d at 53 (Rule 9(b) requires plaintiff to "state with particularity the circumstances constituting fraud including the who, what, when, where and how of the misconduct charged"); *Durgan*, 2023 WL 7114622, at *5 (same). For example, Plaintiff entirely fails to allege the "how" of the alleged fraud, with any detail, not identifying *any specific misrepresentation* made by Defendants—let alone who made that representation or when. *See* Am. Compl., ¶¶ 108–116. Rather, and as in *Griffey*, Plaintiff cites purported data security standards in a conclusory, boilerplate fashion, *see* Am. Compl. ¶¶ 111–13, but he does not sufficiently allege how Defendants failed to

---

[9] This is especially true of Erickson, Erickson Framing's parent company, with whom Plaintiff had no direct relationship. *See In re U.S. Vision Data Breach Litig.*, 2024 WL 1975542, at *5 (D.N.J. April 30, 2024) (no viable ACFA claim against service provider to medical practice where plaintiff did not rely on service provider's misrepresentations before providing PII).

[10] *See also Calcut v. Paramount Res. Mortg. Grp. Inc.*, 2024 WL 233175, at *5 (D. Ariz. Jan. 22, 2024) ("ACFA is '. . . intended to eliminate un-lawful practices in merchant-consumer transactions.'" (citation omitted)), *aff'd*, 2025 WL 1341672 (9th Cir. May 8, 2025).

meet these standards or specifically how their security was inadequate. *See Johnson*, 2024 WL 4803881, at *12 ("Plaintiffs' allegations for the 'how' are insufficient"); *Griffey*, 562 F. Supp. 3d at 54 ("[plaintiffs] fail to adequately articulate the 'how' of the data breach"); *Gannon*, 2023 WL 6536477, at *4 ("Plaintiff's argument that Defendant's data security was inadequate simply because there was a data breach is itself inadequate"). Just like *Johnson*, *Griffey*, and *Gannon*, Plaintiff does not allege *how* Defendants' systems or inadequate or *how* the alleged misrepresentations related to the cybersecurity incident, which is dispositive. *See Griffey*, 562 F. Supp. 3d at 54 ("Plaintiffs fail to specify how [defendant's] security was inadequate").

In *Johnson*, this Court noted that "Plaintiffs fail[ed] to establish whether the [alleged statements] [were] false or misleading," where the complaint asked "the Court to speculate that, had [defendant] disclosed the specific or technical details of its security apparatus, that Plaintiffs would appreciate those details and would base their decision to receive medical care on the adequacy of that information." 2024 WL 4803881, at *12. There, the Court noted that defendant "made no *absolute guarantee against rogue actors' ability to penetrate its system and extract information*," rendering "Plaintiffs' allegations that the system and the response [defendant] did deploy was insufficient . . . conclusory without factual support." *Id.* (emphasis added). The same is true here, there are no allegations allowing the Court to test whether there were any false or misleading statements, and Plaintiff's generic allegation of misrepresentations and omissions fails to demonstrate those claims or that Defendants made an absolute guarantee against rogue actors' ability to penetrate their system. On this basis alone, the ACFA claim fails. *See id.* Count III should, therefore, be dismissed.

## D.    WITHOUT AN INDIVIDUAL CLAIM, THE CLASS ALLEGATIONS FAIL

Where "named plaintiffs, have not stated claims for relief and 'possess the same interest and suffer the same injury shared by all members of the class [they seek to] represent[,]' their class-wide allegations [should] also [be] dismissed under Rule 12(b)(6)." *Quinalty II*, 2024 WL 5223587, at *6 (quoting *Schlesinger v. Reservists*

*Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). Here, because all of Plaintiff's claims fail so too do the class allegations.

## III.    CONCLUSION

**WHEREFORE**, pursuant to Rule 12(b)(6), Defendants Erickson Framing Operations LLC improperly named as Erickson Companies, LLC and Erickson Framing AZ, LLC respectfully request that the Court dismiss the Plaintiff's Complaint.

RESPECTFULLY SUBMITTED this 20th day of June 2025.

/s/ *Gena L. Sluga*
Gena L. Sluga, 018633
gsluga@cdslawfirm.com
Justin Vanderveer, 020180
jvanderveer@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2800 North Central Avenue, Suite 860
Phoenix, Arizona 85004
Telephone: (602) 792-1700
Facsimile: (602) 792-1710

Wystan M. Ackerman (*Pro Hac Vice* to be Filed)
Wm Maxwell Daley (*Pro Hac Vice* to be Filed)
**ROBINSON & COLE LLP**
One State Street
Hartford, Connecticut 06103
Telephone:    (860) 275-8200
Facsimile:    (860) 275-8299
E-mail:    wackerman@rc.com
               wdaley@rc.com

*Attorneys for Defendants*

## LRCiv 12.1(c) CERTIFICATION

Before filing the motion, the movant notified the opposing party of the issues asserted in the motion, and the parties were unable to agree that the pleading was curable in any part by a permissible amendment.

/s/ *Gena Sluga*

16

## CERTIFICATE OF SERVICE

I hereby certify that on June 20th, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and emailed the attached document to:

Sean Anthony Woods
Robert T. Mills
MILLS + WOODS LAW, PLLC
5055 N. 12th Street, Suite 100
Phoenix, Arizona 85014
swoods@millsandwoods.com
rmills@millsandwoods.com
docket@millsandwoods.com
*Attorneys for Plaintiff*

Scott Edward Cole (CA S.B. #160744)*
COLE & VAN NOTE
555 12 Street, Suite 2100
Oakland, California 94607
Email: sec@colevannote.com
* Pro hac vice forthcoming
*Attorneys for Plaintiff*

By: */s/ April Schofield* _____