Robert T. Mills, Esq. (Arizona Bar #018853)
Sean A. Woods, Esq. (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 N. 12th Street, Suite 100
Phoenix, Arizona 85014
Telephone: (480) 999-4556
Email:  docket@millsandwoods.com
Email:  swoods@millsandwoods.com

Scott Edward Cole, Esq. (CA S.B. #160744)*
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Email: sec@colevannote.com

*Admitted Pro Hac Vice*

Attorneys for Representative Plaintiff
and the Plaintiff Class

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

ANWAR ABDEL RAHMAN
individually and on behalf of all others
similarly situated,

Plaintiff,

v.

ERICKSON COMPANIES, LLC,
ERICKSON FRAMING AZ, LLC, and
DOES 1 through 100, inclusive,

Defendants.

**Case No. 2:25-CV-01866-SMB**

<u>**CLASS ACTION**</u>

**DECLARATION OF SCOTT EDWARD COLE IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

I, Scott Edward Cole, hereby declare as follows:

1.      I am an attorney-at-law, admitted pro hac vice to this jurisdiction, and I am a Shareholder at the law firm of Cole & Van Note ("CVN"), attorneys for Representative Plaintiffs and the Proposed Class.

2.      I make these statements based on personal knowledge, would so testify if called as a witness at trial and have personal knowledge of the foregoing. I make this Declaration in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("MPA"). A true and correct copy of the Settlement Agreement ("S.A." or "Settlement") executed by the Parties on August 29, 2025 is attached hereto as **Exhibit A**.

## HISTORY OF THE EVENT AND THE CASE AND SETTLEMENT NEGOTIATIONS

3.      Defendants Erickson Framing Operations, LLC and Erickson Framing AZ, LLC operate an Arizona-based construction company that manufactures complete framing systems such as wall panels that are then shipped and erected at the job site. As part of their business, Defendants maintain personally identifiable information pertaining to their employees and dependents/beneficiaries of employees, including, names, some postal addresses, some driver's license numbers and Social Security numbers (collectively, "Private Information").

4.      On or about November 18, 2024, Defendants discovered unusual activity on their network. Following a forensic investigation and manual review, on February 19, 2025, Defendants confirmed that Private Information may have been made accessible to unauthorized parties. On or about March 12, 2025, Defendants began sending notice of the Data Breach to Plaintiff and approximately 11,820 other individuals whose Private Information is believed to have been exposed in the Data Breach.

5.      Plaintiff alleges that Defendants' failure to properly safeguard Plaintiff's and Class Member's Private Information resulted in damages. Defendants denied, and continue to deny, liability and any wrongdoing.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

6.      On April 2, 2025, Plaintiff Rahman, individually and on behalf of all others similarly situated, filed a class action complaint in the Superior Court of the State of Arizona in and for the County of Maricopa. On April 23, 2025, Plaintiff amended his complaint. ECF No. 1-1, at 35. On April 29, 2025, the Summons and Amended Complaint were served on Defendants' agent for service of process. *Id.* at 63-69. On May 29, 2025, Defendants removed the case to the United States District Court for the District of Arizona and filed a Motion to Dismiss on June 20, 2025. ECF No. 1. While the Motion to Dismiss was pending, the parties engaged in arms-length negotiations and agreed upon the material terms of a Settlement.

7.      During the course of the litigation, members of my firm and I conducted extensive research to investigate and understand the nature of Defendants' business, Defendants' corporate structure, how Defendants collected Private Information, and Defendants' response to the breach. Class Counsel's pre-settlement work also included, reviewing Defendants' Motion to Dismiss and researching legal issues raised therein, drafting the Settlement Agreement, engaging the Claims Administrator and drafting this Motion for Preliminary Approval. Further time and resources will be dedicated to this litigation through settlement administration, final approval, appeal and any other hearings the Court may request.

8.      Following the filing of Defendants' Motion to Dismiss, the parties engaged in months of arms-length negotiations.

9.      A true and correct copy of the Settlement Agreement ("S.A.") is attached hereto as **Exhibit A.**

## THE SETTLEMENT AGREEMENT

10.      The proposed Settlement Class is defined as: "all persons in the United States whose Private Information was potentially compromised as a result of the Data Security Incident and who were sent notice by mail of the Data Security Incident prior to the execution of this Agreement." S.A. ¶ 58.

11.     The Settlement Class excludes "(a) all persons who are governing board members of Defendants; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; and (d) any individual who timely and validly opts-out of the Settlement." S.A. ¶ 58.

12.     The proposed Settlement provides that Settlement Class Members may submit a claim for a Cash Payment for up to $5,000 for documented losses related to the Data Breach and all Settlement Class Members submitting a valid Claim Form shall receive a flat cash payment representing a *pro-rata* share of what remains in the Net Settlement Fund after payment of all valid Documented Loss claims. S.A. ¶ 70. In addition to the monetary settlement benefits, Defendants agreed to implement and/or maintain certain reasonable steps to adequately secure its systems and environments. S.A. ¶ 71.

13.     Unlike many settlements, this Settlement is non-reversionary and is structured as a common fund, meaning that all settlement benefits available to Class members will be paid out to Class members. Altogether, the $225,000 common fund will reimburse the settlement claims administrator for its work in providing Notice of this resolution to all Class members, pay all Class members who wish to participate a *pro rata* share of the net settlement fund, reimburse our firm for our legal work and substantial risks taken in taking on, litigating and successfully setting this litigation, and will provide service payments to the named Plaintiff for the risks he took and efforts he made in pursuing this litigation, in each of its iterations.

14.     *Claims Administrator:* The Parties ask the Court to appoint CPT Group, an established and respected class action administrator as the Claims Administrator for this matter. CPT Group states has administered class action settlements for over 30 years and provided services for thousands of class action cases. Payment for CPT Group's services will be paid entirely from the Settlement Fund. A declaration from CPT Group regarding its qualifications as a Settlement Administrator is attached hereto as **Exhibit C.** CPT Group agreed to a fee not to exceed $37,800, a very reasonable bid for the size of this Class and value of the Settlement.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵗʰ STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

15. *Release:* The Release in the Settlement Agreement is tailored to the claims that were or could be asserted in the lawsuit based upon the facts alleged in the Complaint. S.A. ¶¶ 106-110.

16. While there is no "reversion" of funds to the Defendants, any residual funds as a result of claimed but ultimately uncashed checks shall be disbursed to Future of Privacy Forum as a *cy pres* recipient, subject to approval by the Court. S.A. ¶ 105.

## THE PROPOSED CLASS REPRESENTATIVES

17. Plaintiff will seek a Service Award not to exceed $2,500. This Service Award is recognition for his courage in stepping forward. Plaintiff was available as proposed class representative, filed a lawsuit and worked with his attorneys as needed throughout the litigation. Plaintiff was available for questions and to supply documents to his attorneys and helped vigorously litigate the case. Plaintiff expended time and resources that other Class Members did not in litigating his case. His efforts should be rewarded.

18. I am not aware of any antagonism or conflict of interest between Plaintiff and the putative Class. In fact, Plaintiff has been appropriately involved in his case and has stayed in routine contact with my firm. Additionally, he assisted with the prosecution efforts that included frequent emails and telephone calls with counsel.

## ATTORNEYS' FEES, COSTS AND SERVICE AWARDS

19. Plaintiff will request attorneys' fees in an amount not to exceed 33.33% of the value of the Settlement Fund, plus costs. S.A. ¶ 103. The entirety of the Attorneys' Fees and Expenses Award shall be payable solely from the Settlement Fund. Class Counsel will submit a separate motion seeking attorneys' fees, costs, and Plaintiff's Service Award prior to Settlement Class Members' deadline to exclude themselves from or object to the Settlement Agreement.

20. This fee request is well within the range of reasonableness for Settlements of this nature and size as well as the substantial work and results achieved in light of the many risks highlighted in this Motion.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

21.    We also anticipate applying for a Service Award in the amount of $2,500 for Representative Plaintiff.

22.    Representative Plaintiff fully supports the settlement in this case. He has been vital in litigating this matter, including providing his personal information to our law firms. Furthermore, the Representative Plaintiff has no conflicts with the Settlement Class; has participated actively in the case; and is represented by attorneys experienced in class action litigation, including data breach cases. The Representative Plaintiff has been personally involved in the case and supports the Settlement. Representative Plaintiff diligently represented the Class by taking the initiative to commence this litigation, reviewing and approving the pleadings and staying abreast of developments in the case.

23.    If the Court approves the Settlement, the Parties will request that the Court enter a Final Approval Order and Judgment, releasing all claims that were or could have been asserted against Defendants in this litigation. Pursuant to Rule 23(e)(3), there are no other agreements that would modify any term of the Settlement

## NOTICE ADMINISTRATION

24.    The Parties have agreed to the appointment of CPT Group as the Settlement Administrator. CPT Group will administer a robust Notice Program. The Settlement Administrator is a nationally recognized and well-respected third-party class administrator that will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member via mail.

25.    The Settlement Administrator was selected after Plaintiff's counsel solicited blind, competitive bids from experienced and reputable claims administrators. The Settlement Administrator has a trusted and proven track record of supporting thousands of class action administrations.

26.    The cost of class Notice and Settlement Administration will be paid from the Settlement Fund (subject to Court approval). As described in the Settlement Agreement, the notice program shall include a Postcard Notice, a Long Notice, a Claim Form and the establishment of a Settlement Website.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL.: (510) 891-9800

27.    The Settlement Website established by CPT Group will allow Settlement Class members to submit Claim Forms and obtain notice and information about the Settlement, including, in .pdf format and available for download, relevant case filings, including the Class Notice, the Claim Form, the Preliminary Approval Order, the Settlement Agreement, the Complaint, Motion for Final Approval, Application for Attorneys' Fees, Costs, and Service Awards, Final Approval Order, and any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall remain online and operable for six months after Final Approval.

28.    In an attempt to obtain a higher claims rate, the Parties have negotiated a robust Notice Program. No later than 7 days after entry of the Preliminary Approval Order, Defendants shall provide the Settlement Administrator with the information necessary to mail the Postcard Notice to Settlement Class Members. S.A. ¶ 79. Within 30 days after entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program. S.A. ¶ 80.

29.    We have proposed Notice forms and a Notice Program that comports with due process and provides the best notice practicable to Class Members.

30.    The Notice documents are clear and concise and directly apprise Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Federal Rules of Civil Procedure Rule 23.

31.    The Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form, the Claim Form Deadline, the last day of the Opt-Out Period for individuals in the Settlement Class to opt-out of the Settlement Class, the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs and Service Award, the Final Approval Hearing date and the Settlement Website address at which Settlement Class Members may access the Settlement Agreement and other related documents and information. Class Counsel and Defendants' Counsel shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes. S.A. ¶ 81.

32.    Furthermore, the Settlement Administrator will establish a toll-free telephone number with recorded answers to commonly asked questions about the settlement and the ability to leave a message and request a call back. S.A. ¶ 76(e).

## FAIRNESS AND ADEQUACY OF THE PROPOSED SETTLEMENT

33.    My firm spent significant time and energy negotiating a bespoke agreement that matched the circumstances of this unique case. This settlement is appropriate for this case due to, *inter alia*, the following risk factors:

34.    Data breach litigation is complex, risky and evolving and, there is no guarantee of the ultimate result. Defendants would undoubtedly take this case very seriously, retain the best experts and pursue all procedural measures to ensure this case never reached a jury.

35.    All of these specific risks are on top of the general risks inherently present in data breach cases, which generally face substantial hurdles—even just to make it past the pleading stage, as evidenced here. Given the heavy obstacles and inherent risks Plaintiff faces with respect to the novel claims in data breach class actions, including class certification, summary judgment and trial, the substantial benefits this Settlement provides favors its approval.

36.    There was a substantial risk in Plaintiff obtaining and maintaining class certification. At the outset, class certification, outside the settlement context, almost always poses a significant challenge. Even if the Court certified the Class, the risk of decertification is great because data security incident litigation is constantly evolving.

37.    The area of data breach litigation is still in its infancy. Few, if any, data breach trials have been conducted and class certification presents unique damages analysis challenges. Nonetheless, various independent studies have been conducted regarding data

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

DECL. OF SCOTT E. COLE IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:24-CV-01866-SMB

breach victim experiences, some of which seek to quantify the average loss for data breach victims. I have read numerous studies regarding and discussed with various experts the damages theories and damage models available in class action litigation, and in data breach cases in particular, but the weight of the limited academic studies conclude that most class members have very limited damages, often under $50.

38. This Settlement also achieves substantial value when compared to other data breach settlements, for example: *In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *145, 149–50 (N.D.Ga. Mar. 17, 2020) (settlement value of $2.59 per class member); *Atkinson v. Minted, Inc.*, No. 3:20-cv-03869-VC, 2021 U.S.Dist. LEXIS 244257, at *2–4 (N.D.Cal. Dec. 17, 2021) (settlement value of $1.19 per class member); *Hellyer v. Smile Brands Inc.*, No. 8:21-cv-01886-DOC-ADS, 2023 U.S.Dist. LEXIS 137295, at *3 (C.D.Cal. Aug. 4, 2023. (settlement value of $3.33 per class member); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S.Dist. LEXIS 135573, at *3, 5 (N.D.Ohio Aug. 12, 2019) (settlement value of $2.88 per class member); *Cochran v. Kroger Co.*, No. 5:21-cv-01887-EJD, 2022 U.S.Dist. LEXIS 106694 (N.D.Cal. Mar. 24, 2022) (settlement value of $1.31 per Class Member); *Gaston v. FabFitFun, Inc.*, 2:20-cv-09534-RGK-E (C.D.Cal. Feb. 19, 2021) (settlement value of $1.42 per class member); *Dickey's Barbeque Restaurants, Inc.*, Case No. 20-cv-3424, Dkt. 62 (N.D.Tex. 2021) (settlement value of $0.76 per class member).

39. The consideration received in exchange for the release of Settlement Class Member claims is appropriate given the strength and weaknesses of Plaintiff's claims and the risks of continued litigation, as described above.

40. In negotiating this Settlement, I considered the relative benefits of settlement in relation to the risks of litigation. If Plaintiff had prevailed at trial, he would have sought recovery for his out-of-pocket losses and perhaps the cost of obtaining credit monitoring (although that was already offered by Defendants and, even if it had not been, this case was not really about the loss of financial data). As such, I believe that the $5,000 cap for Documented Losses will likely make all Class members who seek it whole. For example,

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

DECL. OF SCOTT E. COLE IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:24-CV-01866-SMB

according to the Federal Trade Commission's Identity Theft Survey Report, 85 percent of actual identity theft victims (of which there were, to my knowledge, **none** in the instant case) report the misuse of existing accounts and 17 percent of victims report new accounts being opened in their name. For those identity theft victims who had misuse of existing accounts, the average out-of-pocket loss was $500, while the average loss for improperly opened accounts was $1,200. Moreover, only a maximum of six percent of those who had improper use of existing accounts had out-of-pocket losses of $1,000 or above, and 16 percent of those that had accounts opened in their name had losses of $1,000 or above.

41.     The conclusion to be drawn from these preceding paragraph's information is that, even in those rare instances where actual identity theft occurs, the amount of actual damage is relatively modest, and well below the threshold amount provided under the current settlement. Also, as such, I predict that the percentage of Class Members who can claim significant documented losses will also be low. This is why this settlement was negotiated to provide dual options (i.e., (1) a substantial payment for those who can claim identity theft, or can show other actual and documented losses, or (2) a cash payment to those who either cannot and/or cannot evidence their losses through such documentation). Therefore, given the risks and uncertainties inherent with continued litigation, I believe this is a strong result and provides a substantial, indeed excellent, benefit to the Settlement Class.

**EXPERIENCE, QUALIFICATION AND VIEWS OF CLASS COUNSEL**

42.     Plaintiff requests that the Court appoint Scott Edward Cole of Cole & Van Note as Class Counsel.

43.     I was personally and actively involved in all aspects of the proceedings on this case. I am familiar with this litigation and negotiated the proposed settlement. My experience and that of other members of my firm benefited the efficient litigation of this matter and the settlement negotiations in this case significantly.

44.     CVN, the law firm I founded in 1992, is a specialized practice devoted almost exclusively to prosecuting class action matters and has so engaged in that area of practice

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

DECL. OF SCOTT E. COLE IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:24-CV-01866-SMB

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL.: (510) 891-9800

1    for the near entirety of its existence. In its 33-year history, I have prosecuted hundreds of

2    class and/or complex/representative cases. A selection of some of the more unique cases

3    are identified in the firm's professional resume, attached to this Declaration. Most of these

4    cases involved many of the same legal issues as are presented in the current action.

5        45.    While almost entirely devoted today to prosecuting cyber-security class

6    actions, CVN's past experiences run deep across various areas of the law—from

7    employment wage and hour and discrimination cases, to consumer, personal injury and

8    environmental class actions/mass tort cases. It has successfully achieved class certification,

9    settlements and judgments in varied factual scenarios, just some of the more unique,

10    difficult or groundbreaking situations being set forth in the firm's resume. Some better-

11    known and/or "game changing" cases include *Kullar v. Foot Locker Retail, Inc.* (2008) 168

12    Cal.App.4th 116 (Case No. A119697) (setting the standard for settlement approval in

13    California state courts); *Augustus (Davis) vs. ABM Security Services.*, No. S224853

14    (Sup.Ct.Cal.) (establishing a new Supreme Court standard for workplace rest periods; $110

15    million settlement); *Despres v. United Parcel Service, Inc*., Case Nos. 3:03-CV-02987

16    (TEH) and 3:03-CV-02001 (TEH) (N.D.Cal.) (historic $87 million settlement in meal

17    break-only case); *Kurihara v. Best Buy Co., Inc.*, 2007 U.S.Dist. LEXIS 64224 (N.D.Cal.

18    Aug. 29, 2007) (class cert. granted and clarifying distinction between class composition

19    and entitlement to a recovery); *Tierno v. Rite Aid Corp.,* 2006 U.S.Dist. LEXIS 71794

20    (N.D.Cal. Aug. 31, 2006) (oft-cited ruling certifying a class of retail store managers

21    alleging overtime misclassification; $6.9 million settlement); *Fulton v. Sports and Fitness*

22    *Clubs of America, dba 24 Hour Fitness, USA, Inc.,* Case No. GIC881669 (Super.Ct.Cal.

23    San Diego Cnty.), consolidated with Case No. GIC873193 (industry changing case that

24    helped define "piece rate" standard under the law; class certification and then summary

25    judgment granted; $19 million resolution); *In Re Westley Tire Fire Litigation*, Case No.

26    CV 801282 (Super.Ct.Cal. Santa Clara Cnty.) (lead counsel in toxic 7 million tire fire that

27    affected up to one third of the State of California); *In Re Unocal Refinery Litigation*, Case

28    No. C94-04141 (Super.Ct.Cal. Contra Costa Cnty.) (Steering Committee in massive toxic

chemical release and topic of my book, "Fallout"); *In Re: Apple Inc. Device Performance Litigation*, Case No. 5:18-md-02827-EJD (N.D.Cal.) (Steering Committee in consumer fraud case); and *In Re Tosco SFR Litigation* (C97-01637 (Super.Ct.Cal. Contra Costa Cnty.) (lead counsel in massive toxic airborne release over multiple towns); *Regal Medical Group, Inc., et al.* (Super. Ct. L.A. Cnty., Case No. 23STCV02939) ($50 million data breach settlement).

46.    CVN's track record is equally impressive with regard to settlements and adjudications. For example, I was co-counsel in the landmark California Supreme Court decision providing that non-exempt worker time spent under the control of the employer is compensable. *Augustus vs. ABM Security Services*, Case No. S224853 (Super.Ct.Cal.) ($110 million settlement on behalf of roughly 15,000 security guards). Additionally, I co-prosecuted what was, at the time (and perhaps still), the largest class action settlement of a meal break-only case. *Despres v. United Parcel Service, Inc.* No. 3:03-CV-02987 (TEH) and No. 3:03-CV-02001 (TEH) (N.D.Cal.) ($87 million settlement on behalf of roughly 20,000-person class). I prosecuted, obtained a judgment and thereafter negotiated a two-tiered $19 million settlement on behalf of fitness club group exercise instructors for unpaid wage and unreimbursed business expense claims. *Fulton v. Sports and Fitness Clubs of America, dba 24 Hour Fitness, USA, Inc.*, Case No. GIC881669 (San Diego Cnty.Super.Ct.) (consolidated with Case No. GIC873193). I prosecuted and settled a $15 million non-reversionary settlement on behalf of a class of approximately 68,000 security guards for meal and rest break violations. *Securitas Security Services Cases*, Case No. 1-05-CV-047499 (Santa Clara Cnty.Super.Ct.). Additionally, I negotiated a $7.5 million settlement on behalf of a class of retail assistant Managers for uncompensated time spent undergoing security checks and failure to provide meal and rest breaks. *Kelly v. Walgreens*, Case No. CGC-07-464347 (S.F.Cnty.Super.Ct.). I also brokered a $6.9 million settlement on behalf of a class of over 1,000 allegedly misclassified retail Store Managers. *Tierno v. Rite Aid Corp.*, Case No. 3:05-CV-02520 (TEH) (N.D.Cal.). I served as court-appointed lead counsel after fierce competition for that appointment in a consolidated action of nine

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

lawsuits against Walgreen Co. bringing a variety of wage and hour claims on behalf of approximately 43,000 retail store workers in California. After several years of litigation, I negotiated a $23 million settlement in that case. *In Re Walgreen Co. Wage and Hour Litigation*, Case No. 2:11-CV-07664 (PSG) (C.D.Cal.). CVN has many additional resolutions within the settlement range exhibited above and scores of others of lesser notoriety.

