Robert T. Mills, Esq. (Arizona Bar #018853)
Sean A. Woods, Esq. (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 N. 12th Street, Suite 100
Phoenix, Arizona 85014
Telephone: (480) 999-4556
Email:  docket@millsandwoods.com
Email:  swoods@millsandwoods.com

Scott Edward Cole, Esq. (CA S.B. #160744)*
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Email: sec@colevannote.com

*Admitted Pro Hac Vice*

Attorneys for Representative Plaintiff
and the Plaintiff Class

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ANWAR ABDEL RAHMAN individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>v.<br><br>ERICKSON COMPANIES, LLC, ERICKSON FRAMING AZ, LLC, and DOES 1 through 100, inclusive,<br><br>             Defendants. | Case No. 2:25-CV-01866-SMB<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

I.    INTRODUCTION AND PROCEDURAL HISTORY ........................................................ 1

II.   SUMMARY OF SETTLEMENT AND NOTICE PROCESS ........................................... 2

III.  THE SETTLEMENT MERITS FINAL APPROVAL ....................................................... 5

    A.  Ninth Circuit Factors Favor Final Approval ............................................................ 5

        1.  The Strength of the Plaintiff's Case ................................................................ 6

        2.  Risk, Expense, Complexity, and Duration of Further Litigation ..................... 6

        3.  The Risk of Maintaining Class Status Throughout Trial ................................ 7

        4.  The Amount Offered in Settlement ................................................................ 7

        5.  The Discovery Completed and the Stage of the Proceedings .......................... 8

        6.  The Experience and View of Counsel ............................................................ 9

        7.  The Reaction of the Class Members to the Proposed Settlement ................. 10

        8.  Lack of Collusion Among the Parties ........................................................... 10

    B.  The Notice Plan SATISFIED Due Process ............................................................ 11

    C.  The Class Should Be Finally Certified .................................................................. 13

    D.  Reimbursement CPT's Fees is Appropriate ........................................................... 13

IV.   CONCLUSION ................................................................................................................ 13

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

# TABLE OF AUTHORITIES

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

**Cases**

*Billitteri v. Sec. Am., Inc.*,
  No. 3:09-cv-01568-F, 2011 U.S. Dist. LEXIS 92713 (N.D.Tex. Aug. 4, 2011) ...................... 11

*Calderon v. Wolf Firm*,
  No. SACV 16-1266-JLS (KESx), 2018 U.S.Dist. LEXIS 42054 (C.D.Cal. Mar. 13, 2018) ..... 8

*Carter v. Vivendi Ticketing United States LLC*,
  No. SACV 22-01981-CJC (DFMx), 2023 U.S. Dist. LEXIS 210744 (C.D.Cal.
  Oct. 30, 2023) ............................................................................................................................ 9

*Churchill Vill., L.L.C. v. GE*,
  361 F.3d 566 (9th Cir. 2004) .................................................................................................. 12

*Copeland v. Hewlett-Packard Co. (In re Hewlett-Packard Co. S'holder Derivative Litig.)*,
  716 F. App'x 603 (9th Cir. 2017) ............................................................................................ 5

*Couser v. Comenity Bank*,
  125 F.Supp.3d 1034 (S.D.Cal. 2015) ....................................................................................... 6

*Franklin v. Kayrpo Corp.*,
  884 F.2d 1222 (9th Cir. 1989) .................................................................................................. 6

*Gordon v. Chipotle Mexican Grill, Inc.*,
  No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430 (D.Colo. Dec. 16, 2019) .......... 7

*Grimm v. Am. Eagle Airlines, Inc.*,
  No. LA CV11-00406 JAK (MANx), 2014 U.S. Dist. LEXIS 199608 (C.D.Cal.
  Sep. 24, 2014) ........................................................................................................................... 7

*Hillman v. Lexicon Consulting, Inc.*,
  No. EDCV 16-01186-VAP (SPx), 2017 U.S.Dist. LEXIS 231075 (C.D.Cal. Apr. 27, 2017) ... 8

