Robert T. Mills, Esq. (Arizona Bar #018853)
Sean A. Woods, Esq. (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 N. 12th Street, Suite 100
Phoenix, Arizona 85014
Telephone: (480) 999-4556
Email: docket@millsandwoods.com
Email: swoods@millsandwoods.com

Scott Edward Cole, Esq. (CA S.B. #160744)*
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Email: sec@colevannote.com

*Admitted Pro Hac Vice*

Attorneys for Representative Plaintiff
and the Plaintiff Class

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ANWAR ABDEL RAHMAN individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ERICKSON COMPANIES, LLC, ERICKSON FRAMING AZ, LLC, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:25-CV-01866-SMB<br><br>**CLASS ACTION**<br><br>**DECLARATION OF SCOTT EDWARD COLE IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

I, Scott Edward Cole, declare under penalty of perjury, that the following statements are true:

1. I am an attorney-at-law, licensed to practice in California and admitted to practice before this Court Pro Hac Vice. I am the Founder and Shareholder at the law firm of Cole & Van Note ("CVN"), attorneys-of-record for Representative Plaintiff Anwar

1  Abdel Rahman. I make these statements based on personal knowledge, would so testify if
2  called as a witness and have personal knowledge of the foregoing.

3    2.    I am filing this Declaration as factual support for the Court to consider in
4  support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement.

5    3.    I am admitted *pro hac vice* in this Court.

6    4.    On or about November 18, 2024, Erickson Companies, LLC and Erickson
7  Framing AZ, LLC ("Defendants") discovered unusual activity on their network.

8    5.    Following a forensic investigation and manual review, on February 19, 2025,
9  Defendants confirmed that Private Information may have been made accessible to
10  unauthorized parties.

11    6.    On March 12, 2025, Defendants began sending notice to 11,820 individuals
12  whose personally identifiable information was potentially accessible to unauthorized
13  parties.

14    7.    On his own behalf and on behalf of all those similarly situated, Plaintiff filed
15  the instant case on April 2, 2025, in the Superior Court of the State of Arizona in and for
16  the County of Maricopa.

17    8.    Plaintiff amended his complaint on April 23, 2025.

18    9.    On May 29, 2025, Defendants removed the case to this Court and filed a
19  Motion to Dismiss on June 20, 2025.

20    10.    Even prior to filing the Action, Plaintiff's attorneys at CVN were armed with
21  a detailed factual understanding of Defendants' operations and data breaches in general.
22  Indeed, I have litigated scores of other cases.

23    11.    After filing the Action, the Parties engaged in informal discovery efforts,
24  including a voluntary exchange of confirmatory information to facilitate settlement
25  discussions. The information made available to CVN prior to the ultimate settlement was
26  sufficiently comprehensive to place the Parties' attorneys, each of whom are experienced
27  class action litigators, in a position to explore settlement.
28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

12. While the Motion to Dismiss was pending, the Parties engaged in informal settlement discussions. The Parties were engaged in an offer and counteroffer process which took months to complete. These negotiations culminated in a Settlement Agreement, which the Court approved on November 12, 2025.

13. The Parties did not negotiate attorneys' fees and the service award until after agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the attorneys' fees and the service award were negotiated during numerous and periodic arm's-length negotiations.

14. No objections to this Settlement have been raised.

15. In short, the discovery, knowledge-base and robust negotiations here resulted in a detailed, long-form settlement agreement, the final result being a settlement which is, again, fair, adequate and reasonable when balanced against the high risks of continued litigation. The relief provided by this Settlement should be considered an outstanding result and benefit to the Class

## **FAIRNESS AND ADEQUACY OF THE PROPOSED SETTLEMENT**

16. Prior to filing the Complaint, CVN's attorneys interviewed Representative Plaintiff Anwar Abdel Rahman regarding the kind of information he provided to Defendants, his relationship with Defendants and his damages associated with Defendants' loss of his information.