47.    Drawing upon that diverse background, CVN is nowadays devoted almost entirely to the prosecution of data breach class actions, with the vast bulk of its caseload being cases involving almost identical legal and factual issues to those presented in the instant case. In these matters, CVN serves in a variety of roles, oftentimes in various leadership positions. For example, CVN has served as court-appointed lead or co-lead counsel in various data breach matters, including, but not necessarily limited to: *Henderson, et al. v. Reventics, LLC*, Case No. 1:23-cv-00586-MEH (D.Colo.) (court appointed co-lead counsel); *Hinds, et al. v. Community Medical Centers, Inc.*, Case No. STK-CV-UNPI-2021-10404 (Super.Ct.Cal. San Joaquin Cnty.) (court appointed co-lead counsel); *Tsvetanova, et al. v. UCSD Health*, Case No. 37-2021-00039888-CU-PO-CTL (Super.Ct.Cal. San Diego Cnty.) (court appointed co-lead counsel); *In Re: Rackspace Data Security Litigation*, No.: SA-22-cv-01296-XR (W.D.Tex.) (court appointed lead counsel); *Fedorys, et al. v. Ethos Group Inc.*, Case No. 3:22-cv-2573-M (N.D.Tex.) (court appointed co-lead counsel); *Moreland, et al. v. 1st Franklin Financial Corporation*, Case No. 2:23-cv-00038-SCJ (N.D.Ga.) (court appointed co-lead counsel); *Domitrovich, et al. v. MC Dean, Inc.*, Case No. 1:23-cv-00210-CMH-JFA (E.D.Va) (court appointed co-lead counsel); *Deevers, et al. v. Wing Financial Services, LLC.*, Case No. 4:22-cv-00550-CVE-MTS (N.D.Okla.) (court appointed co-lead counsel); *Darrin v. Huntington Ingalls Industries, Inc.*, Case No. 4:23-cv-00053-JKW-DEM (E.D.Va.) (court appointed co-lead counsel); *Guerrero v. Merritt Healthcare Holdings, LLC*, Case No. 3:23-cv-00389-MPS (D.Conn.) (court appointed co-lead counsel); *Prutsman v. Nonstop Administration and Insurance Services, Inc*., Case No. 3:23-Cv-01131-VC (N.D.Cal.) (court appointed co-lead

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

DECL. OF SCOTT E. COLE IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:24-CV-01866-SMB

counsel); *In re DISH Network Data Security Incident Litigation,* Case No. 1:23-cv-01168-RMR-SBP (D.Colo.) (court appointed co-lead counsel); and *Byers v. Orthoalaska, LLC,* Case No. 3:23-cv-00243-SLG (D.Alaska) (court appointed co-lead counsel).

48.    CVN also serves in more informal (e.g., stipulated) leadership positions in numerous other data breach cases and in sole counsel roles in dozens more—actions currently venued across at least 30 states. What's more, CVN has a near perfect track record of being appointed lead or co-lead counsel in every data breach class action in which it sought such appointment.

49.    I am a well-respected leader in the field of class action litigation, have achieved record results in both settlements and judgments in such cases, have authored numerous scholarly publications, including my book "Fallout" (chronicling the 1994 toxic substance release by Unocal and the ensuing class action legal battle), and have been called upon to serve as a regular speaker at public seminars on issues surrounding substantive legal issues and class action procedures. I have prosecuted class actions across numerous fields, including employment, consumer, environmental, and data breach cases.

50.    The basis for my opinion that this Settlement that is fair, adequate and reasonable is further derived from research relating to the filing of the case and issues of the case, multiple discussions with counsel for Defendant relating to case management, informal exchanges of discoverable information, and the settlement negotiations themselves.

51.    In my professional opinion, the Settlement is fair, reasonable and adequate and the Class members share sufficient commonality that certification of this matter as a class action for settlement purposes would tremendously promote the efficient resolution of this dispute.

## EXHIBITS

52.    Attached hereto as **Exhibit A** is a true and correct copy of the fully executed Class Action Settlement Agreement and Release, entered into by the Representative

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

DECL. OF SCOTT E. COLE IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:24-CV-01866-SMB

1   Plaintiffs, individually, and on behalf of the putative Class, and Defendant, and exhibits

2   thereto.

3       53.    Attached hereto as **Exhibit B** is a true and correct copy of Cole & Van Note's

4   professional resume which outlines the firm's experience litigating complex/class action

5   cases like this one.

6       54.    Attached hereto as **Exhibit C** is a true and correct copy of the Declaration of

7   Carole Thompson of CPT Group.

8

9       I declare under penalty of perjury under the laws of the United States of America

10  that the foregoing is true and correct.

11      Executed this 31st day of October, 2025 at Oakland, California.

12

13                      _/s/ Scott Edward Cole_____
                        Scott Edward Cole

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL.: (510) 891-9800

-15-
DECL. OF SCOTT E. COLE IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:24-CV-01866-SMB

# Exhibit A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ANWAR ABDEL RAHMAN,<br><br>    Plaintiff,<br><br>vs.<br><br>ERICKSON COMPANIES, LLC,<br>ERICKSON FRAMING AZ, LLC and DOES<br>1 through 100, inclusive,<br><br>    Defendants. | Case No. 2:25-cv-01866-SMB |

## AMENDED CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Amended Class Action Settlement Agreement and Release ("Settlement" or "Agreement"),[1] dated as of August 29, 2025, is entered into between Plaintiff Anwar Abdel Rahman, on behalf of himself and the Settlement Class, on the one hand, and Defendants Erickson Framing Operations LLC[2] and Erickson Framing AZ, LLC (collectively "Defendants" or "Erickson") on the other hand. The Parties hereby agree to the following terms in full settlement of the Action, subject to a Final Approval Order entered by the Court.

## I.    Background

1.    Erickson operates an Arizona-based construction company that manufactures complete framing systems such as wall panels that are then shipped and erected at the job site.

2.    In the course of operating its business, Erickson maintains a limited amount of personally identifiable information pertaining to its, employees and dependents/beneficiaries of employees.

---

[1] All capitalized terms herein shall have the same meanings as those ascribed to them in Section II below.
[2] This entity is named in the Complaint as "Erickson Companies, LLC."

3.      On or about November 18, 2024, Erickson discovered unusual activity on its network. Following a forensic investigation and manual review, on February 19, 2025, Ericson confirmed that Private Information may have been made accessible to unauthorized parties.

4.      The affected information included names, some addresses, some driver's license numbers and Social Security Numbers.

5.      On or about March 12, 2025, Erickson sent notice letters to approximately 11,820 affected persons, informing them that their Private Information may have been affected in the Data Security Incident.

6.      On April 2, 2025, Plaintiff filed a Class Action Complaint. The Complaint was amended on April 23, 2025.

7.      Thereafter, Class Counsel conducted extensive research on how the breach occurred, the type of information involved, the demographics of the Class and other related issues. The Parties also began discussing settlement.

8.      On May 29, 2025, Defendants removed the case to the United States District Court for the District of Arizona. On June 20, 2025, Defendants filed a Motion to Dismiss.

9.      While the Motion to Dismiss was pending, the Parties engaged in further arms-length negotiations and agreed upon the material terms of a Settlement.

10.     The Parties now agree to settle the Action entirely, without any admission of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties. Defendants have entered into this Agreement to resolve all controversies and disputes arising out of or relating to the allegations made in the Complaint, and to avoid the litigation costs and expenses, distractions, burden, expense, and disruption to its business operations associated with further litigation. Defendants do not in any way acknowledge, admit to, or concede any of the allegations

made in the Complaint, and expressly disclaim and deny any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Complaint. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this Agreement shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement. Plaintiff has entered into this Agreement to recover on the claims in the Complaint, and to avoid the risk, delay, and uncertainty of continued litigation. Plaintiff does not in any way concede that the claims alleged in the Complaint lack merit or are subject to any defenses. The Parties intend this Agreement to bind Plaintiff, Defendants, and all Settlement Class Members.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficient of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.    **Definitions**

11.    "Action" means the lawsuit entitled: *Rahman v. Erickson Companies, LLC*, Case No. 2:25-cv-01866-SMB, currently pending in the United States District Court for the District of Arizona.

12.    "Application for Attorneys' Fees, Costs, and Service Award" means the application made with the Motion for Final Approval seeking a Service Award for Class Representative and Class Counsel's attorneys' fees and reimbursement for costs.

13.    "CAFA Notice" means the notice required by the Class Action Fairness Act of 2008, 28 U.S.C. § 1715 ("CAFA").

14.    "Cash Payment" means compensation paid to Settlement Class Members who

submit a valid Claim.

15.    "Cash Payment A" means the Settlement Class Member Benefit that Settlement Class Members, who incurred documented losses, may elect under Section V herein.

16.    "Cash Payment B" means the Settlement Class Member Benefit consisting of a cash payment that Settlement Class Members may elect under Section V herein.

17.    "Claim" means the submission of a Claim Form by a Claimant.

18.    "Claim Form" means the proof of claim, substantially in the form attached hereto as *Exhibit 1*, which may be modified, subject to the Parties' approval, to meet the requirements of the Settlement Administrator.

19.    "Claim Form Deadline" shall be 60 days after the Notice Date and is the last day by which a Claim Form may be submitted to the Settlement Administrator for a Settlement Class Member to be eligible for a Cash Payment.

20.    "Claimant" means a Settlement Class Member who submits a Claim Form.

21.    "Class Counsel" means: Scott Cole of Cole & Van Note.

22.    "Class List" means a list of all individuals in the Settlement Class. Defendants shall prepare and provide the Class List to the Settlement Administrator for Notice using information in its records. Class List shall include the Settlement Class's names, postal address, and telephone number (if available).

23.    "Class Representative" means the Plaintiff.

24.    "Complaint" means the First Amended Complaint filed in the Action on April 23, 2025.

25.    "Court" means the United States District Court for the District of Arizona, and the Judge(s) assigned to the Action.

4

26.    "Data Security Incident" means the alleged incident that occurred on or around November 18, 2024, in which unauthorized third parties purportedly gained access to Settlement Class Members' Private Information from Defendants' systems.

27.    "Defendants" means Erickson Framing Operations LLC (improperly named as Erickson Companies, LLC) and Erickson Framing AZ, LLC.

28.    "Defendants' Counsel" means Wystan M. Ackerman, Linn F. Freedman and Wm. Maxwell Daley of Robinson & Cole LLP.

29.    "Documented Losses" means without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Security Incident through the Claim Form Deadline; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long- distance telephone charges.

30.    "Effective Date" of this Agreement means the last date by which all of the following have occurred: (a) The Parties have executed this Agreement, (b) The Parties have submitted to the Court and the Court has entered the Final Approval Order and (c) The time for seeking rehearing, appellate or other review of the Final Approval Order has expired, or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing review, appeal, or certiorari could be taken has finally expired. If there are no objectors, the Effective Date is one day after the Final Approval Order is entered by the Court.

31.    "Escrow Account" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described herein.

32.    "Final Approval" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order.

33.    "Final Approval Hearing" means the hearing held before the Court during which the Court will consider granting Final Approval of the Settlement and the Application for Attorneys' Fees, Costs, and Service Awards.

34.    "Final Approval Order" means the final order that the Court enters granting Final Approval of the Settlement. The proposed Final Approval Order shall be in a form agreed upon by the Parties and will be attached as an exhibit to the Motion for Final Approval. The Final Approval Order also includes the orders, which may be entered separately, determining the amount of attorneys' fees and costs awarded to Class Counsel and any Service Award.

35.    "Long Form Notice" means the long form notice of the Settlement, substantially in the form attached hereto as *Exhibit 2*, that shall be posted on the Settlement Website and shall be available to Settlement Class Members by mail on request made to the Settlement Administrator.

36.    "Motion for Final Approval" means the motion that Plaintiff and Class Counsel shall file with the Court seeking Final Approval of the Settlement.

37.    "Motion for Preliminary Approval" means the motion that Plaintiff and Class Counsel shall file with the Court seeking Preliminary Approval of the Settlement.

38.    "Net Settlement Fund" means the Settlement Fund after payment of all Settlement Administration Costs, Court-awarded attorneys' fees and costs, and Service Award.

39.    "Notice" means the Postcard Notice, Long Form Notice, Settlement Website, and settlement telephone line that Plaintiff and Class Counsel will ask the Court to approve in connection with the Motion for Preliminary Approval.

40.    "Notice Date" means thirty (30) days after entry of the Preliminary Approval Order.

41.    "Notice Program" means the methods provided for in this Agreement for giving Notice and consists of the Postcard Notice, Long Form Notice, Settlement Website, and Settlement telephone line.

42.    "Notice of Deficiency" means the notice sent by the Settlement Administrator to a Settlement Class Member who has submitted an invalid Claim.

43.    "Objection Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 60 days after the Notice Date.

44.    "Opt-Out Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 60 days after the Notice Date.

45.    "Party" means each of the Plaintiff and the Defendants, and "Parties" means Plaintiff and Defendants collectively.

46.    "Plaintiff" means Anwar Abdel Rahman.

47.    "Postcard Notice" means the postcard notice of the Settlement, substantially in the form attached hereto as *Exhibit 3*, that the Settlement Administrator shall disseminate to the Settlement Class by mail.

48.    "Preliminary Approval" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order, substantially in the form attached as an exhibit to the Motion for Preliminary Approval.

49.    "Preliminary Approval Order" means the order preliminarily approving the Settlement and proposed Notice Program.

50.    "Private Information" means Settlement Class Members' information that may have been exposed in the Data Security Incident, which may include names, some postal addresses, some driver's license numbers and Social Security numbers.

7

51.     "Releases" means the releases and waiver set forth in Section XIII of this Agreement.

52.     "Released Claims" means the claims described in Section XIII of this Agreement.

53.     "Released Parties" means Defendants, and their past, present, and future parents, subsidiaries, divisions, departments, affiliates, predecessors, successors and assigns, and any and all of their past, present, and future directors, officers, executives, officials, principals, employees at a management level or higher, stockholders, heirs, agents, insurers, reinsurers, members, attorneys, accountants, actuaries, fiduciaries, advisors, consultants, representatives, partners, joint venturers, licensees, licensors, independent contractors, subrogees, trustees, executors, administrators, predecessors, successors and assigns, and any other person acting on Defendants' behalf, in their capacity as such. It is expressly understood that to the extent a Released Party is not a party to the Agreement, all such Released Parties are intended third-party beneficiaries of the Agreement.

54.     "Releasing Parties" means (i) Plaintiff and all Settlement Class Members, (ii) each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, affiliates, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, (iii) any entities in which a Plaintiff and/or other participating Settlement Class Member has or had a controlling interest or that has or had a controlling interest in him, her, or it, (iv) any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of a Plaintiff and/or any other Settlement Class Member, and all those who claim through them or on their behalf, and (v) the respective past and present directors, governors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys, advisors, trustees,

administrators, fiduciaries, consultants, service providers, representatives, successors in interest, assigns, beneficiaries, heirs, executors, accountants, accounting advisors, and auditors of any or all of the above persons or entities identified in (i)-(iv).

55.    "Service Award" shall mean the payment the Court may award the Plaintiff for serving as a Class Representative.

56.    "Settlement Administrator" means CPT Group, or any substitute class action settlement administrator appointed by the Court.

57.    "Settlement Administration Costs" means all costs and fees of the Settlement Administrator regarding Notice and settlement administration.

58.    "Settlement Class" means all persons in the United States whose Private Information was potentially compromised as a result of the Data Security Incident and who were sent notice by mail of the Data Security Incident prior to the execution of this Agreement. Excluded from the Settlement Class are (a) all persons who are governing board members of Defendants; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; and (d) any individual who timely and validly opts-out of the Settlement.

59.    "Settlement Class Member" means any member of the Settlement Class.

60.    "Settlement Class Member Benefit" means Cash Payment A or Cash Payment B, elected by Settlement Class Members.

61.    "Settlement Fund" means the non-reversionary cash fund that shall be established by Defendants in the amount of $225,000.

62.    "Settlement Website" means the website the Settlement Administrator will establish as a means for the Settlement Class Members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to this Agreement, the Complaint,

Defendants' Motion to Dismiss, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees, Costs, and Service Awards, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable for six months after Final Approval.

63.     "Valid Claim" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the provisions of the Settlement, (b) accurately, fully, and truthfully completed and executed, with all of the available information requested in the Claim Form, by a Settlement Class Member, (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury, (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Eastern time on the Claim Form Deadline and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Deficiency may result in a determination that the Claim is not a Valid Claim. The determination of the Settlement Administrator regarding whether a Claim is a Valid Claim shall be final, non-appealable and not subject to further review by the Court or otherwise.

## III.    **Settlement Fund**

64.     Within 30 days after Preliminary Approval and receipt of all necessary information required to make payment (e.g., wiring instructions and a W-9 form), Defendants shall deposit or cause to be deposited $25,000 into the Escrow Account to allow the Settlement Administrator to pay Settlement Administration Costs. Within 14 days after the Effective Date, Defendants shall deposit or cause to be deposited $200,000 into the Escrow Account.

65.    Under no circumstances shall Defendants be obligated to pay or cause to be paid more than $225,000. No funds shall revert back to Defendants, except in the event this Agreement is voided, cancelled, or terminated, as described in Paragraphs 111-115 in this Agreement. In the event the Effective Date occurs and the Releases take effect, no portion of the Settlement Fund shall be returned to Defendants.

66.    The Settlement Fund shall be used to pay: (1) Settlement Class Member Benefits to those Settlement Class Members who submit a Valid Claim, (2) any Service Awards awarded to Class Representative, (3) any attorneys' fees and costs awarded to Class Counsel and (4) all Settlement Administration Costs.

67.    The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-1 at all times since creation of the Escrow Account. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Escrow Account or otherwise shall be paid from the Escrow Account, including any taxes or tax detriments that may be imposed on Defendants, Defendants' Counsel, Plaintiff, and/or Class Counsel with respect to income earned by the Escrow Account, for any period during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise, shall be paid out of the Escrow Account. Defendants, Defendants' Counsel, Plaintiff, and Class Counsel shall have no liability or responsibility for any of the taxes. The Escrow Account shall indemnify and hold Defendants, Defendants' Counsel, Plaintiff, and Class Counsel harmless for all taxes (including, without limitation, taxes payable by reason of any such indemnification) on income earned by the Escrow Account or otherwise imposed on funds while they are held in the Escrow Account. The Escrow Account may not be used to pay taxes that may be owed by Plaintiffs or

Class Counsel on amounts they receive as Service Awards, attorneys' fees or costs awarded by the Court.

68.    Other than the payment of the Settlement Fund monies as described in this Agreement and maintaining the security hardening measures described in Paragraph 71, Defendants shall have no responsibility, financial obligation, or liability whatsoever under this Agreement, including but not limited to with respect to the Escrow Account, investment of the Settlement Fund or Escrow Account, payment of federal, state, and local income, employment, unemployment, excise and any other taxes, penalties, interest or other charges related to taxes imposed on the Settlement Fund or Escrow Account or its disbursement, payment of administrative, legal, accounting, or other cost occasioned by the use or administration of the Settlement Fund or the Escrow Account.

## IV.    Certification of the Settlement Class

69.    Plaintiff shall propose and recommend to the Court that the Settlement Class be certified for Settlement purposes. Defendants agree not to oppose class certification solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement; provided however, that if a Final Approval Order is not issued or if the Settlement is terminated under the provisions of this Agreement, then any certification shall be null and void and, for the avoidance of doubt, Defendants shall retain all defenses including but not limited to all rights to object to any future requests to certify a class. Plaintiff and Class Counsel shall not reference this Agreement or any negotiations leading to this Agreement in support of any subsequent motion for class certification of any class in the Action.

V.    **Settlement Consideration**

70.    Each Settlement Class Member may qualify for a Cash Payment, described herein. If a Settlement Class Member does not submit a Valid Claim or opt-out, the Settlement Class Member will release his or her claims against Defendants without receiving a Settlement Class Member Benefit.

a.    **Cash Payment A – Documented Losses**

Settlement Class Members may submit a claim for a Cash Payment under this section for up to $5,000 per Settlement Class Member upon presentment of Documented Losses related to the Data Security Incident. To receive a Documented Loss payment, a Settlement Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documenting losses. Settlement Class Members will be required to submit reasonable documentation supporting the losses. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or, if his or her Claim is rejected by the Settlement Administrator for any reason and the Settlement Class Member fails to cure his or her Claim, the Claim for Cash Payment A will be rejected, and the Settlement Class Member's Claim will only receive Cash Payment B (detailed below). To ensure full compensation for Settlement Class Members with document losses before allocation of remaining funds, payments to Cash Payment A Claimants will be given priority over Claimants for a Pro Rata Payment (Cash Payment B, described below) (i.e., the Net Settlement Fund will first be reduced by the aggregate amount of Settlement Class Members making claims to the Documented Loss Fund, with all available remaining funds in the Net Settlement Fund to be, thereafter, allocated among all Settlement Class Members who submit a valid Claim Form and who only request or

based on the determination of the Settlement Administrator are only entitled to receive Cash Payment B). In the event that approved Claims for Cash Payment A exceed all of the available funds within the Net Settlement Fund, any approved Claims for Cash Payment A will be reduced *pro rata* and no payments will be issued for Cash Payment B.