*In re Apollo Grp. Sec. Litig.*,
  No. CV 04-2147-PHX-JAT, 2012 U.S. Dist. LEXIS 55622 (D.Ariz. Apr. 20, 2012) ............... 6

*In re Apple iPhone 4 Prods. Liab. Litig.*,
  2012 U.S. Dist. LEXIS 113876 (N.D. Cal. 2012) ................................................................... 10

*In re AudioEye, Inc.*,
  No. CV-15-00163-TUC-DCB, 2017 U.S. Dist. LEXIS 70164 (D.Ariz.
  May 8, 2017) ............................................................................................................................. 3

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) .................................................................................................... 5

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................................... 6

*Lagarde v. Support.com, Inc.*,
  2013 U.S. Dist. LEXIS 42725 (N.D. Cal 2013) ...................................................................... 10

*Linney v. Cellular Alaska Partnership,*
   151 F.3d 1234 (9th Cir. 1998) .................................................................................. 8

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)................................................................................................ 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D.Cal. 2004)..................................................................... 5, 6, 8, 9

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985)................................................................................................ 11

*Principe v. Ukropina (In re Pac. Enters. Sec. Litig.),*
   47 F.3d 373 (9th Cir. 1995) ...................................................................................... 9

*Stott v. Capital Financial Services*,
   277 F.R.D. 316 (N.D.Tex. 2011) ............................................................................. 11

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ...................................................................................... 5

*Yvonne Mart Fox v. Iowa Health Sys.*,
   No. 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640, (W.D.Wis. Mar. 4, 2021) ................ 7

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................................ 5

Fed. R. Civ. P. 23(b) ........................................................................................................ 5

Fed. R. Civ. P. 23(c) ................................................................................................. 11, 12

Fed. R. Civ. P. 23(c)(3)................................................................................................... 11

Fed. R. Civ. P. 23(e) ........................................................................................... 5, 10, 11

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................. 10

**Other Authorities**

Barbara J. Rothstein & Thomas E. Willging, Fed.Jud. Ctr., "*Managing Class Action Litigation: A Pocket Guide or Judges*", 27 (3d Ed. 2010) ........................................................... 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION AND PROCEDURAL HISTORY**

On March 12, 2025, Defendants began sending notice to 11,820 individuals whose personally identifiable information was potentially accessible to unauthorized parties. The information potentially accessed included names, some postal addresses, some driver's license numbers and Social Security numbers (collectively, "Private Information").

On April 2, 2025, Plaintiff Rahman, individually and on behalf of all others similarly situated, filed this case and amended his complaint on April 23, 2025, in the Superior Court of the State of Arizona in and for the County of Maricopa. ECF No. 1-1, at 35. Plaintiff Rahman alleged (i) Negligence, (ii) Breach of Implied Contract, and (iii) Violation of Arizona Consumer Fraud Act.

After removal to this Court, informal exchange of key information and an extensive Settlement negotiation process over several months, the Parties reached a proposed Settlement. The Settlement creates a non-reversionary, cash Settlement Fund of $225,000, which will be used to make cash payments to Settlement Class Members, Plaintiff's attorneys' fees and expenses as approved by the Court, Class Representatives' Service Awards as approved by the Court, and the costs of settlement administration and notice. The settlement also includes Business Practice Changes to be paid for by Defendants with an estimated cost of $332,758. The Settlement provides substantial benefits to the Settlement Class, eliminates the costs and burdens of continued litigation and fully accomplishes Plaintiff's goals in this Action.

On October 31, 2025, Representative Plaintiff filed his motion for preliminary approval of the class action settlement, which this Court granted on November 12, 2025. At that time, this Court also preliminarily approved the proposed Class Notice and the Notice dissemination program; Anwar Abdel Rahman as Representative Plaintiff Scott Edward Cole of Cole & Van Note as Settlement Class Counsel; service award for Representative Plaintiff; and CPT Group as the claims administrator. A copy of that Order has been posted on the claims administration website (www.EricksonSettlement.com) for