17. After thoroughly interviewing Mr. Rahman, my office determined that he had claims typical of the other Class Members and would be an adequate representative plaintiff.

18. I am not aware of any antagonism or conflict of interest between Mr. Rahman and the putative Class, or each other. In fact, Mr. Rahman has been involved in this case and has been in routine contact with my firm and assisted with the prosecution of efforts that included frequent emails and telephone calls with counsel, production of documents and communications surrounding litigation, mediation and settlement.

19. The information CVN acquired through its pre-filing investigation, knowledge of this industry and discovery exchanged with Defendants enabled CVN to properly and intelligently value these claims for purposes of settlement, assess the risks of continued litigation and otherwise determine what terms of settlement would be fair and reasonable. As a result, it is clear that the discovery process has been involved and thorough, placing Plaintiff and her counsel in an excellent position to evaluate the merits and value of this lawsuit.

20. If the case were to proceed without settlement, the Parties will face the following hurdles: (1) expensive and extremely time-consuming ESI-related discovery efforts that often involve developing appropriate ESI protocols and then compiling and reviewing voluminous document productions of a highly technical nature; (2) due to the complexity of the ESI, the Parties will almost certainly need to retain cybersecurity experts who can parse and evaluate the data among other issues and (3) substantial motion practice on an array of issues such as standing, causation, damages and injunctive relief. There is also substantial risk in Plaintiffs obtaining and maintaining class certification. Class certification outside the settlement context poses a significant challenge

21. Taking this case to trial and evaluating potential damages would be highly risky as few, if any, data breach trials have been conducted. The reality is that even if Plaintiffs did successfully obtain a substantial verdict, there are significant questions whether this particular Defendant (which does not appear to be a large entity with deep pockets) can satisfy the judgment.

22. In short, without the Settlement, the parties would face years of risk, uncertainty, complexity and expense, and these challenges would remain through certification, trial and appeals. All of these issues would persist without any guarantee of relief for the class. Efficient resolution in data breach litigation is particularly important. First, the release of confidential data puts the Class immediately at risk, meaning the ameliorative effect of the Settlement can have the most impact when delivered as near as possible to the breach. Second, Class Members can be harmed in the future. Lastly,

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1   achieving an early result means more Class Members will have necessary records readily
2   available to make documented claims.

3       23.    Barring a settlement, Defendant would undoubtedly take this case very
4   seriously, retain the best experts and pursue all procedural measures to ensure this case
5   never reached a jury. If class certification were granted, there would still be the inherent
6   risks of trial. Proof of Plaintiffs' case at trial requires expert testimony to establish
7   Defendant failed to adequately safeguard Class Members' PII. Proving *actual* damages
8   likely would require substantial discovery into the nuances of how Private Information is
9   first exfiltrated, marketed and then sold, for what purposes it is used, at what cost this
10  comes to the Plaintiffs and how these negative actions could have been deterred or
11  prevented by the imposition of other security precautions. Further, Class Counsel is
12  unaware of any data breach cases that have proceeded to trial, which means that one cannot
13  easily value these claims based on traditional measures such as jury verdicts. Finally, even
14  if damages are provable, Proposed Class Counsel is aware of a consumer survey which
15  found that a typical individual in a data breach suffers less than $50 in out-of-pocket
16  damages.

17      24.    Finally, the Settlement obviates the risks of (i) Defendant failing to timely
18  pay following a successful Plaintiff verdict or (ii) Defendant filing and potentially
19  succeeding on appeal. This is especially important in data breach cases because time is of
20  the essence. The proposed Settlement will protect the Class Members' PII in ways that a
21  later monetary judgment will not.

22      25.    Consistent with this Court's preliminary approval Order, the approved
23  Notice was mailed out to all potential Class Members, who were thereafter given sixty (60)
24  days to make their elections as to whether they wished to participate in the Settlement,
25  object thereto, or opt out. As the claims administrator attests in the Declaration of Kaylie
26  O'Connor (filed herewith), 11,504 Class Members received Notice via U.S. First Class
27  Mail. After skip-tracing and other searches for better addresses, 10,099 Notices delivered
28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

via U.S. First Class Mail and remain undeliverable. This indicates that the Notice program was highly successful.