**b.     Cash Payment B – Flat Cash Payment**

All Settlement Class Members, including Settlement Class Members who elected Cash Payment A, shall also receive Cash Payment B. Cash Payment B is a flat cash payment representing a *pro-rata* share of what remains in the Net Settlement Fund after payment of all valid Documented Loss claims. For example, if the Court awards attorneys' fees and expenses of $60,000 and a Service Award of $2,500, settlement administration costs total $25,000, and valid Documented Loss Claims total $25,000, the remaining amount of the Net Settlement Fund would be $112,500. If approximately 10% of Settlement Class Members (approximately 1,182 of them) submit a valid claim for Cash Payment B, the pro rata payment would be approximately $95. This amount will vary depending on the amounts awarded or expended for the various categories described above as well as the number of Settlement Class Members making valid Documented Loss Claims and valid claims for Cash Payment B. The Settlement Administrator's determination of the amount of Cash Payment B, if any, shall be final and not subject to review by the Court or otherwise.

71.     **Business Practice Changes** – Plaintiff has received assurances that Defendants either have undertaken or will undertake reasonable steps to further secure their systems and environments. These steps include security enhancements, including deployment of multi-factor authentication, endpoint management, VPN, network segmentation, email scanning and filtering, separate security keys for administrative accounts, and employee education and training.

Defendants have provided confidential discovery regarding the number of individuals in the Settlement Class, the facts and circumstances of the Data Security Incident and Defendants' response thereto, and the changes and improvements that have been made or are being made to protect Class Members' Private Information. Defendants will pay the costs of these security enhancements separate and apart from the cash component paid to Class Members. The estimated cost of such measures is $332,758.

## VI.    Settlement Approval

72.    Upon execution of this Agreement by all Parties and Class Counsel, Class Counsel shall file a Motion for Preliminary Approval, which will be provided to Defendants' Counsel for review prior to filing. The proposed Preliminary Approval Order shall be attached to the Motion for Preliminary Approval and shall be in a form agreed to by Class Counsel and Defendant.

73.    The Motion for Preliminary Approval shall, among other things, request the Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable, (2) provisionally certify the Settlement Class for settlement purposes only, (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement, (4) approve the Claim Form and Claim process, (5) approve the procedures for individuals in the Settlement Class to opt-out of or object to the Settlement, (6) stay the Action pending Final Approval of the Settlement and (7) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, Class Counsel, and Defendants' Counsel.

## VII.    Settlement Administrator

74.    The Parties agree that, subject to Court approval, CPT Group shall be the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in the Preliminary Approval Order and the Agreement and comply with all applicable laws, including,

but not limited to, the Due Process Clause of the United States Constitution.

75.     The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claims process, administering the Settlement Fund, and distributing the Cash Payments to Settlement Class Members who submit Valid Claims.

76.     The Settlement Administrator's duties include to:

a.     Complete the Court-approved Notice Program by noticing the Settlement Class by Postcard Notice, sending Long Form Notices and paper Claim Forms on request from individuals in the Settlement Class, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit a Valid Claim;

b.     Establish and maintain the Settlement Fund in the Escrow Account approved by the Parties;

c.     Establish and maintain a post office box to receive opt-out requests from the Settlement Class, objections from Settlement Class Members, and Claim Forms;

d.     Establish and maintain the Settlement Website to provide important information about the Settlement and to receive electronic Claim Forms;

e.     Establish and maintain an automated toll-free telephone line for the Settlement Class to call with Settlement-related inquiries, and answer frequently asked questions of individuals in the Settlement Class who call with or otherwise communicate such inquiries;

f.     Respond to any mailed Settlement Class Member inquiries;

g.     Process all opt-out requests from the Settlement Class;

h.    Provide weekly reports to Class Counsel and Defendants' Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

i.    In advance of the Final Approval Hearing, prepare a declaration confirming the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each individual in the Settlement Class who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

j.    Distribute, out of the Settlement Fund, Cash Payments by electronic means or by paper check;

k.    Pay Court-approved attorneys' fees and costs, and Service Awards out of the Settlement Fund;

l.    Pay Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel;

m.    Pay any required taxes out of the Settlement Fund; and

n.    Any other Settlement Administration function at the instruction of Class Counsel and Defendants' Counsel, including, but not limited to, verifying that the Settlement Fund has been properly administered and that the Cash Payments have been properly distributed.

77.    The Notice Program and Notices will be reviewed and approved by the Settlement Administrator but may be revised as agreed upon by the Parties prior to submission to the Court

for approval. Immaterial and formatting revisions to the Notices may also be made after Court approval and prior to dissemination.

## VIII.    <u>Notice to the Settlement Class</u>

78.    The Settlement Administrator, on behalf of Defendant, will serve the CAFA Notice no later than ten days after this Agreement is filed with the Court and will provide a declaration confirming issuance of the CAFA Notice to be filed with the Court.

79.    Defendants will make available to the Settlement Administrator the Class List no later than 7 days after entry of the Preliminary Approval Order.

80.    Within 30 days after entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program provided herein, using the forms of Notice approved by the Court. Notice shall be disseminated via U.S. Mail to the Settlement Class's mailing addresses for Settlement Class Members. Notice shall also be published on the Settlement Website.

81.    The Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form, the Claim Form Deadline, the last day of the Opt-Out Period for individuals in the Settlement Class to opt-out of the Settlement Class, the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs and Service Award, the Final Approval Hearing date and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. Class Counsel and Defendants' Counsel shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement

18

Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

82.     The Settlement Administrator shall establish the Settlement Website no later than the day before Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claims Form that can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

83.     **Opt-Outs** – The Long Form Notice also shall include a procedure for individuals in the Settlement Class to opt-out of the Settlement; and the Postcard Notice shall direct individuals in the Settlement Class to review the Long Form Notice to obtain the opt-out instructions. Individuals in the Settlement Class may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt-out to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. The opt-out request must be personally signed by the Settlement Class Member and contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. Any individual in the Settlement Class who does not timely and validly request to opt out shall be bound by the terms of this Agreement even if he or she does not submit a Valid Claim.

84.     **Objections** – The Long Form Notice also shall include a procedure for the Settlement Class to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Award, and the Postcard Notice shall direct the Settlement Class to review the Long Form Notice to obtain the objection instructions. Objections must be mailed to the Clerk of the Court, Class Counsel, Defendants' Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection

Period, as specified in the Notice. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

85.     For an objection to be considered by the Court, the objection must also set forth:

       a.    the name of this Litigation *(Rahman v. Erickson Companies, LLC*, Case No. 2:25-cv-01866-SMB);

       b.    the objector's full name, mailing address, telephone number, and email address (if any);

       c.    the specific reasons for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

       d.    the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

       e.    the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;

       f.    the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections

that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

g.      any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

h.      the identity of all counsel (if any) representing the objector and whether they will appear and address the Court at the Final Approval Hearing;

i.      a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

j.      a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

k.      the objector's signature (an attorney's signature is not sufficient).

86.    Class Counsel and/or Defendants' Counsel may conduct limited discovery on any objector or objector's counsel.

87.    The Settlement Administrator shall perform reasonable address traces for those Postcard Notices that are returned as undeliverable. By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. Within five days after the Settlement Administrator's receipt of any Postcard Notices, the Settlement Administrator shall re-mail the Post Card Notice using any forwarding address provided by the USPS. The Settlement Administrator shall have no obligation to make further attempts to locate or send Summary Notice to Proposed Settlement Class Members whose Summary Notices is returned by the USPS a second time. In order to provide additional time for Settlement Class Members who are re-mailed a Postcard Notice pursuant to this

Paragraph, the Claims Deadline, Claims Period, Opt-Out Period, and Objection Deadline for those Settlement Class Members who are re-mailed a Postcard Notice shall be extended an additional fifteen (15) days from the original deadlines.

## IX.    Claim Form Process and Disbursement of Cash Payments

88.    The Notice will explain to the Settlement Class that they may be entitled to a Settlement Class Member Benefit and how to submit a Claim Form.

89.    Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Form.

90.    The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. The Settlement Administrator shall examine the Claim Form before designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim, and the decision of the Settlement Administrator regarding whether a Claim is a Valid Claim shall be final and not appealable or reviewable by the Court or otherwise.

91.    The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. No Settlement Class Member may submit more than one Claim Form. The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member. The Settlement Administrator shall use its best efforts to determine whether there is any duplication of claims, and if there is, contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration.

92.     The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator may require information from Claimants or deny Claims, subject to oversight by the Court.

93.     Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Claimant or Settlement Class Member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration. The Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the Claimant's physical or e-signature. A Claimant shall have until the Claim Form Deadline, or 15 days from the date the Notice of Deficiency is sent to the Claimant via mail and postmarked or via email, whichever is later, to reply to the Notice of Deficiency and provide the required information. If the Claimant timely and adequately provides the requested information and/or documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator. If the Claimant does not

timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim unless Defendants and Class Counsel otherwise agree.

94.    Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for, among other reasons, the following:

    a.    Failure to fully complete and/or sign the Claim Form;

    b.    Illegible Claim Form;

    c.    The Claim Form is fraudulent;

    d.    The Claim Form is duplicative of another Claim Form;

    e.    The Claimant is not a Settlement Class Member;

    f.    The Claimant submitted a timely and valid request to opt out of the Settlement Class, unless the opt out request is withdrawn by the Claimant in writing.

    g.    The person submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

    h.    Failure to submit a Claim Form by the Claim Form Deadline; and/or

    i.    The Claim Form otherwise does not comply with the requirements of this Settlement.

95.    The Settlement Administrator's reduction or denial of a Claim is final, subject to the following procedures:

    a.    The Settlement Administrator shall have 10 days from the Claim Form Deadline to approve or reject Claims.

    b.    A request for additional information by sending a Notice of Deficiency shall not be considered a denial for purposes of this Paragraph.

c.    If a Claim is rejected, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Class Counsel and Defendants' Counsel shall be provided with copies of all such notifications to Claimants.

d.    The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding, and not reviewable by the Court or otherwise.

96.    The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by Class Counsel or Defendants' Counsel. Additionally, Class Counsel and Defendants' Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

97.    No person or entity shall have any claim against Defendants, Defendants' Counsel, Plaintiff, the Settlement Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

98.    No later than 30 days after the Effective Date, the Settlement Administrator shall distribute the Settlement Class Member Benefits.

99.    Cash Payments to Settlement Class Members will be made electronically or by paper check. Settlement Class Members who do not open their email or provide incorrect or incomplete electronic payment information shall receive a paper check in the mail. Settlement Class Members receiving payment by check shall have 90 days to negotiate the check.

## X.    **Final Approval Order and Final Judgment**

100.    Plaintiff shall file the Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees, Costs, and Service Award, no later than 45 days after the Notice

Date. At the Final Approval Hearing, the Court may choose to hear argument on Plaintiff's Motion for Final Approval of the Settlement and Application for Attorneys' Fees, Costs, and Service Award. In the Court's discretion, the Court also may hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement and/or to the Application for Attorneys' Fees, Costs, and Service Award, provided the objectors submitted timely objections that meet all of the requirements listed in the Agreement.

101.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon, and whether to grant the Application for Attorneys' Fees, Costs, and Service Award. Such proposed Final Approval Order shall, among other things:

  a. Determine that the Settlement is fair, adequate and reasonable;

  b. Finally certify the Settlement Class for settlement purposes only;

  c. Determine that the Notice Program satisfies Due Process requirements;

  d. Bar and enjoin all Releasing Parties from asserting any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

  e. Release Defendants and the Released Parties from the Released Claims; and

  f. Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendants, Plaintiff, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## XI.    Service Award, Attorneys' Fees and Costs

102.    **Service Award** – In recognition of the time and effort the Class Representative expended in pursuing this Action and in fulfilling his obligations and responsibilities as Class Representative, and of the relief conferred on all Settlement Class Members by the Settlement, Class Counsel shall request a Service Award for the Class Representative in an amount not to exceed $2,500. If approved, the Service Award shall be paid by the Settlement Administrator out of the Settlement Fund within 21 days of the Effective Date. The Service Award payment to the Class Representative shall be separate and apart from their entitlement to benefits from the Settlement Fund.

103.    *Attorneys' Fees and Costs* – Class Counsel shall apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. The attorneys' fees and cost awards approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund by wire transfer to an account designated by Class Counsel, within 21 days of the Effective Date. In order to receive such payment, no more than 10 business days (not counting Saturdays, Sundays or legal holidays) before the payment is due, Plaintiffs and Class Counsel must provide a completed and signed IRS Form W-9 (Request for Taxpayer Identification Number and Certification) to the Settlement Administrator. Settlement Class Counsel and the Settlement Class Representative agree that any federal, state, municipal, or other taxes, contributions, or withholdings that may be owed or payable by them, or any tax liens that may be imposed, on the sums paid to them pursuant to this paragraph are their sole and exclusive responsibility, and any amount required to be withheld for tax purposes (if any) will be deducted from those payments.

104.    This Settlement is not contingent on approval of the Application for Attorneys'

Fees, Costs, and Service Award, and if the Court denies the application or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. The provisions for attorneys' fees and costs and the Service Award were not negotiated until after all material terms of the Settlement.

## XII.  **Disposition of Residual Funds**

105.   The Settlement is designed to exhaust the Settlement Fund. In the event there are funds remaining from uncashed checks in the Settlement Fund 20 days following the 90-day check negotiation period, all remaining funds shall be distributed to Future of Privacy Forum as a *cy pres* recipient, subject to approval by the Court.

## XIII.  **Releases**

106.   As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully, finally, and irrevocably released and forever discharged the Released Parties of, and shall be forever barred from instituting, maintaining, or prosecuting, any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, whether on behalf of themselves or others, that result from, arise out of, are based upon, or relate to (a) the Data Security Incident; (b) the Action; or (c) any of the alleged violations of laws or regulations cited in the Complaint or the Action.

107.   Plaintiff and Settlement Class Members covenant and agree they will not take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any Released Claim, directly or indirectly, whether on behalf of themselves or others, against any of the Released Parties in any jurisdiction.

108.    Individuals in the Settlement Class who opt-out of the Settlement prior to the Opt-Out Deadline do not release their claims and will not obtain any benefits under the Settlement. With respect to the Released Claims, Plaintiff and Settlement Class Members, expressly understand and acknowledge it is possible that unknown economic losses or claims exist or that present losses may have been underestimated in amount or severity. Plaintiff and Settlement Class Members explicitly took that into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein, having been bargained for between Plaintiff and Defendants with the knowledge of the possibility of such unknown claims for economic loss, were given in exchange for a full accord, satisfaction, and discharge of all such claims. Consequently, with respect to any unknown or underestimated claims that result from, arise out of, are based upon, or relate to (a) the Data Security Incident; (b) the Action; or (c) any of the alleged violations of laws or regulations cited in the Complaint or the Action, Plaintiffs and the Damages Settlement Class Members shall be deemed to have, and by operation of the Settlement shall have, waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code (to the extent it is applicable, or any other similar provision under federal, state or local law to the extent any such provision is applicable), which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

109.    Plaintiff or Settlement Class Members may hereafter discover facts other than or different from those that he or she knows or believes to be true with respect to the subject matter of the claims released herein, or the law applicable to such claims may change. Nonetheless, each

of those individuals expressly agrees that, as of the Effective Date, he or she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this Agreement. Further, each of those individuals agrees and acknowledges that he or she shall be bound by this Agreement, including by the release herein and that all of their claims in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he or she never receives actual notice of the Settlement and/or never receives a Cash Payment from the Settlement.

110.    Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiff and Settlement Class Members and (b) Plaintiff and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting any Released Claim against the Released Parties, whether on behalf of Plaintiff, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

**XIV. <u>Termination of Settlement</u>**

111.    This Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events:

a.    Court approval of the Settlement consideration set forth in Section V and the Releases set forth in Section XIII of this Agreement;

b.    The Court has entered the Preliminary Approval Order substantially in the form attached to the Motion for Preliminary Approval;

c.    The Court has entered the Final Approval Order, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order are resolved in favor of Final Approval; and

d.    The Effective Date has occurred.

112.    If any of the conditions specified in the preceding paragraph are not met, then this Agreement shall be cancelled and terminated.

113.    Defendants shall have the option to terminate this Agreement if more than 1% of the Settlement Class opt-out of the Settlement. Defendants shall notify Class Counsel and the Court of their intent to terminate this Agreement pursuant to this paragraph within 10 days after the end of the Opt-Out Period, or the option to terminate shall be considered waived.

114.    In the event this Agreement is terminated or fails to become effective, then the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement, and the parties shall jointly file a status report in the Court seeking to reopen the Action. In such event, the terms and provisions of this Agreement shall have no further force and effect with respect to the Parties and shall not be used in this case or in any other action or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

115.    In the event this Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to Defendants. However, Defendants shall have no right to seek from Plaintiff, Class Counsel, or the Settlement Administrator the Settlement Administration Costs paid by Defendants. The Settlement Administrator shall return all remaining amounts in the Settlement Fund to Defendants within 21 days of termination.

**XV.**    **Effect of Termination**

116.    The grounds upon which this Agreement may be terminated are set forth in Section XIV. In the event of a termination, this Agreement shall be considered null and void; all of Plaintiff's, Class Counsel's, Defendants' and Defendants' Counsel's obligations under the Settlement shall cease to be of any force and effect; and the Parties shall return to the status quo ante in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement rights, claims, and defenses will be retained and preserved.

117.    In the event the Settlement is terminated in accordance with the provisions of this Agreement, any discussions, offers or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose. In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

**XVI.**    **No Admission of Liability**

118.    This Agreement reflects the Parties' compromise and settlement of disputed claims. This Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law. Defendants have denied and continue to deny each of the claims and contentions alleged in the Complaint. Defendants specifically deny that a class could or should be certified in the Action for litigation purposes. Defendants do not admit any liability or wrongdoing of any kind, by this Agreement or otherwise. Defendants have agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action.

119.    Class Counsel believes the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel fully investigated the facts and law relevant to the merits of the claims, and conducted an independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

120.    This Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

121.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiff or the Settlement Class, or of any wrongdoing or liability of the Released Parties or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

122.    In addition to any other defenses Defendants may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against any action, suit, or other

proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

## XVII. Miscellaneous Provisions

123.    Gender and Plurals. As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

124.    Binding Effect. This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

125.    Cooperation of Parties. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

126.    Obligation to Meet and Confer. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

127.    Integration and No Reliance. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

128.    No Conflict Intended. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

129.    <u>Governing Law</u>. Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the state of Arizona, without regard to the principles thereof regarding choice of law.

130.    <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required. Electronic signatures exchanged in PDF format shall be treated as equivalent to original signatures.

131.    <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties (except that if a lawsuit is filed against the Defendant in another jurisdiction it may, at its option, seek to enforce this Agreement in that jurisdiction). The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

132.    <u>Notices</u>. All notices provided for herein, shall be sent by email with a hard copy sent by first class mail to:

If to Plaintiff or Class Counsel:

    Scott Edward Cole
    Cole & Van Note
    555 12th Street, Suite. 2100
    Oakland, CA 94607
    sec@colevannote.com

If to Defendants or Defendants' Counsel:

    Wystan M. Ackerman
    Linn F. Freedman
    Robinson & Cole LLP
    One State Street
    Hartford, CT 06103
    lfreedman@rc.com
    wackerman@rc.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

133. <u>Modification and Amendment</u>. This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and Defendants and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

134. <u>No Waiver</u>. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

135. <u>Authority</u>. Class Counsel (for Plaintiff and the Settlement Class), and Defendants represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation, or entity included within the definitions of Plaintiff and Defendants to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and

to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

136.    <u>Agreement Mutually Prepared</u>. Neither Plaintiff nor Defendants shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

137.    <u>Independent Investigation and Decision to Settle</u>. The Parties understand and acknowledge they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge they reviewed and analyzed information that they used to make certain determinations, arguments, and settlement positions. The Parties agree this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined information later shows. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

138.    <u>Receipt of Advice of Counsel</u>. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein,

received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

139.    Exhibits. The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

140.    Representations/Warranties Regarding Other Potential Plaintiff or Legal Claims. Class Counsel represents and warrants that they do not represent any clients, or have knowledge of any potential clients, with claims or potential claims against the Released Parties aside from the Released Claims. Plaintiff and Class Counsel each represent and warrant that neither of them is aware of any potential plaintiff, or any attorney other than Class Counsel, who intends to make demands or bring litigation against the Released Parties. Plaintiff and Class Counsel each further represent and warrant that neither of them has been notified or otherwise informed of any such intention or consideration thereof. Plaintiff and Class Counsel each further represent and warrant that neither of them has been referred to any other attorney or any other individual alleging to have, asserting, pursuing, or seeking to pursue any claims against the Released Parties. Class Counsel represents and warrants that they have removed all advertisements, including social media posts, soliciting potential clients to pursue claims against Defendants or any of the Released Parties. Class Counsel further represents and warrants that they have removed any other publications, including social media posts, announcing, publicizing, or describing the Released Claims, to the extent published by Class Counsel.