1  public viewing. The hearing date of March 12, 2026, was set for final approval of the
2  settlement and as the opportunity for Class Members—should any have an objection to,
3  seek clarification of, or otherwise be heard in connection with the settlement—to be heard.
4        Although no objections have been raised, should any late-filed objections arise prior
5  to the hearing, the claims administrator and Class Counsel will facilitate any Class
6  Member's participation in this final fairness hearing.
7        Finally, as alluded to above, on December 12, 2025, the Class Notice was
8  disseminated. ***No Class Member filed an objection nor opted out,*** demonstrating
9  tremendous support for this settlement. As a result of the successful notice campaign, the
10 compendium of information available to the Parties and their counsel, and Class Counsel's
11 and Class Members' support for this settlement as fair and reasonable, it now merits final
12 approval. **This Motion is unopposed.**

13 **II.    SUMMARY OF SETTLEMENT AND NOTICE PROCESS**

14       Under the preliminarily approved Settlement Agreement, Defendant will pay up to
15 $5,000 per Class Member for unreimbursed, Documented Losses and a Flat Cash Payment
16 representing a *pro-rata* share of what remains in the Settlement Fund ($225,000) after
17 payment of Documented Losses, and payment of settlement administration costs and
18 attorney's fees and Service Award, as awarded by the Court. S.A. ¶ 70(a)-(b).

19       ***Class Definition.*** The Settlement Class includes "all persons in the United States
20 whose Private Information was potentially compromised as a result of the Data Security
21 Incident and who were sent notice by mail of the Data Security Incident prior to the
22 execution of th[e] [Settlement] Agreement." S.A. ¶ 58. Excluded from the Settlement Class
23 are (a) all persons who are governing board members of Defendants; (b) governmental
24 entities; (c) the Court, the Court's immediate family, and Court staff; and (d) any individual
25 who timely and validly opts-out of the Settlement. *Id.*

26       ***Attorneys' Fees and Costs.*** The settlement provides for an attorneys' fee award of
27 up to 33.33% of the Settlement Fund ($74,992.50), plus reimbursement of costs. S.A. ¶
28 103. These fees are a typical percentage in the resolution of common fund class actions.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

*See*, *In re AudioEye, Inc.*, No. CV-15-00163-TUC-DCB, 2017 U.S. Dist. LEXIS 70164, at *12 (D.Ariz. May 8, 2017) (finding 33.33% of the fund plus expenses fair and reasonable). Lead Counsel's firm devoted numerous hours to and faced significant risks[1] in the matter's prosecution and, more importantly, made an extraordinary fund available to a large number of individuals, totaling 153.51 hours and $1,318.32 in unreimbursed costs. Noteably, this amount does not account for additional future expenses in overseeing the settlement process, making appearances, filing court documents, ensuring claims administration compliance with this Court's orders, etc.

***Service Awards.*** The Settlement also provides for a Service Award to Representative Plaintiff of $2,500 for his time, risk and effort in bringing his lawsuit, representing the large class, and in consideration for the claims released.[2] S.A. ¶102. The proposed service payment is also reasonable given the minimal impact this amount will have on any settling Class Member's level of recovery.

***Settlement Administration Costs.*** The settlement administration costs are not to exceed $37,800—a reasonable amount given the size of the Class and the work required to send the Notice, process settlement payments, establish and update a settlement website and communicate extensively with Class Members and Class Counsel. Cole Decl. ¶ 14; S.A. ¶¶ 80, 82, 76(e).

***Results of the Notice Process.*** In accordance with the Court's grant of preliminary approval, the Settlement Administrator sent the Notices by first class mail to all Class Members at their last known addresses, updated using the National Change of Address ("NCOA") Database. When Notices were returned as undeliverable, the Settlement

---

[1] Notably, post-judgment, Class Counsel will be required, *inter alia*, to stay in contact with the claims administrator to ensure payment of the settlement proceeds to all Class Members, to communicate with the Class Members themselves and other attorneys, and report compliance with the terms of the Court's final approval order. Attorney fee awards in common funds cases are, thus, intended to compensate class counsel for work performed both before *and after* the date of judgment.