26. As the Claims Administrator further explains, there were no objections nor Requests for Exclusion.

27. As of the time of this Declaration, 162 claims were received by the Claims Administrator. The deadline to submit a claim is February 10, 2025. After the claims deadline has passed, Plaintiff's counsel will submit another, supplemental declaration from the Claims Administrator documenting the total number of claims, opt outs and objectors.

28. It should be noted that the low number of opt outs and objectors is not tantamount to a lack of interest in the Settlement. Given all of this, we consider the Notice program effectuated here to be a success and there is overwhelming support for the Settlement from Class Members.

29. Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes and having dedicated significant time and monetary resources to this litigation, Class Counsel fully endorses the Settlement.

**EXHIBITS**

30. Attached hereto as **Exhibit A** is a true and correct copy of the Declaration of Kaylie O'Connor, on behalf of Settlement Administrator CPT Group.

I declare, under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of January 2026, at Oakland, California.

*/s/ Scott Edward Cole*
Scott Edward Cole, Esq.

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anwar Abdel Rahman,<br><br>Plaintiff,<br><br>v.<br><br>Erickson Companies, LLC, et al.<br><br>Defendants. | **DECLARATION OF KAYLIE O'CONNOR (ON BEHALF OF CPT GROUP, INC.) REGARDING SETTLEMENT ADMINISTRATION** |

1

I, Kaylie O'Connor declare as follows:

1. I am employed as a Senior Case Manager at CPT Group, Inc. ("CPT"), the Settlement Administrator jointly agreed upon by the Parties and approved by the Court for *Rahman v. Erickson Companies, LLC*. The following statements are based on my personal knowledge, information provided to me by counsel for the Parties, by other CPT employees working on this matter, and records of CPT generated and maintained in the usual course of its business. If called on to do so, I could and would testify competently thereto. I submit this declaration in support of the Parties' Motion for Final Approval of Class Action Settlement.

2. CPT has extensive experience in providing notice of class actions and administering class action settlements. In the past 30-plus years, we have provided notification and/or settlement administration services in thousands of class action cases.

### SUMMARY OF NOTICE PLAN AND ADMINISTRATIVE DUTIES

3. As the Settlement Administrator in this matter, CPT was tasked with providing notice and claims administration services as outlined in the Parties' Settlement Agreements. These responsibilities included, but are not limited to, the following:

    a. Obtaining Class Members' contact information from Defendants and updating addresses using the National Change of Address (NCOA) database.

    b. Preparing, printing and disseminating the Postcard Notice to Class Members and sending Long Form Notices and paper Claim Forms upon request.

    c. Establishing a dedicated Settlement Website, which includes links to the Court-approved documents, allows online submission of claims, and provides up-to-date information regarding the case.

    d. Establishing a dedicated 24-hour toll-free support line with Interactive Voice Response (IVR) capabilities.

2

  e. Reviewing and determining the validity of submitted Claim Forms.

  f. Notifying claimants who submit deficient claims, providing them with clear instructions to correct deficiencies.

  g. Receiving and processing other communications about the Settlement such as questions about the claims process, Requests for Exclusion, and Objections.

  h. Preparing reports and summaries regarding the notice and claims process for the Parties and the Court.

  i. Establishing and maintaining a Qualified Settlement Fund.

  j. Calculating and distributing Cash Payments to Class Members via mailed check or electronic distribution.

  k. Performing other tasks as set forth in the Preliminary Approval Order, the Settlement Agreement, or as the Parties mutually agree to or that the Court orders.

## PROVISION OF CLASS DATA

4. On November 5, 2025, CPT received a spreadsheet containing the names and available mailing addresses for approximately 11,734 individuals.