141.    Bar to Future Suits. Upon entry of the Final Approval Order, the Releasing Parties shall be enjoined from prosecuting any Released Claim in any proceeding against the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required

by this Agreement or by the Final Approval Order. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this paragraph.

142.    Confidentiality. All persons involved in the Settlement will be required to keep confidential any Private Information of any members of the Settlement Class. Any documents or information provided to Class Counsel containing Personal Information must be destroyed within 30 days of the Settlement Administrator completing the issuance of all settlement payments.

143.    Public Statements. There will be no press release regarding the Settlement, and neither side will initiate contacts with the media nor issue any public statement, comment, or promotional material that references the existence or terms of the Settlement or the litigation, other than to refer media inquiries to the Settlement Website and the Settlement documents filed with the Court.

144.    Deadlines. In the event any date or deadline set forth in this Agreement falls on a weekend or federal or Arizona state legal holiday, such date or deadline shall be on the first business day thereafter.

145.    Retention of Records. The Settlement Administrator and Class Counsel shall retain copies or images of all returned mailed notices, correspondence related thereto and settlement checks in their possession for a period of two (2) years after the Effective Date. After this time, the Settlement Administrator shall provide its records to Defendant if Defendant so desires, and the Settlement Administrator shall otherwise destroy any such documentary records they have in their possession regarding the administration of the Settlement (including all Class Member information).

*Signature Page to Follow*

**PLAINTIFF**

*Anwar AbdelRahman*

ID_wGTnxWY3LxFSC9QaeQhnqrSH

**ANWAR ABDEL RAHMAN**

**CLASS COUNSEL**

**SCOTT EDWARD COLE**
COLE & VAN NOTE

**DEFENDANTS**

ERICKSON FRAMING OPERATIONS LLC

By: _____
Title: _____

ERICKSON FRAMING AZ, LLC

By: _____
Title: _____

**PLAINTIFF**

_____

**ANWAR ABDEL RAHMAN**

**CLASS COUNSEL**

_____

**SCOTT EDWARD COLE**
COLE & VAN NOTE

**DEFENDANTS**

_____

ERICKSON FRAMING OPERATIONS LLC

By: _____
Title: _____
CEO

_____

ERICKSON FRAMING AZ, LLC

By: _____
Title: _____
CEO

# Exhibit 1

**Must be postmarked or submitted online
NO LATER THAN [DATE]**

*Rahman v. Erickson Companies, LLC*
PO Box 19504
Irvine, CA 92623
www.[Web Address].com

## Claim Form

### SETTLEMENT BENEFITS - WHAT YOU MAY GET

If you received notice that your Private Information was potentially compromised in the *Rahman v. Erickson Companies, LLC* Data Security Incident that took place on or about November 18, 2024 and if you did not opt out of the settlement, you may submit a claim.

**The easiest way to submit a claim is online at www.[Web Address].com,** or you can complete and mail this Claim Form to the mailing address above.

**You may be eligible for the following Cash Payments.**

**Cash Payment A – Documented Losses:** All Settlement Class Members who submit a Valid Claim are eligible to receive reimbursement for documented losses caused by the Data Security Incident, if not already reimbursed through any other source, not to exceed $5,000 per Settlement Class Member. To receive a documented loss payment, a Settlement Class Member will be required to submit reasonable documentation supporting the losses.

If a Settlement Class Member does not submit reasonable documentation supporting a loss, the Settlement Class Member will only receive Cash Payment B (detailed below). Claims for documented losses (Cash Payment A) will be paid first, with any remaining funds distributed pro-rata as Cash Payment B to all valid claimants.

**Cash Payment B – Flat Cash Payment:** All Settlement Class Members who timely submit a valid Claim Form, including Settlement Class Members who elected Cash Payment A, will also receive Cash Payment B. Cash Payment B is a flat cash payment representing a pro-rata share of the remaining Net Settlement Fund after all valid Documented Loss claims are paid. To receive a flat cash payment, Settlement Class Members must submit a claim, but no documentation is required.

**Claims must be submitted online or mailed by [DATE]. Use the address at the top of this form for mailed claims.**

For more information and complete instructions visit www.[Web Address].com.

**Settlement benefits will be distributed after the Settlement is approved by the Court and final.**

## Your Information

*This information will be used solely to contact you and to process your claim. It will not be used for any other purpose. If any of the following information changes, you must promptly notify us by emailing [Email]@cptgroup.com.*

First Name

Last Name

Mailing Address

City

State

ZIP Code

Phone Number

Email Address

Unique ID (as shown on the notice you received)

## Cash Payment

You can submit a claim for the following cash payments.

**1. Cash Payment A – Documented Losses**: You may receive reimbursement for documented losses up to $5,000 total, if you lost or spent money trying to prevent or recover from fraud or identity theft that you believe is fairly traceable to the Data Security Incident and have not been reimbursed for that money.

**Examples of documented losses include:** out of pocket expenses incurred as a result of the Data Security Incident, including (without limitation) bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, gasoline for local travel, fees for credit reports, credit monitoring, or other identity theft insurance products purchased on or after November 18, 2024 through the Claim Form Deadline.

**Examples of supporting documentation include (but are not limited to**): (i) credit card statements; (ii) bank statements; (iii) invoices; (iv) telephone records; and (v) receipts. Self-prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. You will not be reimbursed for expenses if you have been reimbursed for the same expenses by another source.

To obtain reimbursement under Documented Losses, you must provide the details below and attach supporting documentation.

**Supporting documentation must be provided:** Attach a copy of credit card statements, bank statements, invoices, telephone records, and receipts for each expense (you may redact unrelated transactions).

| Description of Expense and Supporting Documents | Amount |
|---|---|
|  |  |
|  |  |
|  |  |

**2. Cash Payment B – Flat Cash Payment**: Cash Payment B is a flat cash payment representing a pro-rata share of the remaining Net Settlement Fund after all valid Documented Loss claims are paid.

☐   Check this box to receive a Flat Cash Payment.

| How You Will Receive Your Payment |
|---|

If you make a claim for a cash payment using this Claim Form, you will receive your payment by check. To receive an electronic payment, submit your claim online at www.[Web Address].com.

| Signature |
|---|

I attest under penalty of perjury that the information supplied in this Claim Form is true and correct to the best of my knowledge.

I understand that I may be asked to provide more information by the Settlement Administrator before my claim is complete and valid.

_____        Date: _____ - _____ - _____
Signature                                                                              MM       DD      YYYY

# Exhibit 2

**If your Private Information was potentially compromised in a Data Security Incident that took place at Erickson Companies, LLC on or around November 18, 2024, you could get a payment from a class action Settlement.**

United States District Court for the District of Arizona
*Rahman v. Erickson Companies, LLC*
Case No. 2:25-cv-01866-SMB

*A court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A Settlement has been proposed in a class action lawsuit against Erickson Companies, LLC ("Defendants" or "Erickson"), relating to the incident discovered on or around November 18, 2024, in which unauthorized third parties potentially gained access to Settlement Class Members' Private Information (the "Data Security Incident").

- If your Private Information was potentially accessible as a result of the Data Security Incident, and you were mailed notice from Erickson about the Data Security Incident prior to August 29, 2025, you are included in this Settlement as a "Settlement Class Member."

- The Settlement provides a $225,000 Settlement Fund which will be used to pay for Settlement Class Member Benefits, notice and administration costs, attorneys' fees and costs awarded by the court, and a service award to the class representative if awarded by the court.

- Your legal rights are affected regardless of whether you do or do not act. Read this notice carefully. For complete details, visit www.[Web address].com or call toll-free [Toll-free number].

**This Notice may affect your rights. Please read it carefully.**

| Your Legal Rights and Options | | Deadline |
|---|---|---|
| **DO NOTHING** | You will not receive a payment and will no longer be able to sue Defendants over the claims resolved in the Settlement. You will remain a member of the Settlement Class and be subject to the terms of the Settlement if approved by the Court. | No Deadline |
| **SUBMIT A CLAIM FORM** | The only way to receive a payment. Claims must be submitted by **[Date].** | **[Date]** |
| **EXCLUDE YOURSELF** | If you ask to be excluded, you will not receive a cash payment, but you may be able to file your own lawsuit against Defendants, for the same claims. This is the only option that leaves you the potential to file your own lawsuit against Defendants for the claims that are being resolved by the Settlement. To be effective, you must submit a request for exclusion by the deadline. | **[Date]** |
| **OBJECT** | If you do not exclude yourself from the Settlement Class, you may submit an objection telling the Court why you do not like the Settlement. If your objection is overruled, you will be bound by the Settlement. | **[Date]** |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case must still decide whether to approve the Settlement and the requested attorneys' fees, service award and costs. No Settlement benefits or payments will be provided unless and until the Court approves the Settlement and it becomes final.

## BASIC INFORMATION

| | |
|---|---|
| **1.** | **Why is this Notice being provided?** |

A court authorized this Notice because you have the right to know about the Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant Final Approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get them.

The United States District Court for the District of Arizona is overseeing this class action. The lawsuit is known as *Rahman v. Erickson Companies, LLC,* Case No. 2:25-cv-01866-SMB. The individual who filed this lawsuit is called the "Plaintiff" and/or "Class Representative" and the companies sued, Erickson Framing Operations, LLC and Erickson Framing AZ, LLC, are called the "Defendants."

| | |
|---|---|
| **2.** | **What is this lawsuit about?** |

This matter is a class action (the "Action") arising from an incident whereby a third-party is believed to have gained unauthorized access to certain of Defendants' computer systems and the data stored thereon, resulting in potentially accessing sensitive personal information of Settlement Class Members. The lawsuit asserts common law claims against Defendants for alleged negligent data security practices, alleged breach of contract, and a statutory claim.

Defendants deny any allegation of wrongdoing and deny that Plaintiff would prevail or be entitled to any relief should this matter proceed to be litigated.

| | |
|---|---|
| **3.** | **Why is the lawsuit a class action?** |

In a class action, the Class Representative sues on behalf of all people who are alleged to have similar claims. Together, in the context of a settlement like this one, all these people are called a Settlement Class or Settlement Class Members. One court resolves the issues for all Settlement Class Members, except for those Settlement Class Members who timely exclude themselves (opt-out) from the Settlement Class.

| | |
|---|---|
| **4.** | **Why is there a Settlement?** |

Plaintiff and Defendants do not agree about the claims made in this Action. The Action did not go to trial, and the Court did not decide in Plaintiff' or Defendants' favor. Instead, Plaintiff and Defendants agreed to settle the Action. Plaintiff and the attorneys for the Settlement Class ("Class Counsel") believe the Settlement is best for all Settlement Class Members because of the Settlement benefits made available under the Settlement, the risks and uncertainty associated with continued litigation, and the nature of the defenses raised by Defendants.

## WHO IS INCLUDED IN THE SETTLEMENT?

| | |
|---|---|
| **5.** | **How do I know if I am part of the Settlement?** |

You are a Settlement Class Member if your Private Information was potentially compromised as a result of the Data Security Incident discovered in November 2024 and you were sent notice by mail of the Data Security Incident prior to August 28, 2025. If you are not sure whether you are a Settlement Class Member, you may contact the Settlement Administrator at [Toll-free number] or by emailing [Email address]@cptgroup.com.

**6.  Are there exceptions to being included in the Settlement?**

Yes, the following are not included in the Settlement Class: all persons who are governing board members of Defendants, governmental entities, the Court, the Court's immediate family, and Court staff, and any individual who timely and validly opts-out of the Settlement.

**7.  What if I am still not sure whether I am part of the Settlement?**

If you are still not sure whether you are a Settlement Class Member, you may go to the settlement website at www.[Website address].com or contact the Settlement Administrator toll-free at [Toll-free number] or by email at [Email address]@cptgroup.com.

# THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

**8.  What does the Settlement provide?**

Under the Settlement, Defendants will establish a settlement fund in the amount of $225,000. These funds will be used to pay for all valid claims made by Settlement Class Members, notice and administration costs, service award, and attorneys' fees and costs. In addition, Defendants have or will make certain data security enhancements.

All Settlement Class Members are eligible to receive Cash Payment A for Documented Losses and Cash Payment B for Flat Cash Payment.

- **Cash Payment A – Documented Losses:** Settlement Class Members may submit a claim for a Cash Payment for up to $5,000 per Settlement Class Member upon presentment of Documented Losses related to the Data Security Incident. To receive a Documented Loss payment, a Settlement Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documenting losses. Settlement Class Members will be required to submit reasonable documentation supporting the losses. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source.

  If a Settlement Class Member does not submit reasonable documentation supporting a loss, the Settlement Class Member will only receive Cash Payment B (detailed below). Claims for documented losses (Cash Payment A) will be paid first, with any remaining funds distributed pro rata as Cash Payment B to all valid claimants.

- **Cash Payment B – Flat Cash Payment**: All Settlement Class Members who submit a valid Claim Form, including Settlement Class Members who elected Cash Payment A, will also receive Cash Payment B. To receive a flat cash payment, Settlement Class Members must submit a claim, but no documentation is required.

  Cash Payment B is a flat cash payment representing a pro-rata share of what remains in the Net Settlement Fund after payment of all valid Documented Loss claims. For example, if the Court awards attorneys' fees and expenses of $60,000 and a Service Award of $2,500, settlement administration costs total $25,000, and valid Documented Loss Claims total $25,000, the remaining amount of the Net Settlement Fund would be $112,500. If approximately 10% of Settlement Class Members (approximately 1,182 of them) submit a valid claim for Cash Payment B, the pro rata payment would be approximately $95. This amount will vary depending on the amounts awarded or expended for the various categories described above as well as the number of Settlement Class Members making valid Documented Loss Claims and valid claims for Cash Payment B.

# HOW TO GET BENEFITS FROM THE SETTLEMENT

### 9.  Do I need to submit a claim?

If you would like to receive a cash payment under the Settlement, you <u>must</u> submit a Claim Form. If you do not want to give up your right to sue Defendants about the Data Security Incident or the issues raised in this case, you must exclude yourself (or "opt out") from the Settlement Class. See Question 17 below for instructions on how to exclude yourself. If you wish to object to the Settlement, you must (a) remain a Settlement Class Member (*i.e.*, you may not exclude yourself from the Settlement Class by opting out and also object to the Settlement) and (b) submit a written objection. See Question 20 below for instructions on how to submit an objection.

### 10.How do I submit a claim for the cash payment?

To receive a cash payment, you must submit a valid and timely Claim Form to the Settlement Administrator by **[Deadline].** You will need your name, address, telephone number, and email address, if applicable, and unique ID provided in the Notice sent to you, to file a Claim Form.

Claim Forms can be submitted by mail or online at www.[Website address].com. If by mail, the Claim Form must be **postmarked** by **[Deadline].** You  may request a Claim Form be mailed to you by calling [Toll-free number] or by writing to:

*Rahman v. Erickson Companies, LLC*
PO Box 19504
Irvine, CA 92623
[Email address]@cptgroup.com

### 11.  What am I giving up so as to receive the Cash Payment or to stay in the Settlement Class?

Unless you timely submit a request for exclusion to exclude yourself (opt-out), you are choosing to remain in the Settlement Class. If the Settlement is approved and becomes final, all Court orders will apply to you and legally bind you. You will not be able to sue or be part of any other lawsuit against Defendants and Released Parties about the legal issues in the Action that are released by this Settlement. The specific rights you are giving up are called "Released Claims."

### 12.  What are the Released Claims?

Section XIII of the Settlement Agreement describes the Release, in necessary legal terminology, so please read this section carefully. The Settlement Agreement is available at www.[Website address].com, and in the public Court records on file in this Lawsuit. You can also request a copy of the Settlement Agreement be mailed to you by calling or writing to the Settlement Administrator. For questions regarding the Releases or Released Claims and what the language in the Settlement Agreement means, you can also contact one of the lawyers listed in Question 15 for free, or you can talk to your own lawyer at your own expense.

### 13. What happens if my contact information changes after I submit a claim or receive the Postcard Notice?

If you change your mailing address or email address after you submit a Claim Form or after you received the Notice, it is your responsibility to inform the Settlement Administrator of your updated information. You may

notify the Settlement Administrator of any changes by writing to:

*Rahman v. Erickson Companies, LLC*
PO Box 19504
Irvine, CA 92623
[Email address]@cptgroup.com

### 14.  When will I receive my Settlement Benefits?

If you submit a timely and valid Claim Form, payment will be provided by the Settlement Administrator after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.[Website address].com or call the Settlement Administrator or the attorneys in Question 15, below, for updates.

## THE LAWYERS REPRESENTING YOU

### 15. Do I have a lawyer in this case?

Yes, the Court has appointed Scott Edward Cole of Cole & Van Note, 555 12th Street, Ste. 2100, Oakland, CA 94607 as Class Counsel to represent you and the Settlement Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in the Action.

### 16.  How will Class Counsel be paid?

Class Counsel will file a motion asking the Court to award attorneys' fees up to 33% of the Settlement Fund, plus reimbursement of costs. They will also ask the Court to approve a service award not to exceed $2,500 to the Plaintiff for his service to the Action and for his efforts in achieving the Settlement. If awarded by the Court, attorneys' fees and costs and the service award will be paid from the Settlement Fund. The Court may award less than these amounts.

A copy of Class Counsel's application for attorneys' fees, costs, and service award will be made available on the settlement website at www.[Website address].com before the deadline for submission of objections. You may also request a copy be mailed to you by calling the Settlement Administrator.

## OPTING OUT OF THE SETTLEMENT

If you are a Settlement Class Member and want to keep any right you may have to sue or continue to sue Defendants on your own based on the claims raised in the Action or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from or "opting-out" of the Settlement.

### 17.  How do I get out of the Settlement?

To opt-out of the Settlement, you must mail or email a written notice of intent to opt-out, also referred to as a "Request for Exclusion" in the Settlement Agreement. The written notice must be signed by you, include your name, mailing address, and clearly state that you wish to be excluded from the Settlement. You cannot exclude yourself by telephone or email. You must mail your exclusion request postmarked no later than [Deadline] to:

*Rahman v. Erickson Companies, LLC*
PO Box 19504
Irvine, CA 92623

| **18.  If I opt out, can I get anything from the Settlement?** |
|---|

No. If you opt out, you are telling the Court you do not want to be part of the Settlement. You can only get Settlement benefits if you stay in the Settlement.  If you opt out, do not submit a Claim Form.

| **19.  If I do not opt out, can I sue the Defendant for the same thing later?** |
|---|

No. Unless you opt-out, you give up any right to sue Defendants and Released Parties for the claims this Settlement resolves and releases relating to the Data Security Incident. You must opt-out of the Action to start your own lawsuit against the Defendants or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECTING TO THE SETTLEMENT

| **20. How do I tell the Court that I do not like the Settlement?** |
|---|

If you are a Settlement Class Member, you can tell the Court you do not agree with all or any part of the Settlement or requested attorneys' fees, costs and service award. You can also give reasons why you think the Court should not approve the Settlement or attorneys' fees, costs and service award. To object, you must mail timely written notice to the Settlement Administrator as provided below no later than [Deadline], stating you object to the Settlement.

The objection must include all the following additional information:

    a.  the name of this case, *Rahman v. Erickson Companies, LLC,* Case No. C-03-CV-25-001661;

    b.  the objector's full name, mailing address, telephone number, and email address (if any);

    c.  the specific reasons for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

    d.  the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

    e.  the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or application for attorneys' fees, costs, and service award;

    f.  the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

    g.  all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

    h.  the identity of all counsel (if any) representing the objector and whether they will appear and address the Court at the Final Approval Hearing;

    i.  a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

    j.   a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

    k.   the objector's signature (an attorney's signature is not sufficient).

To be timely, written notice of an objection in the appropriate form must be mailed, postmarked by no later than [Date] to the Court, Class Counsel, Defendants' Counsel and the Settlement Administrator:

| Court | Class Counsel | Defendants' Counsel | Settlement Administrator |
|---|---|---|---|
| Clerk of Court United States District Court for the District of Arizona 401 W. Washington St., Suite 130 Phoenix AZ 85003 | Scott Edward Cole Cole & Van Note 555 12th Street Suite 2100 Oakland, CA 94607 | Wystan M. Ackerman Linn F. Freedman Robinson & Cole LLP One State Street Hartford, CT 06103 | Rahman v. Erickson Companies, LLC PO Box 19504 Irvine, CA 92623 |

Any Settlement Class Member who fails to comply with the requirements for objecting in the Settlement Agreement waives and forfeits any and all rights they may have to appear separately and/or to object to the Settlement Agreement and will be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Action.

## 21. What is the difference between objecting and asking to opt out?

Objecting is simply telling the Court you do not like something about the Settlement or requested attorneys' fees, service award, and costs. You can object only if you stay in the Settlement Class (meaning you do not opt-out of the Settlement). Opting out of the Settlement is telling the Court you do not want to be part of the Settlement Class or the Settlement. If you opt-out, you cannot object to the Settlement.