[2] *See*, Declaration of each of the Representative Plaintiff, submitted herewith.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1 Administrator performed reasonable address traces then, when possible, re-mailed those Notices to better mailing addresses. Challenges to the Notice process and to the Settlement itself were non-existent.

***Distribution to Class.*** The entire Net Settlement Fund will be disbursed to the Settlement Class. Claims for Cash Payment A – Documented Losses will be reviewed by the Settlement Administrator and paid if in compliance with the Settlement Agreement. Individual settlement shares for Cash Payment B will be calculated *pro-rata*, based on the number of Settlement Class Members who submit timely and valid claim forms. The Net Settlement Fund's distribution was outlined in then Notices and Claims Form already approved by this Court.

***Effective Date.*** The Effective Date of the Settlement means: (a) The Parties have executed this Agreement, (b) The Parties have submitted to the Court and the Court has entered the Final Approval Order and (c) The time for seeking rehearing, appellate or other review of the Final Approval Order has expired, or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing review, appeal, or certiorari could be taken has finally expired. S.A. ¶ 30.

***Funding.*** No later than fourteen days after the Effective Date, Defendants shall provide the balance of the Settlement Fund not already advanced for notice costs to the Settlement Administrator. S.A. ¶ 64. Within twenty-one days of the Effective Date, the Settlement Administrator shall mail the Service Awards to the Representative Plaintiff and distribute Plaintiff's Counsel's Fees and Expenses awarded by the Court as directed by Class Counsel. S.A. ¶ 102. Within thirty days of the Effective Date, the Settlement Administrator shall distribute the Settlement Class Member Benefits. *Id.* at ¶ 98. Settlement checks will remain valid for ninety days from the date of issuance. S.A. ¶ 99.

***Cy Pres.*** The total amount of uncashed Settlement Class Member checks will be distributed to Future of Privacy Forum, upon Court approval. S.A. ¶. 105

## III. THE SETTLEMENT MERITS FINAL APPROVAL
### A. NINTH CIRCUIT FACTORS FAVOR FINAL APPROVAL

Plaintiff brings this Motion pursuant to Federal Rules of Civil Procedure Rule 23(e), under which a class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). This Court considered and granted preliminary approval of class certification. (Dkt. No. 20). For the same reasons described in Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (Dkt. No. 19), this Court should certify the Class for purposes of final approval of the settlement.

Next, the Court "must determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Copeland v. Hewlett-Packard Co. (In re Hewlett-Packard Co. S'holder Derivative Litig.)*, 716 F. App'x 603, 605 (9th Cir. 2017) (internal citation omitted). The Ninth Circuit has considered, if applicable, the following eight factors in determining whether that standard is satisfied: (1) the strength of the plaintiff's case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and view of counsel, (7) the presence of a governmental participant, and (8) the reaction of the class members to the proposed settlement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon*, 150 F.3d at 1026. "Not all these factors will apply to every class action settlement" and "one factor alone may prove determinative in finding sufficient grounds for approval." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D.Cal. 2004) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)). Rule 23(e)(2) further provides for consideration of whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

- 5 -
PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:24-CV-01866-SMB

effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

### 1. The Strength of the Plaintiff's Case

Plaintiff believes he has a reasonable chance of proving Defendants' data security was inadequate and, if he establishes that key fact, Defendants are likely to be found liable under at least one theory of liability in his Complaint. However, his success is not guaranteed. Defendants filed a potentially meritorious motion to dismiss, which was pending at the time the Settlement was agreed upon. By contrast, the value achieved through the Settlement Agreement *is* guaranteed, favoring approval of the Settlement Agreement.