5. CPT scrubbed the data for anomalies and duplicates. As a result, a refined master list of 11,701 Class Members referred to as the "Class List," was compiled, including 197 Class Members for whom no mailing address was available. CPT assigned a unique ID to each record to be used for tracking purposes throughout the course of the administration.

## TOLL-FREE NUMBER

6. CPT established a case-specific 24-hour toll-free telephone number (1-888-711-2409) that went live on December 11, 2025. Calls received are prompted through interactive voice recognition ("IVR") Frequently Asked Questions ("FAQs") and live

3

1  representatives are available to address inquiries. The toll-free telephone number was
2  included on the Postcard Notice. In addition, it is listed in several locations on the
3  Settlement Website, including the footer and Contact-Us page.

## CASE-SPECIFIC EMAIL ADDRESS

5  7. CPT established a dedicated case email address
6  (EricksonSettlement@cptgroup.com) and inbox which was activated on December 4,
7  2025. The email address was listed on the Postcard Notice and is listed in several locations
8  on the Settlement Website, including the footer and Contact-Us page. Class Members can
9  use this email address to communicate with CPT if they have questions about the case.

## SETTLEMENT WEBSITE

11  8. CPT established a dedicated Settlement Website
12  (www.EricksonSettlement.com) which went live on December 11, 2025. The Settlement
13  Website includes a Court Documents page that contains links to downloadable versions of
14  case documents, including the Settlement Agreement, Preliminary Approval Order, Long
15  Form Notice and Claim Form.

16  9. An Important Dates page on the Settlement Website lists the case deadlines
17  for submitting a Claim Form, filing a Request for Exclusion, or filing an Objection, as well
18  as the date and time of the Final Approval Hearing.

19  10. Additionally, the website provides a link allowing Class Members to submit
20  a Claim Form electronically which will remain active until the deadline to submit a Claim
21  Form (February 10, 2026).

22  11. CPT will continue to maintain and update the Settlement Website with
23  relevant documents, including the Final Approval Order and Judgment once entered by the
24  Court, and other updates as necessary.

25  12. As of the date of this declaration, approximately 719 unique visitors have
26  viewed the Settlement Website, resulting in approximately 2,200 website page views.
27  //
28

4

**POSTCARD NOTICE**

13. On December 12, 2025, CPT disseminated the Postcard Notice by First Class Mail to the 11,504 Class Members on the Class List for whom a mailing address was available. Prior to mailing, CPT checked all mailing addresses against the National Change of Address (NCOA) database to ensure that notices were sent to the most current addresses available. Attached hereto as **Exhibit A** is a true and correct copy of the Postcard Notice.

14. As of the date of this declaration, the United States Postal Service ("USPS") has returned a total of 1,727 Postcard Notices. For the Postcard Notices returned without a forwarding address, CPT conducted skip tracing using Accurint, one of the most comprehensive address-location tools available. Accurint utilizes hundreds of different databases supplied by credit supporting agencies, public records, and a variety of other national databases.

15. As a result of CPT's skip trace efforts, and in some instances upon request from a Class Member, a total of 325 Postcard Notices have been re-mailed to date. Additionally, 28 Postcard Notices were forwarded automatically by the USPS because a forwarding address was on file.

16. As of the date of this declaration, a total of 1,405 Postcard Notices have been deemed undeliverable because no forwarding address was available, and no updated address could be identified through skip tracing.

**CLAIMS ADMINISTRATION**

17. The deadline for Class Members to submit a Claim Form is February 10, 2026 ("Claim Deadline").

18. Upon receipt of a Claim Form, CPT reviews each submitted Claim Form to determine whether it is valid, invalid, or deficient. When a Claim Form is determined to be deficient, CPT sends a Notice of Deficiency advising the Class Member of the deficiency and providing the Class Member an opportunity to cure the deficiency.

19. As of the date of this declaration, CPT has received a total of 162 Claim

5

Forms. Notices of Deficiency will be sent out to all those Settlement Class Members whose Claim Forms are deemed deficient, providing them with an opportunity to cure their Claim Forms. With more than four weeks left until the Claim Deadline, the Claims Process is proceeding as anticipated, and the number of Claims is expected to increase.