# THE FINAL APPROVAL HEARING

## 22. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing on **[Date/Time]** before Judge [Judge] at the [Court address].

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Class Counsel's application for attorneys' fees, costs and expenses, and the service award to Plaintiff. If there are objections, the Court will consider them. The Court may also listen to people who have asked to speak at the hearing. You may attend the hearing at your own expense, or you may pay your own lawyer to attend, but it is not necessary.

Note: The date and time of the Final Approval Hearing are subject to change. Any change will be posted at www.[Website address].com.

## 23. Do I have to attend to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your

own expense. If you send an objection, you do not have to come to Court to speak about it. As long as you mail your written objection on time, the Court will consider it.

### 24. May I speak at the Final Approval Hearing?

Yes, as long as you do not exclude yourself (opt-out), you can (but do not have to) participate and speak for yourself in the Action about the Settlement. This is called making an appearance. You also can have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you at the hearing, you must follow all of the procedures for objecting to the Settlement listed in Question 20 and specifically include a statement whether you and your counsel (if any) will appear at the Final Approval Hearing.

## IF YOU DO NOTHING

### 25. What happens if I do nothing at all?

If you are a Settlement Class Member and you do nothing, you will not receive any Settlement benefits. You will give up rights explained in the "Opting Out from the Settlement" section of this Notice, including your right to start a lawsuit, or be part of any other lawsuit against Defendants or any of the Released Parties about the legal issues in the Action that are released by the Settlement Agreement.

## GETTING MORE INFORMATION

### 26. How do I get more information?

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.[Website address].com or call [Toll-free number].  You can also contact the Settlement Administrator by mail or email.

*Rahman v. Erickson Companies, LLC*
PO Box 19504
Irvine, CA 92623
[Email address]@cptgroup.com

**Please do not call the Court or the Clerk of the Court or Erickson Companies for additional information.**

# Exhibit 3

## **Court Approved Legal Notice**

United States District Court for the
District of Arizona
*Rahman v. Erickson Companies, LLC*
Case No. 2:25-cv-01866-SMB

**If your Private Information was
potentially compromised in a Data
Security Incident that took place at
Erickson Companies, LLC on or
around November 18, 2024, you
could get a payment from a
class action settlement.**

*A court has authorized this Notice.
This is not a solicitation from a lawyer.*

*Rahman v. Erickson Companies, LLC*
PO Box 19504
Irvine, CA 92623

PRESOTED
First Class
US Postage
PAID

ELECTRONIC SERVICE REQUESTED

Unique ID: «ID»
Passcode: «Passcode»
«Name»
«Address1» «Address2»
«City», «State» «Zip»

A Settlement has been proposed in a class action lawsuit against Erickson Framing Operations, LLC and Erickson Framing AZ, LLC ("Defendants" or "Erickson"), relating to the incident discovered on or around November 18, 2024, in which unauthorized third parties potentially gained access to Settlement Class Members' Private Information (the "Data Security Incident").

**WHO IS IN THE SETTLEMENT?** All persons in the United States whose Private Information was potentially compromised as a result of the Data Security Incident and were sent notice by mail prior to August 29, 2025.

**WHAT CAN I GET?** You must file a claim to receive a Cash Payment.

**Cash Payment A – Documented Losses:** You may file a claim for reimbursement for documented losses incurred as a result of the Data Security Incident up to $5,000 with supporting documentation. If you do not submit reasonable documentation, you will only receive Cash Payment B.

**Cash Payment B – Flat Cash Payment:** You may file a claim for a flat cash payment which is a pro-rata share of what remains in the Net Settlement Fund after payment of all valid Documented Loss claims, attorney's fees and expenses, service award and administrative costs. Settlement Class Members who submit a valid claim for Cash Payment A will also receive flat cash payment.

**CLAIM FORM.** You must file a claim form to receive a cash payment. The easiest way to submit a claim is online at www.[Web Address].com using the Unique ID and Passcode located on the front of this postcard to access your claim form. If you prefer to mail in a claim form, a downloadable version is available on the Settlement Website. Your claim form must be submitted by [Date].

**OTHER OPTIONS.** If you do not want to be legally bound by the settlement, you must request to be excluded ("Opt Out") by [Date]. If you want to remain part of the settlement but object to it, you may submit a written objection by [Date]. A more detailed notice is available on the Settlement Website www.[Web Address].com that explains how to exclude yourself or object.

The Court will hold a Final Approval Hearing on [Date] to consider whether to approve the Settlement, the requested Service Award of $2,500 for Plaintiff, attorneys' fees up to 33% of the Settlement Fund plus reimbursement of costs, and any objections. You or your own attorney may attend and ask to appear at the hearing but are not required to do so.

This notice is a summary. For more information, visit www.[Web Address].com. If you have questions, contact the Settlement Administrator at [Toll-free number] or by email at [Email]@cptgroup.com.

# Exhibit B



# COLE & VAN NOTE

## ATTORNEYS AT LAW

*"A single voice has the power to push Big Business toward big change."*

# FIRM RESUME

## OVERVIEW OF OUR PRACTICE

Cole & Van Note ("CVN") is a boutique class action firm known for aggressive representation and impressive results in the areas of consumer fraud, data breach, environmental and employment litigation. Founded in 1992, CVN has been devoted primarily to such matters, having litigated hundreds of class actions against businesses of all types and in nearly every industry imaginable. The members of CVN have vast experience prosecuting class/complex actions, both in a sole counsel capacity and in leadership positions, oftentimes among many firms, in California and nationwide litigation. They have published numerous scholarly articles dealing with various substantive issues as well as class action litigation/procedure, speak regularly to legal audiences, and have served as consulting experts in class action litigation. CVN's team of skilled advocates has recovered billions of dollars for tens of millions of workers and consumers, been involved in record-setting settlements and judgments and compelled the correction of innumerable unlawful practices.



## SHAREHOLDERS & ASSOCIATE ATTORNEYS



**Scott Edward Cole**, founder and shareholder of Cole & Van Note, has extensive leadership experience prosecuting class action cases in federal and state courts nationwide. Mr. Cole has authored numerous scholarly publications and serves as highly regarded guest lecturer on issues surrounding class action procedures and negotiation theory. Mr. Cole has been responsible for shaping the law in trial and appellate courts for decades, authored the book "Fallout" and is available to serve as a mediator of class action disputes.

Credentials: Admitted, State Bar of California, 1992; University of San Francisco School of Law, J.D., 1992; President, University of San Francisco Labor & Employment Law Society; San Francisco State University, B.A., Speech Communications (Individual Major in Rhetoric), 1989, Minor Study in Business Administration, 1989; Admitted, United States District Court for all California Districts, the United States District Court of Colorado, the Western District Court of Michigan, etc.; Admitted, United States Court of Appeals (6th, 9th and 10th Circuits). Additionally, Mr. Cole is a former National Association of Securities Dealers Registered Representative (Series 7

2

licensed) and is/has been a member of the Association of Trial Lawyers of America, California Lawyers Association, California Employment Lawyers Association, American Bar Association, Alameda County Bar Association (e.g., Vice Chair of ACBA's Labor & Employment Law Section Executive Committee), National Employment Lawyers Association and a U.S. Delegate to the InterAmerican Meeting of Labor and Trade Union Lawyers, Havana, Cuba (March 2012). Mr. Cole is also the author of "Fallout," a published book based upon his experiences litigating in the wake of the 1994 airborne release of toxic chemicals by the Unocal Corporation, and a resource which has been used by top tier law schools in the curriculum for first year law students.



**Laura Van Note**, shareholder, is an aggressive and skilled advocate and leads the firm's hiring and career outreach efforts. A 2013 graduate of the University of Missouri, Kansas City School of Law, her practice has focused primarily on class action representation of data breach victims and underpaid workers in employment/civil rights litigation. With a near-perfect track record for results, Ms. Van Note appears in courts across the nation, is licensed in Kansas and Missouri and in numerous federal districts.

Credentials: Admitted, State Bar of California, 2016; Admitted, State Bar of Missouri, 2013; Admitted, State Bar of Kansas, 2015; Admitted, United States District Court for all California Districts, the Eastern District of Wisconsin, District of Kansas, Eastern and Western Districts of Missouri, District of New Mexico, District of Nebraska, District of Colorado and the Northern District of Illinois; University of Missouri, Kansas City School of Law, J.D., 2013 (Order of the Barrister, Dean's List, Captain of the National Trial Advocacy Team, President of the American Constitutional Society for Law and Policy, Teaching Assistant to the Directory of Advocacy); University of Missouri, Kansas City, B.A., History, Minor in French, 2010.



**Cortney Szafran**, associate attorney, graduated from Stetson University College of Law in 2021 near the top of her class, then completing her LL.M. in the top 2% of her class from the University of California, Los Angeles School of Law. While in school at UCLA, Ms. Szafran also served as Chief Managing Editor of the Journal of Gender & Law. After graduation, she served as a civil defense attorney representing Fortune 500 companies as national counsel in complex litigation including products liability, premises liability and personal injury matters. Ms. Szafran brings a unique perspective and set of skills to the firm's high profile consumer and employment class action practice.

Credentials: Admitted, State Bar of Florida, 2021; Admitted, United States District Court for the Middle District and Southern District of Florida; Stetson University College of Law, J.D., 2021; University of South Florida, St. Petersburg, B.S., Business Economics (Minor in International Business), magna cum laude.

3



**Mark T. Freeman**, associate attorney, graduated from Pacific McGeorge School of Law in 2013 near the top of his class. During law school, Mr. Freeman engaged in the McGeorge Trial Advocacy Program (which he completed with Honors) and served as Chief Comment Editor for the McGeorge Law Review. A published author ("BarCram: How To Survive the Last Two Weeks Before You Take (And Pass) the California Bar"), Martindale-Hubbell "AV Preeminent" rated attorney and Certified Mediator, Mr. Freeman is also member of the Consumer Attorneys of California, the Congress of Neutrals and the Contra Costa County Bar Association. At CVN, Mr. Freeman utilizes his vast class action litigation experience in the areas of consumer, employment and data breach law.

Credentials: Admitted, State Bar of California, 2013; Admitted, State Bar of Texas, 2025; Admitted, District of Columbia Bar, 2025; Admitted, United States District Courts for the Northern, Central and Eastern Districts of California; Admitted, 9th Circuit Court of Appeals; Pacific McGeorge School of Law, J.D., 2013 (Order of the Coif; McGeorge Law Review); Saint Mary's College of California, B.A. in Economics; Minor in English & Creative Writing (Honors: Br. U. Jerome Griffin Award at Graduation (highest award in School of Econ. and Business)), 2010.



**Karmel Landver**, associate attorney, graduated from George Washington University Law School in 2023 with a concentration in Business and Finance Law. She also attended Reichman University (Harry Radzyner Law School) in Herzliya, Israel where she received an LL.B. in Law and B.A. in Government. After graduation, she served as a civil defense attorney with a practice that bridged transactional and litigation work, advising institutional investors, owners and operators in multi-million-dollar transactions throughout the nation.

Credentials: Admitted, State Bar of New York, 2023; George Washington University Law School, J.D., 2023; Portland State University, B.A., Political Science and Legal Studies.

*Interim Counsel not listed.*

4

## SCHOLARLY PUBLICATIONS

The following represent examples of how CVN has elected to give back and help shape the law though our own articles, opinion pieces and the like – some examples of this including:

*The Quest for Class Certification*, Employment Law Strategist (Sept. & Oct. 2003).

*To Be or Not to Be a Penalty: Defining the Recovery Under California's Meal and Rest Period Provisions*, Golden Gate U. L. Rev. (Spring 2005).

*To Certify or Not to Certify: A Circuit-By-Circuit Primer of the Varying Standards for Class Certification in Actions under the Federal Labors Standards Act*, B.U. Pub. Int. L.J. (Spring 2004).

*Kullar v. Footlocker Retail, Inc.: A New Standard for Class Action Settlement Approval*, CELA Bulletin (April 2009).

*Ninth Circuit Provides Much Needed Guidance on Evidentiary Burdens in Overtime Misclassification Litigation,* CELA Bulletin (May 2009).

*Putting the "Rest" Back in Rest Break,* Alameda County Bar Association - Labor & Employment Section News (Autumn 2009).

*Barristers to Blogs: Softening Ethical Restrictions in the Digital Age,* Los Angeles Daily Journal (June 14, 2010).

## LEAD COUNSEL APPOINTMENTS

CVN has held numerous court-appointed sole- and co-leadership positions in state and federal courts across the nation. Recent data breach lead counsel appointments include:

1. In Re: Rackspace Data Security Litigation, No. SA-22-cv-01296-XR (W.D. Tex.) (court appointed sole lead counsel)

2. Henderson v. Reventics, LLC, Case No. 1:23-cv-00586-MEH (D. Colo.) (court appointed co-lead counsel)

3. Hinds v. Community Medical Centers, Inc., Case No. STK-CV-UNPI-2021-10404 (Super. Ct. Cal. San Joaquin Cnty.) (court appointed co-lead counsel)

4. <u>Tsvetanova v. UCSD Health</u>, Case No. 37-2021-00039888-CU-PO-CTL (Super. Ct. Cal. San Diego Cnty.) (court appointed co-lead counsel)

5. <u>Fedorys v. Ethos Group Inc.</u>, Case No. 3:22-cv-2573-M (N.D. Tex.) (court appointed co-lead counsel)

6. <u>Moreland v. 1st Franklin Financial Corporation</u>, Case No. 2:23-cv-00038-SCJ (N.D. Ga.) (court appointed co-lead counsel)

7. <u>Domitrovich v. MC Dean, Inc.</u>, Case No. 1:23-cv-00210-CMH-JFA (E.D. Va.) (court appointed co-lead counsel)

8. <u>Deevers v. Wing Financial Services, LLC</u>, Case No. 4:22-cv-00550-CVE-MTS (N.D. Okla.) (court appointed co-lead counsel)

9. <u>Darrin v. Huntington Ingalls Industries, Inc.</u>, Case No. 4:23-cv-00053-JKW-DEM (E.D. Va.) (court appointed co-lead counsel)

10. <u>Guerrero v. Merritt Healthcare Holdings, LLC</u>, Case No. 3:23-cv-00389-MPS (D. Conn.) (court appointed co-lead counsel)

11. <u>Prutsman v. Nonstop Administration and Insurance Services, Inc.</u>, Case No. 3:23-Cv-01131-VC (N.D. Cal.) (court appointed co-lead counsel)

12. <u>In re DISH Network Data Security Incident Litigation</u>, Case No. 1:23-cv-01168-RMR-SBP (D. Colo.) (court appointed co-lead counsel)

13. <u>Byers v. OrthoAlaska, LLC</u>, Case No. 3:23-cv-00243-SLG (D. Alaska) (court appointed co-lead counsel)

14. <u>Tambroni v. WellNow Urgent Care, P.C.</u>, Case No. 1:24-cv-01595 (N.D. Ill.) (court appointed co-lead counsel)

15. <u>Dryden v. Tri Counties Bank</u>, Case No. 23CV03115 (Super. Ct. Cal. Butte Cnty.) (court appointed co-lead counsel)

16. <u>Brett v. Valley Mountain Regional Center</u>, Case No. STK-CV-UPl-2024-0005025 (Super. Ct. Cal. San Joaquin Cnty.) (court appointed co-lead counsel)

17. <u>Cordell v. Patelco Credit Union</u>, Case No. 24CV082095 (Super. Ct. Cal. Alameda Cnty.) (court appointed co-lead counsel)

18. <u>Skillings v. Access Sports Medicine and Orthopedics</u>, Case No. 218-2024-CV-01086 (Super. Ct. New Hampshire Rockingham Cnty.) (court appointed co-lead counsel)

19. <u>Woodard v. Atlanta Women's Health Group, P.C.</u>, Case No 24EV001838H (State Ct. Georgia Fulton Cnty.) (court appointed co-lead counsel)

20. <u>In Re: Cleveland Brothers Data Incident Litigation</u>, Case No. 1:23-cv-00501-JPW (M.D. Penn.) (court appointed co-lead counsel)

21. <u>Hahn v. Phoenician Medical Center, Inc.</u>, Case No. CV2023-010982 (Super. Ct. Az. Maricopa Cnty.) (court appointed executive committee chair)

22. <u>Daley v. Risas Holdings LLC</u>, Case No. CV-24-00789-PHX-SMM (D. Az.) (court appointed lead counsel)

23. <u>Shweiki v. Donor Network West</u>, Case No. C20-00073 (Super. Ct. Cal. Contra Costa Cnty.) (court appointed lead counsel)

24. <u>Lowrey v. Community Psychiatry Mgt., LLC</u>, Case No. 2:23-cv-00185-TLN-DB (E.D. Cal.) (court appointed co-lead counsel)

25. <u>In Re: Blackhawk Network Data Breach Litig.</u>, Case No. 3:22-cv-07084-CRB (N.D. Cal.) (court appointed co-lead counsel)

26. <u>In re Dropbox Sign Data Breach Litigation</u>, Case No. 4:24-cv-02637-JSW (N.D. Cal.) (court appointed co-lead counsel)

27. <u>Bujok v. MC2 Data, LLC</u>, Case No. 0:24-cv-61864-LEIBOWITZ (S.D. Fla.) (court appointed co-lead counsel)

28. <u>Francisco v. Diligent Acquisitions LLC</u>, Case No. 4:24-cv-04468 (S.D. Tex.) (court appointed co-lead counsel)

29. <u>Oliver v. Jewish Home Lifecare</u>, Index No. 157811/2024 (N.Y. Sup. Ct., N.Y. County, Index No. 157811/2024) (court appointed co-lead counsel)

30. <u>Hunt v. Charlston Area Medical Center, Inc.</u>, Case No. 2:25-cv-00113 (S.D.W.V.) (court appointed co-lead counsel)

31. <u>Creutz v. Carespring Health Care Management LLC</u>, Case No. 1:24-cv-00447 (S.D.Ohio) (court appointed co-lead counsel)

32. <u>Ceballos v. Tri-City Medical Center ASC Operators LLC</u>, Case No. 24CU017568C (Super. Ct. Cal. San Diego Cnty.) (court appointed co-lead counsel)

33. <u>Lunsford v. Maryhaven, Inc.</u>, Case No. 25CV003753 (Ct. of Common Pleas, Franklin Cty. Ohio) (court appointed co-lead counsel)

34. <u>Rice v. California Cancer Associates for Research and Excellence, Inc.</u>, Case No. 5:25-cv-01636 (C.D. Cal.) (court appointed co-lead counsel)

35. <u>In re Teamsters Local Union Nos. 117 and 174 Data Breach Litigation</u>, Case 25-3-21664-1 KNT (Wash. Sup. Ct., King Cty.) (court appointed co-lead counsel)

36. <u>Bobo, et al. v. Krispy Kreme Doughnut Corp.</u>, Case No. 3:25-CV-00434 (W.D. N.C.) (court appointed co-lead counsel)

37. <u>Hammon, et al. v. Omni Healthcare Financial Holdings</u>, Case No. 3:25-CV-00263 (W.D. N.C.) (court appointed co-lead counsel)

38. <u>Smith v. Monterey Mushrooms</u>, Case No. 25-cv-08213-BLF (N.D. Cal 2025) (court appointed co-lead counsel)

39. <u>Poudrier v. Manpower of Lansing, MI, Inc.</u>, Case No. 1:25-cv-00956-PLM-PJG (W.D. MI 2025) (court appointed co-lead counsel)

40. <u>Miller v. Mercer Health, et al.</u>, Case No. 25-CIV-037 (Common Ct. of Pleas, Mercer Cnty. Ohio) (court appointed co-lead counsel)

Note that CVN has held sole lead and co-leadership roles in hundreds of additional (data breach and non-data breach) matters. Please contact our firm for additional leadership information.

## EXEMPLAR COMPLEX & CLASS ACTION CASES

CVN's attorneys have represented tens of millions of individuals in legal disputes across hundreds of class action/complex litigation cases around the nation. For well over three decades, CVN's legal team has amassed extensive experience litigating data breach, wage and hour, environmental, and other personal injury and commercial cases. Today, the firm almost exclusively prosecutes multi-state data breach and other consumer-oriented class actions.

Drawing from various areas of law, and by no means an exhaustive list, examples of the range of CVN's practice include unique matters such as:

Augustus/Davis v. ABM Security Services, Inc. (American Commercial Security Service, Inc.)
Superior Court of California, County of Los Angeles, Case No. BC336416; 2 Cal.5th 257 (2016)
Our firm filed this action for violations of California law for denial of meal and rest periods toward security guards. The action achieved class certification status in 2009. Following summary judgment proceedings, a judgment of over $89 million was entered against the defendant(s). The judgment hinged on the issue of whether "on-duty" rest breaks were legally sufficient. After the Court of Appeal ruled against Plaintiffs on the issue, the case went to the California Supreme Court where Plaintiffs prevailed and, in so doing, created a new legal standard clarifying that "on-duty" rest breaks are invalid. After 12 years of litigation, successful summary judgment and substantial appellate work, this matter resolved for $110 million.