### 2. Risk, Expense, Complexity, and Duration of Further Litigation

Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re Apollo Grp. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 U.S. Dist. LEXIS 55622, at *8 (D.Ariz. Apr. 20, 2012) (quoting *Nat'l Rural Telecomms. Coop* 221 F.R.D. at 526). In evaluating the fairness of a settlement, "the Court must balance against the continuing risks of litigation (including the strengths and weaknesses of the Plaintiff's case) the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Couser v. Comenity Bank*, 125 F.Supp.3d 1034, 1041 (S.D.Cal. 2015) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). In this respect, "it has been held proper to take the bird in hand instead of a prospective flock in the bush." *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 526. As Ninth Circuit Jurists have long recognized, "public policy favor[s] the compromise and settlement of disputes." *Franklin v. Kayrpo Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

While Plaintiff believes his case is strong, all cases, including this one, are subject to substantial risk. As noted above, Defendants filed a motion to dismiss, and judges of this Court have dismissed some data breach putative class actions on the pleadings. As with most complex litigation, data breach class actions rarely end just after a certification ruling. Even a successful judicial resolution at the trial court level can be just the beginning of a lengthy, expensive process, stalling payments to Class Members for years. This judicial purgatory is compounded by the risk of an adverse appellate ruling. As such, the risks of continued litigation support approval of this settlement.

### 3. The Risk of Maintaining Class Status Throughout Trial

Another significant risk faced by Plaintiff is maintaining class action status through trial. The Complaint has not yet survived a motion to dismiss, the class is not yet certified, and if the case proceeds, Defendants will certainly oppose certification. Thus, Plaintiff "necessarily risk[s] losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, No. LA CV11-00406 JAK (MANx), 2014 U.S. Dist. LEXIS 199608, at *26 (C.D.Cal. Sep. 24, 2014).

Even if the Court certified the Class, the risk of decertification is great because data breach litigation is constantly "evolving" and, thus, "there is no guarantee of the ultimate result." *Yvonne Mart Fox v. Iowa Health Sys.*, No. 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640, at *14 (W.D.Wis. Mar. 4, 2021); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430, at *3 (D.Colo. Dec. 16, 2019). This over-arching risk simply puts a point on what is true in all class actions—class certification through trial is never a settled issue and is always a risk for the Plaintiff and Class Members.

### 4. The Amount Offered in Settlement

In light of the risks and uncertainties presented by data incident litigation, the value of the Settlement favors approval. The Settlement makes significant relief available to Settlement Class Members. Each Class Member is eligible to make a claim for up to $5,000 in reimbursements for Documented Losses related to the Data Incident. S.A. ¶ 70(a).

Moreover, every Settlement Class Member who submits a valid claim is eligible to receive a Flat Cash Payment. S.A. ¶ 70(b). This provides substantial additional benefits to Settlement Class Members. Because the settlement amount here is similar to other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair. *See*, *Calderon v. Wolf Firm*, No. SACV 16-1266-JLS (KESx), 2018 U.S.Dist. LEXIS 42054, at *21 (C.D.Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face in pursuing individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *Id*. Accordingly, this factor favors approval.

### 5. The Discovery Completed and the Stage of the Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1239 (9th Cir. 1998). Plaintiff vigorously and aggressively gathered all available information regarding Defendant and the Data Incident—including publicly-available documents concerning announcements of the Data Incident and notice of the Data Incident from Defendants to Class Members. In addition, the Parties informally exchanged significant non-public information concerning the Data Incident and the size of the Class in preparation for successful negotiations. "A settlement following sufficient discovery and genuine arm's-length negotiation is presumed fair." *Nat'l Rural Telecomms. Coop.,* 221 F.R.D at 528 (C.D.Cal. 2004).

Class Counsel's experience in similar privacy and data protection cases provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiff's and Class Members' interests without expending hundreds of hours and further substantial financial resources to come up to speed on the subject area. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP (SPx), 2017 U.S.Dist. LEXIS 231075, at *19 (C.D.Cal. Apr. 27, 2017). Accordingly, Plaintiff is well informed about the strengths and weaknesses of this case.

### 6. The Experience and View of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D at 528. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Principe v. Ukropina (In re Pac. Enters. Sec. Litig.)*, 47 F.3d 373, 378 (9th Cir. 1995).

The judgment of Plaintiff's experienced Counsel supports the finding that the settlement is fair and reasonable. In negotiating the amounts to be paid under the Settlement, Plaintiff's Counsel relied upon published reports documenting data breach and identity theft costs, actual costs incurred by Class Members (as relayed in conversations with Plaintiff's Counsel), their own experience in other data incident litigation and reported settlements in other data incident class actions.