**REQUESTS FOR EXCLUSION & OBJECTIONS**

20. The deadline for Class Members to exclude themselves from the Settlement Class or file and serve a written Objection is February 10, 2026.

21. As of the date of this declaration, CPT has received no Requests for Exclusion.

22. As of the date of this declaration, CPT has received no objections.

**ADMINISTRATION FEES**

23. If the Court grants final approval of the Settlement, CPT will handle further steps of settlement administration in accordance with the Settlement Agreement and the Court's Order.

24. CPT's costs for the notice and settlement administration of this matter are currently estimated at $28,750.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 8th day of January 2026, at Irvine, California.

_____
Kaylie O'Connor

# EXHIBIT A

**Court Approved Legal Notice**

United States District Court for the District of Arizona
*Rahman v. Erickson Companies, LLC*
Case No. CV-25-01866-PHX-SMB

**If your Private Information was potentially compromised in a Data Security Incident that took place at Erickson Companies, LLC on or around November 18, 2024, you could get a payment from a class action settlement.**

*A court has authorized this Notice. This is not a solicitation from a lawyer.*

*Rahman v. Erickson Companies, LLC*
c/o CPT Group, Inc.
PO Box 19504
Irvine, CA 92623

PRESORTED
First Class
US Postage
PAID

ELECTRONIC SERVICE REQUESTED

Unique ID: «ID»
Passcode: «Passcode»
«FullName»
«Address1» «Address2»
«City», «State» «Zip»

A Settlement has been proposed in a class action lawsuit against Erickson Framing Operations, LLC and Erickson Framing AZ, LLC ("EFO" or "Erickson"), relating to the incident discovered on or around November 18, 2024 in which unauthorized third parties potentially gained access to Settlement Class Members' Private Information (the "Data Security Incident").

**WHO IS IN THE SETTLEMENT?** All persons in the United States whose Private Information was potentially compromised as a result of the Data Security Incident and were sent notice by mail prior to August 29, 2025.

**WHAT CAN I GET?** You must file a claim to receive a Cash Payment.

**Cash Payment A – Documented Losses:** You may file a claim for reimbursement for documented losses incurred as a result of the Data Security Incident up to $5,000 with supporting documentation. If you do not submit reasonable documentation, you will only receive Cash Payment B.

**Cash Payment B – Flat Cash Payment:** You may file a claim for a flat cash payment which is a pro-rata share of what remains in the Net Settlement Fund after payment of all valid Documented Loss claims, attorney's fees and expenses, service award and administrative costs. Settlement Class Members who submit a valid claim for Cash Payment A will also receive flat cash payment.

**CLAIM FORM.** You must file a claim form to receive a cash payment. The easiest way to submit a claim is online at www.EricksonSettlement.com using the Unique ID and Passcode located on the front of this postcard to access your claim form. If you prefer to mail in a claim form, a downloadable version is available on the Settlement Website. Your claim form must be submitted by February 10, 2026.

**OTHER OPTIONS.** If you do not want to be legally bound by the settlement, you must request to be excluded ("Opt Out") by February 10, 2026. If you want to remain part of the settlement but object to it, you may submit a written objection by February 10, 2026. A more detailed notice is available on the Settlement Website www.EricksonSettlement.com that explains how to exclude yourself or object.

The Court will hold a Final Approval Hearing on March 12, 2026 to consider whether to approve the Settlement, the requested Service Award of $2,500 for Plaintiff, attorneys' fees up to 33.33% of the Settlement Fund plus reimbursement of costs, and any objections. You or your own attorney may attend and ask to appear at the hearing but are not required to do so.

This notice is a summary. For more information, visit www.EricksonSettlement.com. If you have questions, contact the Settlement Administrator at 1-888-711-2409 or by email at EricksonSettlement@cptgroup.com.