Bower v. Steel River Systems LLC
Illinois Fourteenth Judicial Circuit Court (Whiteside County), Case No. 2023-LA-000006
This action arose out of Steel River Systems' 2022 data breach which affected numerous consumers and/or employees. This action settled for an undisclosed amount.

Brett v. Valley Mountain Regional Center
Superior Court of California, County of San Joaquin, Case No. STK-CV-UPl-2024-0005025
This action arose out of Valley Mountain's 2023 data breach which affected 17,000 patients of Defendant's facilities. Cole & Van Note was appointed co-lead class counsel.

Bulow v. Wells Fargo Investments, LLC
United States District Court (N.D. Cal.), Case No. 3:06-CV-7924
This matter was filed as a nation-wide class action against Wells Fargo Investments, on behalf of its Financial Consultants to recover overtime pay, compensation for denied meal and rest periods (California only) and reimbursement for business-related service and supply expenses (California only). This matter settled for $6.9 million.

Byers v. OrthoAlaska, LLC
United States District Court (D. Alaska), Case No. 3:23-cv-00243-SLG
This action arose out of OrthoAlaska's massive data breach which affected countless patients, consumers and/or employees. Cole & Van Note was court-appointed as co-lead class counsel.

Cano v. United Parcel Service, Inc.
Superior Court of California, County of Alameda, Case No. RG03089266
This wage and hour complex litigation matter involved the alleged misclassification of overtime non-exempt Operations Management Specialists, Operational Excellence Specialists and Industrial Engineering Specialist at this company's California facilities. This action settled for $4.5 million.

Chaidez v. Odwalla, Inc.
Superior Court of California, County of San Mateo, Case No. CIV430598
This wage and hour complex litigation matter involved the alleged misclassification of overtime non-exempt California Route Sales Representatives. CVN served as primary counsel for this proposed class of employees. This action settled for $2.2 million.

CKE Overtime Cases
Superior Court of California, County of Los Angeles, Case No. BC283274 (JCCP No. 4274)
This class action was brought against fast food chain Carl's Jr. for violations of California's overtime laws on behalf of the company's California restaurant chain Managers. The coordinated litigation provided a settlement fund of $9.0 million.

Cordell v. Patelco Credit Union
Superior Court of California, County of Alameda, Case No. 24CV082095
This action arose out of the well-publicized 2024 data breach and denial of service impacting well over 1,000,000 Patelco customers. As a result of the event, Patelco customers were blocked access to their funds and other services for weeks, resulting in myriad types of damages, including rejection of loan applications, damage to their credit and the inability to pay everyday life expenses. Cole & Van Note was appointed co-lead class counsel. The matter settled for $7.25 million (settlement pending).

Darrin v. Huntington Ingalls Industries, Inc.
United States District Court (E.D. Va.), Case No. 4:23-cv-00053-JKW-DEM
This action arose out of Huntington Ingalls' massive data breach. Cole & Van Note was appointed by the court to a co-lead counsel position.

Davis v. Universal Protection Security Systems, Inc.
Superior Court of California, County of San Francisco, Case No. CGC-09-495528
Our firm filed a claim in 2009 against Universal Protection Security Systems, Inc. for violations of California law for denial of meal and rest periods toward security guards. This case settled under Cole & Van Note's sole leadership for $4 million.

Deevers v. Wing Financial Services, LLC
United States District Court (N.D. Okla.), Case No. 4:22-cv-00550-CVE-MTS
This action arose out of Wing Financial's 2022 data breach which affected numerous loan consumers. Cole & Van Note was appointed co-lead class counsel.

Despres (Cornn) v. United Parcel Service, Inc.
United States District Court (N.D. Cal.), Case No. 3:03-CV-02001
This wage and hour class action litigation was brought to remedy violations of meal and rest period regulations on behalf of the company's California ground delivery drivers. CVN served as co-counsel for the certified class of drivers. This action settled for $87 million, an unprecedented settlement amount at the time for such claims.

Domitrovich v. MC Dean, Inc.
United States District Court (E.D. Va.), Case No. 1:23-cv-00210-CMH-JFA
This action arose out of MC Dean's 2021 data breach which affected 45,000 employees. Cole & Van Note was appointed co-lead class counsel.

Dryden v. Tri Counties Bank
Superior Court of California, County of Butte, Case No. 23CV03115
This action arose out of Tri Counties' 2023 data breach which affected nearly 75,000 consumers. Cole & Van Note was appointed co-lead class counsel.

Escow-Fulton v. Sports and Fitness Clubs of America dba 24 Hour Fitness USA, Inc.
Superior Court of California, County of San Diego County, Case Nos. GIC881669/GIC873193)
Our firm filed this class action on behalf of the company's California "Group X" Instructors to recover regular and overtime pay, related penalties and un-reimbursed expenses. The action achieved class certification status in 2009. In 2011, the parties agreed to a partial settlement (of the expense reimbursement claims) for $10 million. The parties then filed cross-motions for summary adjudication and, on August 2, 2011, the court issued an Order finding 24 Hour Fitness' session rate compensation scheme to be an invalid piece rate. The parties then agreed to settle the unpaid wage claims for another $9 million, for a total judgment of $19 million. This was an industry changing case that helped define "piece rate" standard under California law.

Fedorys v. Ethos Group, Inc.
United States District Court (N.D. Tex.), Case No. 3:22-cv-02573-M
This action arose out of Ethos Group's 2022 data breach which affected at least 267,000 consumers. Cole & Van Note was appointed co-lead class counsel.

Guerrero v. Merritt Healthcare Holdings, LLC
United States District Court (D. Conn.), Case No. 3:23-cv-00389-MPS
This action arose out of Merritt Healthcare's 2022 data breach which affected over 77,000 patients. Cole & Van Note was appointed co-lead class counsel.

Hakeem v. Universal Protection Service, LP
Superior Court of California, County of Sacramento, Case Nos. 34-2020-00286228-CU-OE-GDS; 34-201900270901-CU-OE-GDS
After an exhaustive multi-year process including venue transfer, consolidation, migration of litigants from one case to the other, multiple appeals and, generally, extremely hard-fought litigation, these two security guard class actions achieved a consolidated judgment under Cole & Van Note's sole leadership for $10 million.

Head v. Regal Medical Group, Inc.
Superior Court of California, County of Los Angeles, Case No. 23STCV02939
This action arose out of this health care group 2023 data breach which affected roughly 3.3 million patients. Cole & Van Note served as the lead firm. The matter settled for $50 million (settlement pending).

Henderson v. Reventics, LLC
United States District Court (D. Colo.), Case No. 1:23-cv-00586-MEH
This action arose out of Reventics' massive 2022 data breach which affected over four million patients, consumers and employees. Cole & Van Note was appointed co-lead class counsel. The matter settled for $8.15 million.

Hinds v. Community Medical Centers
Superior Court of California, County of San Joaquin, Case No. STK-CV-UNPI-2021-0010404
This action arose out of Community Medical Centers' massive 2021 data breach which affected countless patients, consumers and/or employees. After reviewing competing requests for leadership over these consolidated actions, Cole & Van Note was appointed by the court to a co-lead counsel position. This action resulted in a multi-million-dollar judgment.

In re Apple Inc. Device Performance Litigation
United States District Court (N.D. Cal.), Case No. 5:18-md-02827-EJD
Following Apple's December 2017 admission that it throttled back performance of its iPhones (versions 6, 6 Plus, 6s, 6s Plus, SE, 7 and 7 Plus) to mask the problem of defective batteries and unexpected iPhone shut-downs, Cole & Van Note filed a class action to recover damages for consumers nationwide. Cole & Van Note served on the Plaintiffs' Steering Committee. This action settled for $500 million.

In re DISH Network Data Security Incident Litigation
United States District Court (D. Colo.), Case No. 1:23-cv-01168-RMR-SBP
This action arose out of DISH Network's massive data breach which affected over 300,000 workers. Cole & Van Note was appointed by the court to a co-lead counsel position.

In re Dropbox Sign Data Breach Litigation
United States District Court (N.D. Cal.), Case No. 4:24-cv-02637-JSW
This action arose out of Dropbox's massive data breach. Cole & Van Note was appointed by the court to a co-lead counsel position.

In re Rackspace Security Litigation
United States District Court (W.D. Tex.), Case No. SA-22-cv-01296
This action arises out of Rackspace Technology's 2022 massive ransomware event which shut down functionality for tens of thousands of individuals and businesses across the Unites States and overseas. Cole & Van Note served as court-appointed sole lead counsel for the nationwide class and representative plaintiffs from over 30 states.

In re Tosco SFR Litigation
Superior Court of California, County of Contra Costa, Case No. C97-01637
During incidents in April 1997 and January 1998, the Tosco Refinery in Rodeo, California released tons of airborne toxic chemicals. These harmful substances traveled into neighboring communities, seriously affecting the health of citizens and local workers. CVN served as Lead Counsel in this complex litigation and represented thousands of members of the community in that role. The multi-million-dollar fund created through this litigation under Cole & Van Note's sole leadership was disbursed among thousands of claimants and significantly change practices at this refinery ever since.

In re Unocal Refinery Litigation
Superior Court of California, County of Contra Costa, Case No. C94-04141
In response to Unocal's 16-day airborne release of chemicals over the County of Contra Costa in 1994, CVN filed a class action against the corporation on behalf of thousands of victims and thereafter served as one of a handful of firms (among dozens of law firms of record) on the Plaintiffs' Steering Committee. After hard-fought litigation, the matter eventually settled for $80 million. This litigation, Mr. Cole's efforts to commence it and his grassroots work and exposure of the toxic event to the media provide the backdrop for Mr. Cole's book, "Fallout," published in 2018 (2605 Media LLC). In the end, the impact of this litigation was sweeping, substantially changing practices at this refinery and industry regulations, helping to establish a toxic release community monitoring system that spawned similar systems across the nation, establishing parks, improved roadways and an unprecedented community-industry Good Neighbor agreement.

In re Walgreen Co. Wage and Hour Litigation
United States District Court (C.D. Cal.), Case No. 2:11-CV-07664
Our firm served as court-appointed Lead Counsel after an adversarial hearing process in this consolidated action of nine lawsuits bringing a variety of wage and hour claims on behalf of California workers. The case settled under Cole & Van Note's sole leadership for $23 million.

In re Westley Tire Fire Litigation

Superior Court of California, County of Santa Clara, Case No. CV 801282

On September 22, 1999, lightning struck and ignited a pile of approximately 7 million illegally stored waste tires in Westley, California, a town about 70 miles east of San Francisco. Over the subsequent five weeks, the fire spewed smoke and carcinogens over a large portion of the State of California. CVN served as the (sole) Lead and (shared) Liaison Counsel over a Plaintiffs' Steering/Management Committee in the consolidated actions against the owners and operators of this tire pile and related entities. These cases sought compensation for those individuals and businesses suffering personal and/or property damages as a result of these toxic substances and the fire's fall-out. In 2001, CVN reached a settlement with one defendant (CMS Generation Co.) for $9 million. In 2003, the Court granted final approval of the settlement. In 2005, two of the remaining defendants settled for roughly $1.4 million (over $10 million aggregate).

Kullar v. Foot Locker, Inc.

Superior Court of California, County of San Francisco, Case No. CGC-05-447044; 168 Cal.App.4th 116 (2008)

This class action was brought on behalf of California employees allegedly forced to purchase shoes of a distinctive color or design as a term and condition of their employment and in violation of state law. After the Court approved a multi-million settlement, two separate appeals challenged the settlement, but the Court of Appeal affirmed the trial court's judgment. This oft-cited case established in California what's now known as the "*Kullar standard*" for court approval of class action settlements.

Kurihara v. Best Buy Co., Inc.

United States District Court (N.D. Cal.), Case No. C 06-01884 MHP (EMC)

This class action was brought on behalf of Best Buy's California employees against this chain retailer for violations of California law (for denial of meal and rest periods). This case was granted class certification and Cole & Van Note then settled it for $5 million following an oft-cited ruling which clarified the distinction between class composition and entitlement to a recovery.

Lett v. TTEC

United States District Court (N.D. Cal.), Case No. 3:22-cv-00018

This action arose out of TTEC Service Corporation's massive data breach in 2021 which affected countless patients, consumers and employees. CVN helped negotiate a $2.5 million settlement for the class of victims.

Mambuki v. Securitas Security Services USA, Inc.

Superior Court of California, County of Santa Clara, Case No. 1-05-CV-047499 (JCCP No. 4460)

Our firm filed a claim against this defendant for violations of California law (for denial of meal and rest periods) on behalf of the company's California-based security guards. This coordinated proceeding settled in 2008 for $15 million.

Mendoza v. CaptureRx
United States District Court (W.D. Texas), Case No. 5:21-CV-00523-OLG
This class action against NEC Networks, LLC, d/b/a CaptureRx ("CaptureRx"), as well as Rite Aid and Community Health Centers of the Central Coast arising out of the massive data breach in 2021 which affected a minimum of 1.6 million people. The hacked information included sensitive personally identifiable information and personal health information. These consolidated cases settled in 2022 for a total value of over $4.75 million.

Moreland, et al. v. 1st Franklin Financial Corporation
United States District Court (N.D. Ga.), Case No. 2:23-cv-00038-SCJ
This action arose out of 1st Franklin Financial's 2022 data breach affecting this company's loan consumers. Cole & Van Note was appointed co-lead class counsel.

O'Brien v. Edward D. Jones & Co., LP
United States District Court (N.D. Ohio), Case No. 1:08-CV-00529
We filed a nation-wide (and New York State) class action against this financial securities company on behalf of the company's financial services representatives to recover overtime pay and related penalties. CVN served on a Lead Counsel Committee in this action, which settled in 2007 for $19 million.

Onyeige v. Union Telecard Alliance, LLC
United States District Court (N.D. Cal.), Case No. 3:05-CV-03971; MDL No. 1550
Our firm filed an action against Union Telecard Alliance, LLC alleging negligent misrepresentation and deceptive advertising practices related to its marketing of pre-paid telephone calling cards. This action settled for $22 million.

Prutsman v. Nonstop Administration and Insurance Services, Inc.
United States District Court (N.D. Cal.), Case No. 3:23-cv-01131-VC
This action arose out of Nonstop's massive 2022 data breach which affecting consumers, employees and health care affiliates. Cole & Van Note was appointed co-lead class counsel.

Ramirez v. The Coca Cola Company
Superior Court of California, County of San Bernardino, Case No. RCV 056388 (JCCP No. 4280)
This was one of two companion actions CVN prosecuted against this soft drink giant for violations of California's overtime laws. This action was brought on behalf of over 4,000 hourly workers at the company's bottling, distribution and sales centers who were allegedly forced to work "off-the-clock" for Coca Cola and/or whose time records were ordered modified by the company. This well-publicized action resolved under Cole & Van Note's leadership for $12 million.

Riordan v. Western Digital Corp.
United States District Court (N.D. Cal.), Case No. 5:21-CV-06074
This action arose out of the well-publicized widespread criminal data deletion of consumer hard drives in 2021. According to the lawsuit, the company knew of vulnerabilities in, at least,

six of its products for years which, ultimately, led to the erasure of data for countless purchasers of these products. CVN served as sole counsel for the victims.

<u>Roman/Toussaint v. HanesBrands, Inc.</u>
United States District Court (M.D. N.C.), Case No. 1:22-cv-00879-LCB-LPA
This case involved a data breach of HanesBrands' network system in which worker information was accessed and/or reviewed by cybercriminals.

<u>Tambroni v. WellNow Urgent Care, P.C.</u>
United States District Court (N.D. Ill.), Case No. 1:24-cv-01595
This action arose out of WellNow's 2023 data breach affecting over 400,000 patients. Cole & Van Note was appointed co-lead class counsel.

<u>Thomas v. Cal. State Auto. Assoc.</u>
Superior Court of California, County of Alameda, Case No. CH217752
Our firm filed this class action litigation on behalf of all California claims adjusters working for CSAA after mid-January 1997. This lawsuit alleged that, during those years, CSAA mis- classified these workers as exempt "administrators" and refused to pay them for overtime hours worked. This lawsuit settled for $8 million for nearly 1,200 workers.

<u>Tierno v. Rite Aid Corporation</u>
United States District Court (N.D. Cal.), Case No. 3:05-CV-02520
Our firm filed this action against Rite Aid Corporation on behalf of its salaried California Store Managers. It was alleged that defendant, purportedly the nation's third largest drug store chain, failed to pay overtime to those workers and denied them their meal and rest periods. In 2006, the federal court certified the class in this action, and approved a hard-fought settlement, achieved under Cole & Van Note's sole leadership, of $6.9 million.

<u>Tsvetanova v. Regents of the University of California, dba U.C. San Diego Health</u>
Superior Court of California, County of San Diego, Case No. 37-2021-00039888-CU-PO-CTL
This action arose out of U.C. San Diego Health's massive data breach between December 2020 and April 2021 which affected countless patients, consumers and employees. After reviewing numerous requests for leadership over these consolidated actions, Cole & Van Note was appointed by the court to a co-lead class counsel position.

<u>Witriol v. LexisNexis</u>
United States District Court (S.D. Cal.), Case No. 3:06-CV-02360
Our firm filed an action against this company for its unlawful disclosure of private credit, financial and/or other personal information. This litigation, resolved by Cole & Van Note, provided a settlement fund of $2.8 million.

CVN has also served/serves in other types of leadership positions (e.g., Executive Committees, Plaintiffs' Steering Committees, Liaison Counsel) in numerous other data breach cases and in sole

counsel roles in dozens more—actions currently pending in state and federal courts across the majority of U.S. states.

APPELLATE EXPERIENCE

CVN has substantial appellate experience, merely highlighted by some examples below. For other appellate and/or unreported opinions and/or a list of matters currently on appeal, please contact our firm.

Augustus v. ABM Security Services, Inc. (2016) 2 Cal.5th 257 (Case No. S224853)

Baddie v. Berkeley Farms, Inc. (9th Cir. 1995) 64 F.3d 487 (Case No. 93-17187)

Bland v. Urology of Greater Atlanta (2025) 64 F.3d 487 (Cal. Ct. of Appeals Case No. 93-17187)

Bland v. Urology of Greater Atlanta, LLC (Ga. Ct. App., Case No. A25A1133)

Bradford v. Asian Health Services (9th Cir. 2025) Case No. 24-3702

Dunbar v. Albertson's, Inc. (2006) 141 Cal.App.4th 1422 (First Dist., Division 1, Case No. A111153)

Gonzalez v. El Centro del Barrio (5th Cir. 2025) Case No. 25-50092

In re Certified Tire and Service Centers Wage and Hour Cases (2018) 28 Cal.App.5th 1 (Cal. Ct. of Appeals, Fourth Dist., Division 1, Case No. A086407)

Kullar v. Foot Locker Retail, Inc. (2008) 168 Cal.App.4th 116 (Case No. A119697)

Montano v. The Wet Seal Retail, Inc. (2015) 232 Cal.App.4th 1214 (Cal. Ct. App. 2015)

O'Hara v. Factory 2-U Stores, Inc., 2003 WL 22451991 (Cal. Ct. of Appeals, First District, Division 4, Case No. A101452)

Taylor v. Park Place Asset Management (1999) (Cal. Ct. of Appeals, First Dist., Division 5, Case No. A086407)

Whiteway v. Fedex Kinko's Office and Print Services (9th Cir. 2009) 319 Fed.Appx. 688 (Case No. 07-16696)



555 12th Street, Suite 2100
Oakland, CA 94607
Tel: 510-891-9800

*www.colevannote.com*

# Exhibit C

1   Robert T. Mills, Esq. (Arizona Bar #018853)
    Sean A. Woods, Esq. (Arizona Bar #028930)
2   **MILLS + WOODS LAW, PLLC**
    5055 N. 12th Street, Suite 100
3   Phoenix, Arizona 85014
    Telephone: (480) 999-4556
4   Email: docket@millsandwoods.com
    Email: swoods@millsandwoods.com
5
    Scott Edward Cole, Esq. (CA S.B. #160744)*
6   **COLE & VAN NOTE**
    555 12th Street, Suite 2100
7   Oakland, California 94607
    Telephone: (510) 891-9800
8   Email: sec@colevannote.com
9   *Admitted Pro Hac Vice*
10  Attorneys for Representative Plaintiff
    and the Plaintiff Class
11

12              **IN THE UNITED STATES DISTRICT COURT**

13                  **FOR THE DISTRICT OF ARIZONA**

14  ANWAR ABDEL RAHMAN                     Case No. **2:25-CV-01866-SMB**
    individually and on behalf of all others
15  similarly situated,                    **CLASS ACTION**

16                        Plaintiff,       **DECLARATION OF CAROLE
                                           THOMPSON IN SUPPORT OF
17  v.                                     PLAINTIFF'S UNOPPOSED MOTION
                                           FOR PRELIMINARY APPROVAL OF
18  ERICKSON COMPANIES, LLC,               CLASS ACTION SETTLEMENT AND
    ERICKSON FRAMING AZ, LLC, and          MEMORANDUM IN SUPPORT**
19  DOES 1 through 100, inclusive,

20                        Defendants.

21

22

23

24

25

26

27

28

*(left margin vertical text)* COLE & VAN NOTE / ATTORNEYS AT LAW / 555 12TH STREET, SUITE 2100 / OAKLAND, CA 94607 / TEL: (510) 891-9800

I, Carole Thompson, declare and state as follows:

1.     I am the Associate Director of Case Management, Class Action Services of CPT Group, Inc. ("Settlement Administrator" or "CPT"). The following statements are based on my personal knowledge, the information provided to me by Counsel for the parties and other CPT employees working on this matter, and records of CPT generated and maintained in the usual course of its business. If called on to do so, I could and would testify competently thereto.