The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation. In the experience of Plaintiff's Counsel, who has litigated numerous data breach cases, litigated hundreds of class actions over 33 years, have spoken to victims of other data breaches and have reviewed claims data from other settlements, the relief provided by this Settlement should be considered an outstanding result and benefit to the Class. Cole Decl. ¶ 14. Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data incident class actions that have been approved by other courts. *Carter v. Vivendi Ticketing United States LLC*, No. SACV 22-01981-CJC (DFMx), 2023 U.S. Dist. LEXIS 210744, at *14 (C.D.Cal. Oct. 30, 2023) (Review of settlements that have been approved, some offering as little as $0.75 per class member.)

Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes and having dedicated significant time and monetary resources to this litigation, Class Counsel fully endorses the Settlement. Cole Decl. ¶ 27.

### 7. The Reaction of the Class Members to the Proposed Settlement

The reaction of the Settlement Class to this Settlement is overwhelmingly positive. Out of a total of 10,099 people to whom received notice via U.S. First Class Mail, none requested exclusion and there were no objections. O'Connor Decl. ¶¶ 21-22.

As of January 8, 2025, the administrator received 162 Claim Forms. O'Connor Decl. ¶ 19. The claims deadline is February 10, 2025, and as such, a supplemental declaration from CPT will be provided to the Court detailing any additional claims received after January 8, 2025.

To date, the claims rate in this case is approximately 1%, a typical result for a data breach case. This number is also not surprising given that many Class Members are potentially construction workers who only temporarily resided in Arizona for a season. Still, the fact that only a modest number of Settlement Class Members have taken advantage of the benefits offered under the Settlement does not render the Settlement unfair. *Lagarde v. Support.com, Inc.* (N.D. Cal 2013) 2013 U.S. Dist. LEXIS 42725 (approving settlement with 0.17% claims rate); *In re Apple iPhone 4 Prods. Liab. Litig.*, (N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 113876 at *2 (finding settlement fair and adequate despite a claim rate between 0.16% and 0.28% for a $15 cash payment). The overwhelming majority of the Class received Notice of the Settlement. Class Counsel has no way to further incentivize Class Members to make claims, other than to make these robust amounts available if they do make claims. The best Counsel can do is make available a robust amount to those who believe they have claims and to make that claims/collection process simple. That process occurred in this case. Put another way, the Settlement is a complete success because it created a process to compensate those Settlement Class Members who, in fact, suffered actual damages.

### 8. Lack of Collusion Among the Parties

The Parties negotiated a substantial, multifaceted settlement, as described above. The Parties did not negotiate attorneys' fees and the service award until after agreement on all substantive portions of the class resolution had been reached, and both the class portion

of the resolution and the attorneys' fees and the service award were negotiated during numerous and periodic arm's-length negotiations. Cole Decl. ¶ 13. Furthermore, Settlement Class Counsel are well versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Thus, the Court can be assured that the negotiations were not collusive.

### B. THE NOTICE PLAN SATISFIED DUE PROCESS

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic mail or other appropriate means. Fed. R. Civ. P. 23 (c)(2)(B). Under Rule 23(c)(2)(B), the notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action, (ii) the definition of the class certified, (iii) the class claims, issues or defenses, (iv) that a class member may enter an appearance through an attorney if the member so desires, (v) that the court will exclude from the class any member who requests exclusion, (vi) the time and manner for requesting exclusion, and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail postcard notice is the gold standard, and is consistent with notice programs approved by other courts. *Stott v. Capital Financial Services*, 277 F.R.D. 316, 342 (N.D.Tex. 2011) (approving notice sent to all class members by first class mail); *Billitteri v. Sec. Am., Inc.*, No. 3:09-cv-01568-F, 2011 U.S. Dist. LEXIS 92713, at *41 (N.D.Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the Class, the claims at issue, the ability of a Class Member to object or exclude themselves and/or enter an

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1 appearance through an attorney, and the binding effect of final approval and class
2 judgment. The Notice utilized clear and concise language that is easy to understand and
3 was organized in a way that allowed Class Members to easily find any section that they
4 may be looking for. Thus, it was substantively adequate. *Churchill Vill., L.L.C. v. GE*, 361
5 F.3d 566, 575 (9th Cir. 2004) (A notice "is satisfactory if it generally describes the terms
6 of the settlement in sufficient detail to alert those with adverse viewpoints to investigate
7 and to come forward and be heard.").