2.     For this matter, CPT is able and willing to provide Notice and Claims Administration services as provided in the Class Action Settlement Agreement ("Settlement Agreement"), if the parties' motion is approved by the court.

3.     CPT Group, Inc. is located at 50 Corporate Park, Irvine, CA 92606.

4.     I have been employed by CPT for 10 years. As Associate Director, I am responsible for the oversight and supervision of the team of Case Managers who carry out the duties and tasks related to the administration of consumer settlement matters. I submit this declaration at the request of Counsel in support of the Motion for Preliminarily Approval of Class Action Settlement.

## CPT'S EXPERIENCE RELEVANT TO THIS CASE

5.     CPT is a leader in the settlement administration industry and has extensive experience in providing court approved notice of class actions and administering various types of notice programs and settlements, including specifically those of the type provided for and made in data breach litigation. In the past 30-plus years, we have provided notification and/or claims administration services in thousands of class action cases. Some recent multi-state representative matters include *Hinds v. Community Medical Centers, Inc.,* Case No. STK-CV-UNPI-2021-0010404 (Sup.Ct.Cal.Cnty. San Joaquin); *Young v. Good Samaritan Hospital*, Case No. 20STCV30421 (Sup.Ct.Cal.Cnty.L.A.); *Heath et al. v. Steel River Systems, LLC.*, Case No. 2023-LA-000006 (IL, 14th Jud. Cir. for Whiteside Cnty., Chanc. Div.); *Hashemi, et. al. v. Bosley, Inc.*, Case No. 21-cv-00946-PSG (RAOx) (C.D.Cal); *In Re Southern Ohio Health Systems Data Breach Litigation*, Case No.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

A2101886 (CT.Com.Pl. Hamilton Cnty., OH); *Bokelman v. FCH Enterprises, Inc.,* Case No. 18-cv-00209-RJB-RLP (D.Haw.); *Christofferson v Creation Entertainment, Inc.* Case No. 19STCV11000 (Sup.Ct.Cal.Cnty.L.A.); *Hartranft, et al. v. TVI, Inc. d/b/a/ Savers, Inc., Apogee Retail, LLC*, Case No. 8:15-cv-01081 CJC-DFM (C.D.Cal.); *Lim, et al. v. Vendini, Inc.,* Case No. 1-14-CV-259897 (Sup.Ct.Cal.Cnty. Santa Clara); *Thompson v. 1-800 Contacts, Inc., Vision Direct, Inc., Walgreens Boots Alliance, Inc., Walgreen Co., Arlington Contact Lens Service, Inc., National Vision, Inc., Luxottica of America, Inc. (f/k/a Luxottica Retail North America, Inc.)*, Case No. 2:16-cv-01183 (D.Utah); *Broomfield v. Craft Brew Alliance, Inc.*, Case No. 5:17-cv-01027-BLF (N.D.Cal.); *Jacobo, et al., v. Ross Stores, Inc.*, Case No. 2:15-cv-04701-MWF-AGRx (C.D.Cal.); *Livingston v. MiTAC Digital Corporation*, Case No. 3:18-cv-05993-JST (N.D.Cal.); and *Gold, et al. v. Lumber Liquidators, Inc.,* Case No. 3:14-cv-05373-RS (N.D.Cal.). Some of our single-state representative matters include *V.C. et al. v. Salinas Valley Memorial Healthcare System*, Case No. 20-cv-001923 (Sup.Ct.Cal.Cnty. Monterey); *Krinsk, et al. v Monster Beverage Corporation, et al*, Case No. 37-2014-00020192-CU-BT-CTL (Sup.Ct.Cal.Cnty. San Diego); *Kerr v. The New York Times Co.*, et al., Case No. 37-2016-000010125-CU-MC-CTL (Sup.Ct.Cal.Cnty. San Diego); and *Mount v. Wells Fargo Bank*, Case No. BC395959 (Sup.Ct.Cal.Cnty.L.A.).

6.    CPT offers a wide range of class action administrative services for developing, managing, and executing all stages of integrated settlement plans. A true and correct copy of CPT's company resume ("CPT CV") is attached as **Exhibit A**, which provides detailed information concerning our class action claims administration qualifications, experience, as well as our Information Security Statement that details CPT's procedures for the protection of confidential Settlement Class Member information.

7.    Due to the sensitive nature of settlement administration, CPT follows a series of strict protocols to protect the integrity of our work that include, but are not limited to, the following: employing security controls and procedures throughout our business that comply with AICPA SOC 2 Type II; requiring of secure file transfer of all Settlement Class

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Member data, account and wire information; multifactor authentication to secure all email accounts; monitoring each endpoint with modern Data Loss Prevention ("DLP") software; implementation of strict policy regarding the transmittal and storage of SI; requiring staff to complete regular cyber security training; monthly external and internal vulnerability scans to ensure the integrity of our security measures. To protect against potential losses, CPT holds $5,000,000 in Errors and Omissions insurance, $1,000,000 in Crime/Fidelity insurance, and $5,000,000 in cyber insurance.

## NOTICE AND ADMINISTRATION OVERVIEW

8.    CPT was selected by the parties in the above captioned matter to provide administration services for this settlement. In this capacity, CPT will complete the tasks as detailed in the Settlement Agreement, including but not limited to the following: (a) prepare, print and otherwise disseminate notification of the pending settlement to the Settlement Class Members; (b) providing call support through a dedicated toll-free number with Interactive Voice Response ("IVR"); (c) establish a dedicated Settlement Website that that will, among many things, inform Settlement Class Members of the terms of the Settlement and allow them to file a claim form electronically; (d) receive objections submitted by Settlement Class Members; (e) receive and validate claims and requests for exclusion submitted by Settlement Class Members; (f) notify the parties of Settlement Class Members who file timely requests for exclusion and timely claim forms; (g) receive other communications about the settlement; (h) provide secure data management and reporting; (i) file any required reports with the court; (j) establish a Qualified Settlement Fund for payment of authorized claims; (k) calculate the amounts due to each Settlement Class Member pursuant to the settlement; (l) make payments to Settlement Class Members through the established fund and file all applicable tax returns; and (m) handle any uncashed checks as directed by the court.

//

//

//

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

-4-
DECL. OF CAROLE THOMPSON IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:24-CV-01866-SMB

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

## CLASS NOTICE

9.    CPT understands that in this settlement a Settlement Class Member means:

> All individuals in the United States whose Private Information was potentially compromised as a result of the Data Security Incident and who were sent notice by mail of the Data Security Incident prior to the execution of this Agreement. Excluded from the Settlement Class are (a) all persons who are governing board members of Defendants; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; and (d) any individual who timely and validly opts-out of the Settlement.

10.    It is also CPT's understanding that the parties expect that the majority of Settlement Class Members can be identified and located from Defendant's records. Within 7 days after the entry of the Preliminary Approval Order, Defendant will provide the class list to CPT. Upon receipt of the Settlement Class Member information CPT will assign a unique identifier to each person in the list that will be used throughout the duration of the administration process. The proposed notification program will include the components as described below.

11.    **Direct Notice:** Within 30 days after the entry of the Preliminary Approval Order, CPT will send a Postcard Notice via U.S. mail to all Settlement Class Members for whom a valid mailing address is provided. Prior to mailing, to increase the success rate of deliverability, CPT will scrub the records to reduce anomalies and duplicates and update the mailing addresses using National Change of Address (NCOA). Any mailed notices that are returned as undeliverable from the post office will be promptly re-mailed if returned with a forwarding address or skip traced in attempt to find the current addresses and promptly re-mailed if ascertained.

12.    **Website**: CPT will set up and administer a dedicated Settlement Website that will be informative and easy for potential members of the Settlement Classes to navigate. The Settlement Website will include links to the Settlement Agreement, Preliminary Approval Order, Long Form Notice, a downloadable version of the Claim Form,

Frequently Asked Questions, and other relevant filings as instructed by the parties or the Court. In addition, the website will provide the information necessary to file a claim online and will provide for secure online submission of Claim Forms and supporting documents. The website address or a hyperlink will also be displayed on all summary notifications described above.

13. **Toll-Free Number/IVR**: CPT will establish a dedicated 24-hour, toll-free support line with Interactive Voice Response ("IVR") capabilities to provide potential members of the Settlement Class with: (a) general and detailed information about the Action; (b) answers to frequently asked questions; (c) information relating to filing a claim form or opt out; and (d) bilingual, live class member support during normal business hours.

14. In addition, CPT will maintain a dedicated email inbox for handling inquiries from potential Settlement Class Members and claimants.

## PROCESSING OF RESPONSES FROM CLASS

15. CPT understands that Settlement Class Members can make a claim by completing the claim form and submitting it by mail to CPT at the address shown in the Notice or by submitting it online via the Settlement Website. In accordance with the terms of the parties' Settlement Agreement, CPT will review all claim forms and supporting documents submitted and confirm that they are valid, submitted by a qualifying Settlement Class Member, and that all necessary information has been provided to support the claim.

16. CPT also understands that Objections and Opt-Outs must be served in writing as instructed in the Notice. CPT will maintain a record of and inform the parties of all Opt-Out requests submitted by Settlement Class Members, as well as any Objections CPT may receive.

## ADMINISTRATION FEES

17. CPT estimates its costs for the notice and administration of this Settlement will not exceed $37,800 based on 11,820 Settlement Class Members and a claim filing rate of 3%. CPT understands that the costs related to claims administration will be paid from the Settlement Fund.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

## **CONCLUSION**

18.    The proposed Notice Plan includes individual direct notice to all members of the Settlement Class who can be identified through reasonable efforts as well as a Settlement Website and toll-free hotline. Based on our experience with similar cases, the notice program described herein is consistent with other court-approved notice programs and will provide Settlement Class Members with notice of their legal rights and comports with due process requirements.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 31, 2025, at Irvine, California.

*Carole Thompson*
Carole Thompson

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

# EXHIBIT A

# CURRICULUM VITAE



50 Corporate Park
Irvine, CA 92606

 www.CPTGROUP.com

 1 (800) 542-0900

## COMPANY PROFILE

CPT Group, Inc. ("CPT"), founded in 1984, is a leading provider of notice and settlement class action administration services and has been appointed as the third-party administrator by all major courts. Throughout our history, CPT has disbursed billions of dollars in settlement funds, serviced over 250,000,000 class members, and administrated over 7,000 cases. CPT offers a wide range of class action administrative services for developing, managing, and executing all stages of integrated notice plans and settlements. This includes pre-certification and discovery mailings, class-certification mailings, claims processing and administration, data management, data reporting, settlement fund administration, legal noticing campaigns, website design, and web hosting. The project management team, call center, data entry center, IT, and production facilities are all located at the corporate headquarters in Irvine, CA.

## QUALITY ASSURANCE & SECURITY

The integrity of CPT's work and our stringent quality assurance protocols are strengthened by the staff's ability to operate in close proximity keeping the work managed in-house. With a commitment to rigorous security protocols and controls, CPT upholds an obligation to its clients to maintain data and cyber security practices that comply with AICPA SOC 2 - Type II.

## DIVERSITY & INCLUSION

CPT believes that promoting diversity starts with a commitment to building understanding and awareness. Diversity is not just cultural or ethnic, it includes people of all ages and backgrounds. We are guided by a commitment to removing barriers to the recruitment, retention, and advancement of talented individuals from historically excluded populations. CPT recruits and rewards team members based on capability and performance, regardless of race, gender, sexual orientation, gender identity or expression, lifestyle, age, educational background, national origin, religion, or physical ability.

## AREAS OF EXPERTISE

- **PROJECT MANAGEMENT -** At the heart of our administrative capabilities is the ability to manage and process our cases as a neutral TPA with efficiency, accuracy, and in compliance with the terms of the parties' agreement. Our skilled approach in the use of technology, effective management, and quality assurance is the core of our operation.
- **Claims Administration** – CPT conducts extensive Quality Assurance processes throughout the duration of the claims period. Any responses received from Class Members are processed according to our strict internal procedures and in accordance with the Settlement Agreement. Counsel is provided with all required reporting, including, where applicable, a list of approved claimants and the settlement calculations for each.
- **Call Center** – CPT's case support representatives stand ready to service all case inquiries offering live, multi-lingual, 1-1 response, 5 days a week during business hours (extended hours available). Interactive Voice Response (IVR) assures that class members receive the assistance and support they require 24 hours a day. A proprietary call tracking system combined with highly trained representatives ensures an accurate class member history for each and every call.
- **Data Management/Reporting** – Through programmatic analysis, CPT will standardize the class data to compile a master mailing list. CPT prepares weekly status reports for each case that summarize the status of returns and responses such as mail pieces and claim form submissions. CPT is SOC 2 Type II certified, which ensures necessary measures are taken to safeguard all class member data.
- **Noticing Expertise** – CPT's legal notice experts have a combined experience of over 25 years in the industry and come together to plan a successful notice campaign based on the requirements of the Settlement. After strategizing and consulting with Counsel, our team will determine the best method of notification to reach your intended target audience. Whether notification will be through means of a known or unknown data set, CPT will execute the campaign with precision and accountability.
- **Settlement Fund Administration** – CPT's team of tax and accounting professionals manages all fund distributions through a rigorous and supervised process. Stringently following the terms of the Court Order, CPT maintains its Qualified Settlement Fund (QSF) accounts through federally insured banks with access restricted to authorized personnel only. On behalf of the QSF, CPT will handle all remittances and reporting to local, state, and federal tax authorities.



# EXPERIENCE

CPT Group, Inc. has a proven track record of successfully administering complex class action settlements across a broad range of practice areas, including cases with millions of class members. With over four decades of experience, CPT is trusted by courts nationwide as a third-party administrator for high-stakes, large-fund settlements. Below are highlights from several relevant cases we've handled:

## CONSUMER PROTECTION

**Stevens v. Britax Child Safety, Inc., Case No. 2:20-cv-07373-MCS-AS (C.D. Cal)**

Administration tasks for this hybrid settlement included dissemination of the summary notice by email or mail to known consumers and implementation of an extensive digital and social media campaign to reach unknown consumers, which encompassed internet publication through DV360, paid and keyword search (Google/Bing), and social media advertising on Facebook, Instagram, and OLV (YouTube). Additional efforts included a press release and four consecutive print publications in the Los Angeles Times. Further, a dedicated settlement website was established to access court-approved documents, facilitate online claims submission, and offer real-time case information to potential settlement class members.

**Pope, et al. v. Cura Partners, Inc., State of Oregon, Multnomah County Circuit Court, Case No. 20CV05932**

While administrating this consumer settlement, CPT designed and implemented a multi-faceted notice program to effectively reach and engage the potential class population of 172,000 members. The comprehensive outreach strategy integrated multiple communication channels, anchored by a targeted digital media campaign that strategically placed settlement information where potential class members were most likely to encounter it. This digital approach was complemented by traditional print publication, creating multiple touchpoints for class awareness. Central to the administration strategy was an interactive settlement website that served as the primary hub for class member engagement and streamlined claims submission. The settlement's modern approach extended to its payment distribution, offering claimants flexibility through multiple digital payment options. This technology-forward distribution strategy provided class members convenient, secure payment choices while optimizing administrative efficiency.

**Treviso v. Pro Football Hall of Fame, Case No. 5:17-cv-00472 (N.D. Ohio)**

CPT executed a sophisticated administration strategy for this consumer settlement, beginning with a meticulously researched notice campaign tailored to reach the presumed target audience. The comprehensive digital strategy integrated paid search campaigns, programmatic display advertising, strategic social media placements, and online video (OLV) content. This layered approach proved highly effective, generating an impressive 5,080,887 impressions during the 40-day recruitment campaign. To further enhance accessibility, the notice program incorporated direct communication methods through email and text message notifications, ensuring multiple touchpoints for potential class members. The settlement's complexity was particularly evident in its claims validation requirements, which demanded a thorough review of multiple documentation types, including proof of travel, accommodation records, and event attendance verification through tickets or other supporting evidence. This rigorous validation process, combined with the sophisticated notice program and user-friendly claims platform, demonstrated CPT's ability to manage intricate settlement requirements while maintaining efficient and accessible administration practices.

## DATA BREACH

**Patricia Tafelski, et al. v. Logan Health Medical Center, Montana Eighth Judicial District Court, Case No. 19CV45421 and ADV-22-0124**

CPT administered this data breach settlement reaching approximately 213,500 class members through a comprehensive notice program featuring double postcards and strategic reminders. The administration centered on an interactive settlement website that served as an information hub for class members. CPT implemented a flexible benefits distribution system offering multiple payment options, including electronic transfers, paper checks, and credit monitoring activation codes. To maximize participation, CPT executed targeted follow-up campaigns via email and phone to encourage check cashing.

**Harkey-Kirk v. California Department Of Public Health, Sacramento County Superior Ct, Case No. Case No.: 34-2019-00260616**

In addressing this privacy matter under the Confidentiality of Medical Information Act, CPT implemented a comprehensive strategy to issue a notice of class certification. Our approach included targeted outreach through traditional print publication, a robust media campaign across platforms like Facebook, Instagram, and YouTube, and a precision-driven paid search campaign on both Bing and Google. Additionally, our programmatic display advertising, facilitated through a DSP platform, created a dynamic and visually engaging presence across various online spaces. The campaign's visibility was enhanced by a press release distributed via PR Newswire, ensuring comprehensive information reached the public and the media.

**Hinds v. Community Medical Centers, Inc., San Joaquin County Superior Court , Case No. STK-CV-UNPI-2021-0010404**

CPT Group effectively managed this $1.9 million data breach settlement through multiple communication channels, including direct mail notices to over 600,000 class members and a dedicated settlement website where claimants could access court documents and submit claims electronically. A 24-hour toll-free support line with IVR capabilities provided continuous assistance. These comprehensive efforts resulted in over 11,000 claim submissions, with claimants choosing between cash benefits or credit monitoring services.



# EXPERIENCE

## LABOR & EMPLOYMENT

**Nevarez, et al. v. Costco Wholesale Corporation, Los Angeles County Superior Court, Case No. 19STCV10017**

To apprise settlement class members of the $8,750,000 wage and hour settlement, CPT implemented a dual-notification approach that leveraged email and physical mail communications to effectively reach the substantial class size of 96,677 members. Over $5,000,000 was designated as the net settlement amount for distribution among participating class members from the gross settlement amount. The settlement administration was particularly notable for its inclusion of gift card distribution to qualified participants, adding complexity to the distribution process by requiring the management of both monetary and non-monetary benefits.

**Helmick v. Air Methods Corp., Alameda County Superior Court, Case No. RG13665373**

(Top Settlements, 2020) Administration of this $78,000,000 employment settlement demonstrated the complexity of managing high-value, multi-year distributions. The notice program began with direct mail outreach to settlement class members, a comprehensive settlement website, and toll-free class member support. The settlement's significant monetary component required careful administration, with distributions totaling over $49,000,000 executed over three years. The substantial individual awards, averaging approximately $100,000 per claimant, reflected the serious nature of the underlying claims and required meticulous verification and distribution protocols. The high average award amount and multi-year distribution schedule distinguished this as one of the more complex employment settlements of 2020.

**Wackenhut Wage and Hour Cases, Los Angeles County Superior Court, Case No. JCCP Np. 4545**

(Top Settlements, 2019) CPT implemented a sophisticated communication strategy that integrated multiple outreach channels to notify settlement class members in this $130,000,000 wage and hour settlement. The notice program leveraged both email and SMS text messaging in English and Spanish, ensuring broad accessibility across the linguistically diverse class population. A comprehensive settlement website served as an information hub, featuring an online claim portal. CPT supported class member engagement through a dedicated toll-free hotline. The effectiveness of these notice methods was demonstrated by the impressive 57% claimant response - a strong result that helped secure final approval from the court. This settlement's size and successful administration marked it as one of the largest employment settlements in California that year.

**Sanchez v McDonald's Restaurants of California, Los Angeles County Superior Court, Case No. BC499888**

(Top Settlements, 2019) Notice methods in this $26,000,000 wage and hour settlement featured a multi-channel approach. Primary notice was delivered through direct mail and email in English and Spanish, accommodating the workforce's linguistic diversity. A dedicated settlement website was a comprehensive resource, hosting case documents, court filings, frequently asked questions, settlement agreement details, and opt-out/objection forms. All website materials were available in both English and Spanish. For additional support, a toll-free hotline was staffed by trained bilingual representatives.

**Alvarez, et al v. XPO Logistics Cartage, LLC, 2:18-cv-03736-RGK-E (C.D. Cal)**

In administering this $20 million wage and hour settlement, CPT executed a comprehensive bilingual notice program, disseminating materials in both English and Spanish while managing the critical task of collecting W-9s from prospective class members. CPT implemented a strategic follow-up campaign to optimize response rates, including targeted reminder postcards to non-responding individuals. The settlement distribution was executed in two phases: an initial disbursement to all eligible class members and a supplemental distribution to those who had promptly negotiated their initial settlement payments.