8 As outlined in detail in the supporting Declaration of the Settlement Administrator,
9 the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). On
10 December 12, 2025, CPT disseminated the Postcard Notice by First Class Mail to the
11 11,504 Class Members on the Class List for whom a mailing address was available.
12 O'Connor Decl. ¶ 13. The Postcard Notice provided an overview of the settlement terms,
13 the benefits available, the options available to Class Members and the settlement website
14 where additional settlement information could be obtained. Cole Decl. ¶ 23. After all
15 address tracings and remailings, CPT delivered 10,099 Postcard Notices, equating to a
16 delivery success percentage (or "reach rate") of 87.78%. O'Connor Decl. ¶¶ 13-16. Such
17 notice complies with the program approved by this Court in its Preliminary Approval Order
18 and is consistent with Notice Programs approved in the Ninth Circuit and across the United
19 States. A reach rate of 87.78% is considered a "high percentage," and is within the "norm."
20 *See* Barbara J. Rothstein & Thomas E. Willging, Fed.Jud. Ctr., "*Managing Class Action*
21 *Litigation: A Pocket Guide or Judges*", 27 (3d Ed. 2010).

22 In addition to the direct mail notice, CPT established a dedicated website for the
23 Settlement with an easy to remember domain name (www.EricksonSettlement.com).
24 O'Connor Decl. ¶ 8. Relevant documents were posted on the website for Settlement Class
25 Members to review. To date, there have been 2,200 page views and 719 unique visitor
26 sessions to the Settlement Website. *Id.* at 12. Thus, the notice plan has met and exceeded
27 the requirements of due process.
28

## C. THE CLASS SHOULD BE FINALLY CERTIFIED

The Court has already conditionally certified the Settlement Class for settlement purposes. (ECF 38). For the reasons stated in the preliminary approval motion (ECF 37), and the Preliminary Approval Order (Dkt. No. 20), the Court's certification of the Settlement Class (for settlement purposes only) should be affirmed.

## D. REIMBURSEMENT CPT'S FEES IS APPROPRIATE

Representative Plaintiff respectfully requests approval of CPT's settlement administration costs and fees. By the time of preliminary settlement approval, CPT currently estimated its fees at $28,750—a very reasonable amount given the size of the Class and the work required to send the Notice, process settlement checks, establish a website and communicate with Class Members and counsel. O'Connor Decl. ¶ 24.

## IV. CONCLUSION

Based upon the foregoing, Representative Plaintiff respectfully requests the Court grant final approval of the Settlement.

Dated: January 23, 2026

By: */s/ Scott Edward Cole*
Scott Edward Cole, Esq. (CA S.B. #160744)*
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
Email: sec@colevannote.com

Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 N. 12th Street, Suite 100
Phoenix, Arizona 85014
Telephone: (480) 999-4556
Email: docket@millsandwoods.com
Email: swoods@millsandwoods.com

*Admitted Pro Hac Vice*

Attorneys for Representative Plaintiff and the Plaintiff Class

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Gena L. Sluga
gsluga@cdslawfirm.com
Justin Vanderveer
jvanderveer@cdslawfirm.com
ycanez@cdslawfirm.com
file@cdslawfirm.com
**CHRISTIAN DICHTER & SLUGA, P.C.**
2800 N Central Ave., Ste. 860
Phoenix, Arizona 85004
Telephone: (602) 792-1700

Wystan M. Ackerman
wackerman@rc.com
William M. Daley
wdaley@rc.com
**ROBINSON & COLE LLP**
One State Street
Hartford, Connecticut 06103
Telephone: (860) 275-8200

*Attorneys for Defendants*

                              */s/ J. Taylor Locke*
                              J. Taylor Locke

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

- 14 -
PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:24-CV-01866-SMB