**Abdullah v U.S. Security Associates, Inc., San Diego County Superior Court, Case No. 2:15-cv-09-00984 PSG-E**

(Top Settlements, 2018) CPT successfully administered this substantial $21 million settlement, implementing a comprehensive notice and communication program for a class exceeding 22,000 members. The multi-channel outreach strategy included direct mail notification, a dedicated settlement website, and a toll-free support line to ensure class members had ready access to case information and assistance. The administration required sophisticated tax compliance measures, with CPT managing the intricate coordination of settlement benefit distribution alongside required tax documentation. This included the timely issuance of settlement payments with corresponding W2 and 1099 tax forms to all eligible class members, maintaining strict adherence to tax regulations and reporting requirements.

**Cruz & Johnson v. Wal-Mart Associates, Inc., et. al., Los Angeles & San Bernardino County Superior Courts of California, Case Nos. 18STCV03128 and CIVDS1602699**

(Top Settlements, 2021) In this significant 2021 PAGA settlement, CPT administered a $15 million resolution reaching over 320,000 aggrieved employees through direct mail notification. The administration included comprehensive tax compliance, with CPT coordinating the distribution of settlement checks and corresponding 1099 forms to eligible participants. This consequential wage-and-hour settlement exemplified the effectiveness of PAGA enforcement in addressing workplace compliance issues.

**Valdez v. Starbucks Corporation, Superior Court of the State of California, County of Riverside, Case No. PSC1908409**

CPT administered a $3 million PAGA settlement benefiting 138,000 aggrieved employees. The distribution process included coordinated issuance of settlement checks and corresponding 1099 tax forms. CPT managed the disposition of uncashed funds through a Cy Pres distribution, ensuring the full settlement value served its intended public benefit.

# QUALIFICATIONS & EXPERIENCE OF KEY PERSONNEL

### JULIE N. GREEN
**President**
**Notice Expert**

Julie brings 20 years of leadership excellence to CPT Group as one of the industry's foremost experts in legal notice administration. Having personally designed and overseen thousands of class action notice programs, Julie's expertise spans compliance, notice strategy, and regulatory adherence, enabling CPT to successfully administer even the most complex settlements.

As President, Julie oversees all operational aspects while maintaining her commitment to neutrality and client confidentiality. Her background, with degrees in Drama, and Psychology & Social Behavior from the University of California, Irvine, provides unique insights into effective communication and stakeholder management. Julie's innovative leadership continues to drive CPT's position at the forefront of class action administration.

### RANDI J. MARTZ,
**EVP Business Development & Strategy**
**Notice Expert**

Randi brings over 17 years of experience to CPT Group. Her role is crucial in analyzing settlement requirements for legal notification through various research methods and data analysis. Randi's expertise lies in finding efficiencies to implement cost savings for RFPs and developing strategic plans to grow the business.

As a liaison between the Business Development and Operations Teams, Randi plays a vital role in identifying critical opportunities to strengthen settlement and client objectives. Her educational background in Business Administration from California State University, Fullerton, provides a solid foundation for her multifaceted role at CPT.

### MARK BRANDENBERGER,
**Chief Financial Officer**

Mark Brandenberger serves as CPT Group's Chief Financial Officer. A CPA who began his career at Deloitte and Touche, Mark developed his financial and operational expertise over 25 years in financial services, working with companies from start-ups to Fortune 100. He later owned and successfully operated a fire and water restoration company before selling it.

Mark holds a Bachelor of Business Administration in accounting from Cal Poly San Luis Obispo and recently became a certified business coach, leveraging his experience to help business owners exceed their potential through strategic guidance and mentorship.

### JACQUELINE N. KOH
**VP Operations**

Jackie brings nearly two decades of hands-on experience and strategic leadership to CPT Group. Since joining the company 18 years ago, Jackie has become a vital force in shaping CPT's operational excellence and client service delivery. In her role, she oversees key operational departments including Case Management, Disbursement, Claims Processing, Mailing, and the Call Center. Jackie drives operational strategies that align with CPT's growth trajectory and industry reputation. Her deep understanding of the full settlement lifecycle—from court approval and process optimization to client coordination and fund distribution—positions her as a trusted advisor throughout the administration process. Jackie's legal foundation includes prior roles as a paralegal at the Orange County District Attorney's Office and several top law firms. She holds a B.A. in International Relations and Law & Public Policy from the University of Southern California and completed her Paralegal Studies at UCLA.

### TREVOR JONES
**Chief Technology Officer**

Trevor leads CPT's technology vision, systems architecture, and business intelligence strategy to support high-volume, complex case administration. With over two decades of technology leadership experience, including executive roles at VIZIO and Veritone overseeing business operations, IT, and AI-driven analytics, Trevor brings proven expertise in driving innovation, scalability, and operational efficiency.

His specialized knowledge in enterprise innovation, data analytics, and operational strategy strengthens CPT's technological capabilities while ensuring continued excellence in class action administration. Trevor's leadership enables CPT to leverage cutting-edge solutions that enhance both service delivery and operational performance.

Trevor holds a B.S. in Mathematics/Economics from UCLA and actively contributes to the Orange County tech community as a coach and thought leader.

# QUALIFICATIONS & EXPERIENCE OF KEY PERSONNEL

**CPT**Group
Class Action Administrators

## ABEL E. MORALES,
**Director of Operations**

Abel Morales is the Director of Operations at CPT Group. Since joining CPT in 2010, Abel has handled hundreds of class action cases from inception through distribution and has become an expert in complex settlements. He is the primary client contact and is well trusted for his expertise in the class action industry. Abel oversees the Claims Processing Department, Production Department, and Class Member Support Services. His wide range of expertise provides valuable insight into all facets of the Administration process. Prior to CPT Group, Abel was a Senior Analyst for 9 years at a prominent Fortune 500 mutual insurance holding company. Abel also holds a B.A. in International Finance from the California State University of Fullerton. He is bilingual in Spanish.

## ALEJANDRA ZARATE
**Supervising Case Manager**

Alejandra Zárate is one of CPT Group's Supervising Case Managers. In her role, she is responsible for the onboarding and intake of new cases, as well as the training of new Case Managers. Alejandra started with CPT Group in 2007 in the Claims Department and joined the Case Management team in 2009. Her experience at CPT Group positions her well to oversee the critical role of case intake and development of new team members and introducing them to the department's policies and procedures.
Alejandra received her degree in Computer Engineering from Autonomous University of Baja California in Ensenada, B.C. Mexico. While earning her degree, she worked as a web development assistant and helped develop a web page for students interested in taking off-campus classes.

## TARUS DANCY
**Supervising Case Manager**

As a Supervising Case Manager at CPT Group, Tarus leads a team of Case Managers that oversee a breadth of cases, including Wage & Hour, pre-settlement Belaire, and Class Certification matters. With over a decade of experience in project management, Tarus brings a track record of guaranteeing projects are completed on schedule and in accordance with case specifications. In addition, his exceptional communication and leadership abilities support the continuity of the various projects he oversees. Tarus holds an M.B.A. in Project Management from the Florida Institute of Technology and a B.A. in Communications from the University of Memphis.

## TIM CUNNINGHAM,
**Associate Director, Case Management**

Tim Cunningham has been with CPT Group since 2010 and has successfully managed over 300 cases. As Associate Director, under his direction, a team of Case Managers and Assistants are trained and guided to oversee all case activity—from administrative conception to disbursement. Tim and his team are also the primary contact between the firm and Counsel while also working closely throughout administration with the IT, Mailing, Claims and Call Center departments. Prior to CPT Group, Tim was a Lead Relationship Manager for 10 years at a prominent Fortune 500 mutual insurance holding company.
Tim earned his B.A. in Public Administration with a minor in English from California State University, San Diego.

## CAROLE THOMPSON,
**Associate Director, Case Management**

Carole joined CPT in 2010 as a Case Manager. In her current role, she leads a team of Case Managers and ensures the proper guidance and supervision is upheld for high accuracy and prompt adherence to court-ordered deadlines. She is also responsible for overseeing case activities and having a comprehensive understanding of each case her team handles. In her career prior, she spent 12 years in the Financial Industry at a prominent Fortune 500 annuities company. Then, when an opportunity took her family to Minot, North Dakota, she had to leave CPT, but gained 5 years of Human Resources expertise, first as Benefits Specialist at Trinity Health and then as a Benefits Coordinator at Food Management Investors, Inc. Upon returning to California in 2016, Carole rejoined CPT, providing a strong professional background to the team.

## JENNIFER FORST
**Supervising Case Manager**

Jennifer brings a deep understanding of human behavior and organizational dynamics to her role as Supervising Case Manager at CPT Group. Her professional journey began in employee engagement and retention, where she honed her skills as a project manager and consultant. Her expertise was further solidified during her tenure as Director of Client Services for an external consulting firm, where she led a diverse team of consultants, project managers, and analysts to deliver exceptional results for clients across industries.
Jennifer embarked on a new career chapter when she joined CPT Group, drawing on her background in psychology and client services, where she oversees cases with precision and empathy.

## EXHIBITS

EXHIBIT 1. CPT'S INFORMATION SECURITY STATEMENT

EXHIBIT 2. CPT'S DATA AND SETTLEMENT FUND TRANSMISSION METHODS

# EXHIBIT 1

# INFORMATION SECURITY STATEMENT
## Confidential

CPT Group, Inc. ("Company" or "CPT") maintains a comprehensive, written Information Security Program that complies with all applicable laws and regulations and is designed to (a) ensure the security, privacy and confidentiality of Class Member Information, (b) protect against any reasonably anticipated threats or hazards to the security or integrity of the Class Member Information, and (c) deny unauthorized access to, use, deletion, or modification of Class Member Information. As part of an ongoing effort, throughout its business CPT has implemented the following security controls and procedures:

1)  Company uses Class Member Information only for the purposes for which Client provided it, as described in any Agreements and/or Court Order's governing the provisions of the Company's services on any particular engagement.
2)  Company has designated one or more specifically named employees to be responsible for the administration of its Information Security Program.
3)  Company has and maintains processes for identifying, assessing, and mitigating the risks to Class Member Information in each relevant area of the Company's operations and evaluating the effectiveness of the safeguards for controlling these risks.
4)  Company utilizes an EDR that runs and analyzes daily Risk Assessment and Threat Intelligence scans on all company computer stations, servers and protected network subnets. These scans search for any software vulnerabilities along with data containing sensitive information ("SI").
5)  All computers are provisioned with an advanced security stack. Company's Endpoint Protection centrally reports activity, handles patch management and security policies. Company's security stack is based on DNS and content filtering, deep packet inspection at the firewall level, antivirus/antimalware, email filtering and user behavior analysis. Each endpoint is monitored with modern Data Loss Prevention ("DLP") software. Company's DLP system prevents connection to unauthorized external storage, or cloud systems. It actively blocks screen prints and will not allow confidential user information to be sent out of our trusted network.
6)  Login access to Company email or systems requires two factor authentication, which requires not only a password and username but also something physical, like user location, secure ID token or biometrics.
7)  Company regularly monitors, tests and updates its Information Security Program.
8)  Company restricts access to Class Member Information only to those employees, agents, or subcontractors who need to know the information to perform their jobs.
9)  Company performs an annual audit of its Information Security Program and maintains compliance with **AICPA SOC 2 Type II.**  This includes a review of the controls: vulnerability scans, secure software development life cycle, patch management, intrusion detection and prevention, encryption of storage media and devices. Company makes reasonable changes to its Information Security Program to ensure it can maintain safeguards that are appropriate for the Class Member Information at issue.
10)  At Client's request, but only when and in a manner consistent with applicable Agreements and/or Court Orders, Company will securely destroy or return all Class Member Information in its possession and certify to Client in writing that Company has done so. If Company destroys Class Member Information rather than return it, Company will use destruction methods in compliance with all applicable state and federal laws and regulations, including NIST Special Publication 800-88, Revision 1 (2015). This obligation to return or destroy information shall not apply to Class Member Information that is stored in backup or other disaster recovery systems, archives or other storage systems that make it impractical to destroy the information, but if Company retains Class Member Information for these reasons, its obligation under the Settlement Agreement will continue to apply for so long as it retains the information. Additionally, the Company will retain all hard copy documents (i.e. Claim Forms, etc.) for a period of 6 months, at which time they are scanned and shredded on Company premises in compliance with NIST and SOC Cybersecurity Framework.
11)  Company performs extensive background checks (County Criminal, County Civil and National Criminal Database Search) of all its employees, including a review of their references, employment edibility, and education verification to ensure they do not pose a risk to the security of Class Member Information or Clients employees. Company will provide, upon request, a copy of its background check requirements for Clients review and approval. Nothing in this document shall compel Company to disclose the results of such background information of its employees.

# INFORMATION SECURITY STATEMENT
## Confidential

12)  Company conducts a monthly third-party credentialed vulnerability assessment with Trustwave. Vulnerabilities rated as high are patched/resolved within 48 hours, medium within 1 week, and low within 2 weeks. If a vulnerability cannot be resolved within our standard timeframe, a compensating control will be introduced to protect the vulnerable systems. To ensure Company receives timely information regarding new threats and vulnerabilities, Company subscribes to US-CERT notices as well as notices are received from Sonicwall and Crowdstrike. New threats are communicated to our executive and leadership team to disseminate to all employees within the company.

13)  Company has implemented the following safeguards for systems that process, store or transmit Class Member Information:

- Identify and Access Management.
- Windows password complexity with a specific length, history, upper and lower characters, numbers, expiration every 45 days.
- Two-Factor authentication for remote access.
- Removable media devices, personal web-based email, instant message, or online storage (i.e. Dropbox, Google Drive, iCloud, etc.) are blocked and restricted.
- Company uses the Microsoft Office 365 to host corporate email.
- Company uses the HTTPS or SFTP standard for all data transmissions and ensures that all Client Data is encrypted while in transmission between Company's data center and the Company's computer system or other devices (as applicable) and at rest, consistent with SOC 2 Type II standard, but no less than a 128-bit key for symmetric encryption and a 1024-bit key for asymmetric encryption.
- Company requires its clients and self to transfer files with sensitive Class Member Information via a secure transmission protocol through Citrix Sharefile FTP which secures file during transfer with SSL/TFL encryption protocols and in storage using AES 256-bit encryption. Links to files expire after 7 days. Company requires all files transferred in this method to be password protected during transmission and password to be provided telephonically. Files are retrieved by Company, and then deleted manually upon successful download (or auto deleted after 7 days from upload by system).
- Upon hire and annually thereafter, security training of all employees using the online security training platform Knowbe4. Users are required to complete one hour of security training per year. Users are required to take tests online to ensure they've retained the knowledge. Topics covered are spear phishing emails, compromised website, social engineering, strong passwords, ransomware, handling sensitive information, mobile device security.
- Company actively tests security defenses. Staff participate in simulated phishing exercises to reinforce previous training. Company also conducts monthly external penetration tests and daily internal vulnerability scans to ensure the integrity of our security measures.
- Terminated employees are immediately prevented from accessing Class Member Information.
- Appropriately configured and updated firewall, antivirus, and spyware software;
- Separation of Duties.
- Business Continuity Planning.
- Disaster Recovery Planning.
- Pandemic Recovery Planning

14)  Company's physical security requires that employees use an encoded card-key to gain access to the facility as all doors are mechanically locked at all times. Employees can only enter or exit through a front door or back door, both of which are protected by security cameras. Inside the facility, secure areas in the office that contain checks or sensitive material are also protected by electronic card-key badge access and limited to select employees. Security cameras monitor the areas that contain the sensitive material and audits are conducted periodically on the area. Access to the server room is strictly limited to only five individuals and protected by the encoded card-key badge access. Security cameras monitor the inside and outside of the secured area with audits being conducted periodically.

# INFORMATION SECURITY STATEMENT
**Confidential**

15)  Company staff are required to maintain in compliance with the Information Security Policies, Compliance Manual, and Non-Disclosure Agreement. The matters covered in the Code of Business Conduct and Ethics are of the utmost importance to the Company and are essential to the Company's ability to conduct its business in accordance with its stated values. We expect all officers, directors, employees, agents, contractors and consultants to adhere to these rules in carrying out their duties for the Company. The Company will take appropriate action against any officer, director, employee, agents, contractor or consultant whose actions are found to violate these policies or any other policies of the Company. Disciplinary actions may include immediate termination of employment or business relationship at the Company's sole discretion.If the Company has suffered a loss, then it may pursue its remedies against the individuals or entities responsible. If laws have been violated, then the Company will fully cooperate with the appropriate authorities.

## Definitions

1)  **"Class Member Information"** means Class Member name, address, or other contact information and class member claim filing information necessary for Company to perform services required by applicable Agreements or Court Orders in context to the Administration of a Settlement or other Class Action litigation.

2)  **"Client"** means collectively Plaintiff Counsel and Defense Counsel, Plaintiff and Defendant.

3)  **"Client Data"** means proprietary or personal data regarding Client or any of its Class Members under the Settlement Agreement, as provided by Client.

4)  **"Company"** means CPT Group, Inc. a reputable third-party Claims Administrator selected by all the Parties (Plaintiff and Defense Counsel) to administer the Settlement or Notification Mailing.

5)  **"Sensitive Personal Information"** means any non-public information of CPT or Client disclosed by either party to the other party, either directly or indirectly, in writing, orally or by inspection of tangible objects, or to which the other party may have access, which a reasonable person would consider confidential and/or which is marked "confidential" or "proprietary" or some similar designation by the disclosing party. Confidential Information shall not include any information which the recipient can establish: (i) was or has become generally known or available or is part of the public domain without direct or indirect fault, action, or omission of the recipient; (ii) was known by the recipient prior to the time of disclosure, according to the recipient's prior written documentation; (iii) was received by the recipient from a source other than the discloser, rightfully having possession of and the right to disclose such information; or (iv) was independently developed by the recipient, where such independent development has been documented by the recipient.



# EXHIBIT 2

# Secure Transmission Methods for Sensitive Information

CPT Group has established rigorous protocols for secure transmission and protection of Client Data and Wire Information. These guidelines maintain the highest level of security and confidentiality in legal and financial transactions through secure File Transfer Protocol (FTP) technology, password protection, and automatic file deletion.

# Client Data Transmission

The secure transmission of Client Data is paramount in maintaining confidentiality and integrity of sensitive information. CPT implements a stringent process that utilizes secure File Transfer Protocol (FTP) technology to ensure the safe transfer of data files between counsel and CPT.

**Four-Step Security Protocol:**



**1** **Step 1: Link Provision**

CPT provides counsel with a secure FTP (Sharefile) link specifically designated for the transfer of data files ensuring transmission over encrypted connection.

**2** **Step 2: File Upload and Password Protection**

Counsel uploads required files to the Sharefile link. All uploaded files must be password-protected to add an extra layer of security ensuring file contents remain encrypted and inaccessible even if unauthorized access occurs.

**3** **Step 3: Password Communication**

File password are communicated to CPT personnel via telephone. This separation of file transmission and password communication reduces interception risk and unauthorized access.

**4** **Step 4: File Retrieval and Deletion**

Once CPT retrieves the uploaded files, they are automatically deleted from the Sharefile system after seven days minimizing the vulnerability window and ensures sensitive data doesn't persist unnecessarily.

These steps not only provides a secure channel for data transmission but also incorporate additional layers of security through password protection and automatic file deletion. By adhering to these protocols, CPT minimizes the risk of unauthorized access and data breaches, thereby protecting the interests of all parties involved in the legal process.



# Wire Instructions Security Protocols

CPT emphasizes the importance of secure channels for transmitting sensitive financial information, recognizing the potential risks associated with electronic communication of banking details.

## QSF Wire Instructions Provided to Defense Counsel:

### PDF Generation and Protection

CPT creates wire password-protected PDF wire instructions.

**1**

### Secure Upload to Sharefile

Protected PDF is uploaded to secure Sharefile platform.

**2**

### Telephonic Password Communication

CPT personnel directly call Defense Counsel to provide PDF access password.

**3**

### Confirmation Call

Defendant/Defense Counsel should call CPT prior to initiating any wire transfer.

**4**

## Plaintiff's Counsel Wire Instructions Provided to CPT:

The process for communicating wire instructions to Plaintiff Counsel is designed with similar security considerations as those for incoming transfers. By establishing strict guidelines for the transmission of both outgoing and incoming wire instructions, CPT ensures that the final stage of fund distribution maintains the same level of security as the initial transfer.



**No Emailed Bank Account Details** — **Use Secure FTP** — **Call Back Required**

### Authorized Methods Only

CPT explicitly states that attempts to transmit Client Data or Wire Communications through alternative means are not accepted. This strict policy maintains consistent security protocols, reduces risk of data interception or loss, risk of fraudulent transactions or misdirected fund, ensures compliance with data and financial protection regulations, and stablishes clear chain of custody for sensitive and financial information.

### Disclaimer for Unauthorized Transmissions

CPT issues clear disclaimers for any attempts to use unauthorized transmission methods, emphasizing reinforcement of established procedure importance, responsibility placement on transmitting party for potential breaches, risk awareness of unsecured transmission channels, and professional conduct and client trust maintenance.

